**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA, Plaintiff,

vs.

DUSTIN THOMPSON, Defendant.

Docket No. CR 21-161-RBW

Washington, D.C.
Wednesday, April 6, 2022
11:08 a.m.

TRANSCRIPT OF PRETRIAL CONFERENCE

BEFORE THE HONORABLE SENIOR JUDGE REGGIE B. WALTON

UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:
**Jennifer M. Rozzoni, AUSA**
U.S. ATTORNEY'S OFFICE
203 3rd Street, Suite 900
Albuquerque, New Mexico 87102
(505) 350-6818
jennifer.m.rozzoni@usdoj.gov

**William Dreher, AUSA**
U.S. ATTORNEY'S OFFICE
700 Stewart Street, Suite 5230
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov

For the Defendant:
**Samuel H. Shamansky, Esquire**
**Donald L. Regensburger, Esquire**
523 S 3rd Street
Columbus, Ohio 43215
(614) 242-3939
shamanskyco@gmail.com

APPEARANCES (Cont'd):

Court Reporter: Cathryn J. Jones, RPR
Official Court Reporter
Room 6521, U.S. District Court
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Proceedings recorded by machine shorthand, transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

THE DEPUTY CLERK: Your Honor, this is the United States versus Dustin Thompson, Criminal Matter 21-161. Parties, please identify yourselves for the record.

MR. DREHER: Good morning, Your Honor, William Dreher and Jennifer Rozzoni for the United States.

THE COURT: Good morning.

MR. SHAMANSKY: Good morning, Your Honor, Sam Shamansky and Donald Lee Regensburger on behalf of Dustin Thompson, who is also present.

THE COURT: Good morning. Mr. Thompson, would you identify yourself.

THE DEFENDANT: Mr. Thompson, Your Honor.

THE COURT: Okay. We have several matters we need to resolve. We did get your email today regarding the instructions, and we will incorporate those changes since there's no objection to them.

As far as the conducting of the trial, we had a meeting with the chief clerk and some of the other courthouse personnel. And in light of the reduced infection rate we've changed our protocol at least to some degree. We will conduct the voir dire at least as far as the questioning of the entire voir dire in the ceremonial courtroom, which is a large location so the jurors can be socially distance to some degree.

And once I go through the entire questions with the voir dire and we will move back to my courtroom and individually bring the jurors into the courtroom. I have them fill out a sheet of paper. It's numbered consistent with the questions I'm going to be asking. And if they have a yes response to any of questions they will mark that particular line indicating that they need during the individual voir dire to response to those questions.

We will then once we go through all the questions with the entire voir dire we'll bring them individually in the courtroom, the jurors will be seated in the jury box. I'll have their sheet of paper. I know what questions they have responses to. I will ask them to respond to those questions, and then I'll give counsel the opportunity to have follow-up questions consistent with the responses that the jurors say they have responses to. Once we get the number of jurors we need qualified then we'll proceed with the strikes.

And we had been up until now having the jurors actually seated out in the audience, and therefore, there were no spectators in the courtroom but now that things have improved we now will be putting the jurors in the jury box. I think they'll be happy about that because the one trial I did conduct here in DC the jurors complained about the hardness of the seats out in the gallery, so now they'll be

seated in the jury box.

As far as the issue of the virus is concerned I do on that same sheet of paper I have them fill out I will have them circle whether they are vaccinated or unvaccinated. And some people refuse to respond which means they're probably not vaccinated. I have a place for them to check indicating whether they refuse to answer. So at least counsel and the Court will know whether the potential jurors are vaccinated or not and whether you want to exercise a strike in reference to those who are not or otherwise that's obviously your prerogative.

The jurors will be required, which is the protocol that we're following, to wear masks during the trial. Witnesses if they are vaccinated since we do have plexiglass on the witness stand will be permitted to testify without their masks on. The court reporters obviously like that because it makes it easier to hear them. If they're not vaccinated then they are going to have to wear their masks, and hopefully there won't be a problem with the juror so the court reporter hearing them. If there is I'll tell them that they can just ask them to repeat their responses.

Anything regarding what I've already indicated about how we'll conduct the proceedings?

MR. DREHER: Only, Your Honor, I assume therefore counsel similarly when we are, at least when we are

presenting or asking questions, things like that we will remove our mask as well?

THE COURT: Let me just ask are all counsel fully vaccinated?

MR. DREHER: For the government, yes.

MR. SHAMANSKY: For sure, Your Honor.

THE COURT: Very well. As long as you're fully vaccinated, yes, you can take off your mask when you're questioning the witnesses. We do have plexiglass in the courtroom at the podiums that we have where counsel can use the podiums to question the witnesses.

The jurors they will not be situated in the jury room when they're not in the courtroom. They will actually be in another courtroom so again they can socially distance if they choose to do so. Anyone have anything else? Anything else?

MR. SHAMANSKY: Your Honor, I have a couple of quick questions. Does the Court have any notion of how long it might take to seat a jury? I think you'll have it done by the morning? Or is your past practice been or your past experience been that it takes longer than that?

THE COURT: Well, you know, things are a little different now in that I'll have -- don't take much time, but mainly for the court reporter to remove, to move from the ceremonial courtroom which is only two courtrooms down from

mine so it shouldn't take long, but we'll have to move and the court reporter will have to reconnect to her equipment that takes a little time which extends the selection process not long but by some minutes.

And I think it's hard to say. I mean, I think one of the problems that may elongate the selection process are the questions that I'm going to ask regarding the former president. I think there probably are going to be some people who may feel that you know because of information being brought out about him, and if tape recordings of what he said are going to be played and some of the other people I think there's a potential, I can't say that you may lose more jurors than normally is the case.

Again, I don't know if that's going to be the case or not but we'll see. I think it probably will take a little longer than normally because of the number of questions that I'm asking and because of the nature of the case I think we could lose a lot of jurors. I hope we'll be able to pick the jury from the number of jurors that we've asked for initially. I asked for only 50 jurors, but from the meeting that we had today I told them to give me at least 60 to 65 jurors. And with that number of jurors hopefully we'll be able to complete the selection from that panel and not have to call for additional jurors, so it just depends.

I would anticipate it's probably going to take at least the morning and probably a part of the afternoon and maybe all of the afternoon. And I hope we'll have the jury selected by then, but to a large degree it's going to depend on how many jurors we lose because they feel that they cannot be fair or partial in a case like this.

MR. SHAMANSKY: The only reason I ask Judge is I heard through the grapevine that one of your colleagues took a full two days to seat a panel and so I was just curious and hopeful I guess.

THE COURT: I would not be surprised if that is the case. I have handled two really high profile case, the Roger Clemens case and the Scooter Libby trial. And because of the amount of publicity regarding those cases and because of the underlying facts especially in the Scooter Libby trial because of the political implications involved in that case it took me four and a half days to pick the jury.

So I hope it doesn't take that long, but I wouldn't be surprised if it doesn't take two days.

MR. SHAMANSKY: We have nothing further, Your Honor. Thank you.

MS. ROZZONI: Your Honor, I just have one question. If we run out of jurors or in the voir dire on Monday does the jury section have the ability to call more in on Tuesday morning?

THE COURT: Yes. I don't know, it probably would be Tuesday morning before we'd get the additional jurors if we lose sufficient number that we can't pick from the initial panel.

MS. ROZZONI: Okay. And then my next question and I apologize is, so when we do our cause strikes we'll do, I presume get to the number 32 and then at that point we get the 32 that have been, not struck for cause and then we do the preempts from there among those 32?

THE COURT: Yes.

MS. ROZZONI: Okay. Thank you.

THE COURT: What I do so it makes it easier for counsel to know which juror is next up I will have the first 14 seated in the jury box. The jurors will be in order. There will be a jury form with the jurors listed on it for you and they are numbered. And they will be seated in the courtroom numerically so you will know who the next juror up will be.

When you exercise your strikes I'll have the jurors if they are in the box or being stricken I'll have them leave the box and go sit on the right side of the courtroom. And I don't release them until all the strikes have been exercised because if there's a Batson challenge or some other type of challenge I may have to re-impanel those jurors if I feel that there's been a Batson violation.

Hopefully that will not occur. But I think it will be what, since the defense has ten and the government has six, the initial rounds will be two for the defense, one for, one for the government until the numbers equal out. And then I think the last several rounds each will have one strike. And then, so that we'll impanel two alternates. And so that you have the ability to exercise strike on both alternates if you don't like them I give both sides two strikes per side on the alternates.

And I do put the alternates in a different location in every trial, so that the alternates don't know who they are. When I was trying cases back in the dark ages it was always the 13th and 14th juror who were alternates, so they knew they were the alternates. And I think the reality as a result of that sometimes they wouldn't focus as much as they otherwise should because they would think they are not going to have to actually decide the case.

So in this case I'll put the alternates, alternate one I'll put in seat four and alternate two, I'll put in seat eight. So your initial strikes on the 12 jurors who will hear the case unless something happens to one of them will be on the none alternate. And then your final two strikes per side will be on the two alternates. Anything else on the process?

MS. ROZZONI: No, Your Honor. Thank you.

MR. SHAMANSKY: No, we're good, Judge, thank you.

THE COURT: Okay. As I understand in reference to the issue I raised regarding potential hearsay problems regarding the text messages as I understand the parties have agreed that those statements whether they're hearsay or not will not be objected to, is that right?

MR. SHAMANSKY: Correct, Your Honor.

MS. ROZZONI: Correct.

THE COURT: Very well. And I was a little confused in reference to the prior arrest for trespassing. I had indicated that I would reserve a ruling on whether that would become relevant and that would depend upon what the evidence was. Is there anything that the parties have decided inconsistent with what I previously indicated?

MR. SHAMANSKY: Your Honor, if I might. We have put together a stipulation subject to your approval, of course, which we believe obviates or will obviate the need for the government to be grappling with that Ohio detention slash arrest. And in fact, that stipulation was circulated among the parties this morning, so I don't think that will be an issue, Your Honor.

THE COURT: And what's the essence of the stipulation?

MR. SHAMANSKY: It says that Mr. Thompson knew that the Capitol police had in fact secured the Capitol and

it was generally unlawful to enter thereon.

THE COURT: So it has nothing really to do with the Ohio case?

MR. SHAMANSKY: Correct, sir.

THE COURT: Very well. That's fine. And I got a request yesterday for the marshals to effect service on the former president. I guess I'm a little confused in reference to that.

MR. SHAMANSKY: Your Honor, just for what it's worth, obviously we understand and will abide scrupulously by the Court's ruling in that regard. We were attempting to secure his appearance so we could proffer him for the record. You know, I'm assuming that nobody's going to grouse about proffering in his absence. We did want the Court to order the marshals to serve him since the Secret Service would not let our process server effectuate service, so we're just protecting the record.

We understand the Court's ruling and again, this is just more for practicing safely from our prospective.

THE COURT: Very well. I would not order that since I am of the view and was of the view and still am of the view that his presence and his testimony now would be irrelevant to the issue of intent. Since as I previously indicated what would be relevant is what Mr. Thompson heard and what affect that had on him as relates to the issue of

what is intent was when the events occurred. So I just don't see how having anybody come into court and testify as to what they purportedly said at the time I just don't see how that's pertinent to this case.

And in that regard as I previously indicated I did not believe legally that the two defenses, the public interest defense and the entrapment by estoppel defense were appropriate in this case for the reasons I previously indicated. So I guess I'm a little confused as to how the evidence of intent is going to come in and not be in violation of the rulings that I made in that regard.

MR. SHAMANSKY: Well, Your Honor, we certainly understand that the Court has precluded both of those defenses. And we're going to argue, it's no secret, that based on not only the words that were uttered on the 6th, but also the, what we believe to have been a concerted and joint effort to put out on social media and other platforms that this election had been stolen and something needed to be done about it far in advance of the 6th.

That Mr. Thompson and others could have reasonably inferred that they were in fact authorized to enter based on the president's urging. That is in essence how we believe this information impacts knowledge. And we would submit, Your Honor, it's far different if Donald J. Trump or President Trump had said hey, go rob 7-Eleven at gunpoint

because I said so.

This was a far more concerted and insidious message that was sent. And our client was in fact duped and therefore it affected his knowledge as he believed albeit mistakenly that he was authorized with the president and others' urging to storm the Capitol and disrupt the proceedings in the name of saving the democracy.

THE COURT: How is that significantly different from those two defenses that could not be presented during this trial?

MR. SHAMANSKY: Well, relative to the public authority defense as I understand the Court's position the president -- first of all, he's not available to us because the president was not authorized under our statutory and constitutional framework to empower citizens to behave in the manner in which he suggested they did. We understand that.

The equitable estoppel argument, of course, we respectfully disagree with the Court. We believe that, I'm sorry, entrapment by estoppel forgive me, we believe should apply even though again our client, Mr. Thompson, may have been very well mistaken about the message that was transmitted. He was able legally to rely upon the same and the jury should hear it.

But that's to be contrasted, Your Honor, with his

knowledge. And so we believe that a person's knowledge, of course, is what's known to them, and subjectively and even objectively, the jury ought to hear about what went in to his decision-making process on January 6th, in order for them to correctly determine whether or not the government has proved all their necessary mental elements.

THE COURT: So I assume you're saying that everything that he would say in this regard would relate to things that he had come in contact with?

MR. SHAMANSKY: He meaning Mr. Thompson, Your Honor?

THE COURT: Yes.

MR. SHAMANSKY: Yes, sir. Otherwise, it would be irrelevant. And so, and that's why -- I appreciate the Court's -- although I respectfully don't agree, I certainly appreciate the Court's position on the two defenses. But I would still submit they are separate and distinct from whether or not we are allowed to adduce evidence regarding what went on that day and what formed the basis for Mr. Thompson's actions. So that's how we believe it's relevant.

THE COURT: Government have any response?

MR. DREHER: Your Honor, I think our understanding in conversation with defense counsel is that this would come in as the government I think alluded to in its briefing through video of some of the remarks assuming there was

proper foundation laid during examination of Mr. Thompson that he heard certain statements.

And in that limited respect that type of evidence we think would be again admissible with the proper foundation laid. At least with respect to some mens rea element for some of the six counts, so I think in that limited --

THE COURT: Very well. Very well.

In reference to the trial schedule Monday -- I'm sorry, one moment. Again, I don't know how long the trial is going to last. Hopefully it will move expeditiously, but if we're not finished by Friday, Friday is a court holiday and the court will be closed. That's Good Friday. So we will not sit on that Friday if the trial is still in progress at that time. And also Monday is a court holiday the 18th, so if the trial has not finished by Thursday we would not sit on Friday or Monday since the entire courthouse is shut down on those two days.

MR. SHAMANSKY: Your Honor, for informational purposes only we have endeavored the parties to stipulate most of the case. We're not sure how the Court will handle the stipulations whether you'll read them, whether you expect the parties to read them. But we believe the trial will consistent of seven witnesses, most whom will be very expeditiously presented both on direct and cross. Frankly

it's just not a whole lot factually in dispute here. We're hopeful to be able to present the case in no more than a day or so.

THE COURT: That's fine. As far as the stipulations it's always been my practice since it's evidence it should not be coming from the Court that I let the parties read the stipulations into the record depended upon which party is offering that stipulation.

MR. SHAMANSKY: They're going to be joint, Your Honor. And I guess the other question is do you then -- since they're reduced to writing do you then send them back to the jury or you just rely on the oral statements in the record?

THE COURT: You know, that's always been a question because it's evidence just like any other evidence. And since you know I think one of the flaws in our justice system hopefully with technology one day will fix it. I've always had concerns we're asking even in a short trial for jurors to remember everything that was presented to them without the aid of a transcript, but we just don't have the technology to transcript that quickly that is available so the jurors aren't guessing as to what was said and are able to specifically know what was said because they have it in writing.

It seems to me it gives an advantage to the

stipulations in that they would have the actual written evidence before them by way of a stipulation, but they won't have the oral testimony before them. So it's been my policy to not have the written stipulations go back, but to obviously tell the jury that if there's everything that they would like to have read back to them that that can be done.

MR. SHAMANSKY: Sounds good, Your Honor.

MR. DREHER: Your Honor, the government --

THE COURT: Yes, go ahead.

MR. DREHER: I was just going to ask whether the defense has an objection to those going back as an exhibit then, then we would be fine with them not going back. But if the defense doesn't object then I think for the reasons the Court stated we do think, I think in particular given the volume of stipulations in this case, which is a little bit unusual --

THE COURT: If there's no objection and both parties want it to go back I mean that's fine.

MR. SHAMANSKY: Your Honor, if -- let us pow wow on -- our inclination is we don't mind they go back. We certainly appreciate the Court's position regarding giving additional weight to some piece of evidence as opposed to others, but we believe it will help the jury streamline the issues and focus on that which is in dispute.

It would also save us a gang of time in terms of

reading them verbatim. I think we would be you know happy to allow the government to summarize them just in the sake of time and keeping focus on what matters. So if the Court is okay with that I think that's our position.

THE COURT: I don't have a problem with them going back if that's what both parties want, but I think that they should be verbatim read into the record. So even though the jurors may you know take them back with them if that's what the parties want that's fine with me. But I think the exact stipulation should be read into the record.

MR. SHAMANSKY: And Your Honor, while we're discussing these procedural issues Will and Jenna brought up earlier we're going to have -- mainly these are going to be joint exhibits just for the sake of streamlining the process. Per your instruction Judge we have a long tape of Trump's, of the rally itself. We're going to work hard to just pull out the relevant portions. I'm just assuming that the facilities are in place to make sure the jury has that in the jury room as well.

THE COURT: My law clerk will give you a call. Mr. Cramer, is our IT person, so you all can talk to him to make sure that he can accommodate what you think needs to be done. So she'll give you a call after this hearing, give you his contact information so you all can set up a conference call with him sometime before next Monday so that

he can make sure that everything is in place that you want.

MR. SHAMANSKY: Very well.

MR. DREHER: Your Honor, while we're discussing some of the exhibits questions if I might just add that I think the parties had discussed the possibility of -- as Mr. Shamansky noted I think there might be 30, 40, 50 exhibits that the defense would be fine saying we have no objection to those are going to come in, videos, things like that.

In some courts the government can, will move to essentially admit a series of exhibits at the outset of its case so even before its opening statement. And without objection you know those exhibits would then be admitted and parties use the exhibits during testimony without having to move for admission individually. We just wanted to inquire as to the Court's view on that if it were a joint, as to which exhibits?

THE COURT: I don't think we have to go through the process individually. I mean if you all agree that the exhibits are admissible we just obviously need to create an order, so you just need to indicate on the record which exhibits the parties agree are admissible. And once that record is made then you can just present the evidence to the jury.

MR. DREHER: Thank you, Your Honor. Does the

Court prefer we request permission to publish exhibits to the jury after they have been admitted?

THE COURT: What exactly are you -- I'm not sure exactly what you're asking me.

MR. DREHER: Sometimes the court prefers a two step process where we move to admit an exhibit. The court admits the exhibit and we can't show it to the jury unless we formally ask to publish the admitted exhibit to the jury. Other courts effectively say once admitted you can go ahead and use it and show it to the jury. I just wanted to make sure I follow the Court's preference.

THE COURT: I think the prior position is a better position in that it creates a better record as to what exactly is going to be shown to the jury or read to the jury or whatever, so I think it would be preferred to indicate which exhibit at that particular time is going to be shown to the jury so that the record is clear as to what they see or what they have heard.

MR. DREHER: Thank you, Your Honor.

THE COURT: Regarding the verdict form were there any questions? I did make some modifications of the verdict form. I don't know if you all have issues with those modifications.

MR. DREHER: The government noted I think there are maybe a couple of issues. One, I think is related

perhaps to what the Court flagged in the jury instructions.

THE COURT: Let me get the verdict form. Okay.

MR. DREHER: So I think this is entirely due to the fault of our, perhaps somewhat ambiguous jury, proposed jury instruction. The instruction that we proposed for Count One did say the jury did not need to find that the defendant both obstructed and impeded which are two different means of committing the offense, but rather only need find one of those things occurred.

I think the way that we wrote it made it seem as if we were talking about legal theories of liability, so attempts for aiding and abetting for example liability theory. And I think that carried over into the Court's proposed verdict form. So we don't think the jury needs to be unanimous as to the legal theory of liability on which it's finding a defendant guilty. And so we would propose if the Court wishes to have special interrogatories for Count One that they be, that they effectively two questions.

One, you know find that the defendant obstructed an official proceeding and two, that the defendant impeded an official proceeding. And I think that's consistent with the remaining verdict interrogatories which are, sort of break out the different means by which the offense can be committed.

THE COURT: So the proposed verdict form that I

put together you're saying A and B would be appropriate under Count One, but C would be omitted?

MR. DREHER: I think C and D would be omitted and I think for --

THE COURT: Right.

MR. DREHER: And then for A and B they are close. For A, we would take out or impeded. And then, so it just said the defendant obstructed an official proceeding, and then --

THE COURT: Okay, I got you. Any objection to that?

MR. SHAMANSKY: Hold on one second, Your Honor.

[Brief pause.]

MR. SHAMANSKY: What we're struggling we agree with the notion that the upper portion should be fixed. It's when you get to the aiding and abetting -- yeah, obstructing impeding, alternative that's fine that we get and agree with. I guess the question is, does the aiding and abetting change the nature of the offense as opposed to --

THE COURT: I was going to ask the government about that. I mean what is the government's evidence that would support that he in some way aided and abetted what took place as compared to being a principal?

MR. DREHER: I think the arguments are effectively

alternative arguments, and it would go something like this, someone who's present in the Capitol building themselves, you know, obstructed the proceeding by, you know, disrupting what was going on inside the Capitol. But in any event even if there was some factual issue with respect to actual interference with the congressional proceeding, we think that that would be, it would be evident that the defendant intended to help obstruct. And that his appearance as part of the crowd would be aiding and abetting others who had the same intent and that he intended to do so.

I think the Court is right and defense counsel may note this in this case it's, I think it's stipulated that a factual matter misconduct did interfere with the proceeding. So for that reason aiding and abetting viability it doesn't take the same sort of prominence that it would in other cases, but we do think it is an alternative theory of liability for someone who entered the building.

MR. SHAMANSKY: Your Honor, may I --

THE COURT: To be very candid I find it very -- I think number one it complicates the case to an extent that it doesn't need to be complicated. And number two, I think this just is not the type of case that I've seen where aiding and abetting really is an appropriate theory of liability here. I mean I've always thought there was more that needed to be done by someone other than you know what

happened in this case. I mean he didn't do something that in some way affirmatively encouraged somebody else to do something. And it just seems to me it's a stretch for the jury to be able to conclude that he wasn't a principal, but he was an aider and abettor.

I just think that would be an illogical conclusion for the jury to reach based upon at least my understanding of what the evidence is.

MR. SHAMANSKY: Your Honor, may I add one thing?

THE COURT: Yes.

MR. SHAMANSKY: You know, we don't agree -- we don't disagree, but as a general principle legally speaking the government can pursue both theories. We agree with that. But what's not clear to us from the verdict form is that the jury would most certainly need to be unanimous on the aiding and abetting versus principal and that's what's not clear here. So there are two distinct legal theories which require distinct unanimity at least from our prospective.

I don't think the government disagree with that. That somehow that's clear from these forms.

MR. DREHER: Your Honor --

THE COURT: I guess in some context a person can be a principal in one regard and an aider and abettor in another regard, and they are two different theories of

liability. And it would seem to me as two different theories of liability if they're both going to be presented to the jury unanimity would be required. I know this is a complex area and you never know sometimes how the appellate court will look at the issue of unanimity. Because there have been some capitulation I've seen from various appellate courts as to the issue of unanimity.

But I do think if you're relying upon a principle theory of culpability and aid and abetting theory of culpability it should be clear what the jury is basing its decision on from a unanimity prospective.

MR. DREHER: Your Honor, if I can just make one proposal in this respect. It sounds like the parties agree that the first two interrogatories could be breaking out obstructing versus impeding, right. And so the first two would just differentiate obstructing or impeding.

THE COURT: So the first question would be that the defendant obstructed an official proceeding and in the second interrogatory would be that the defendant impeded an official proceeding?

MR. DREHER: Yes, exactly.

THE COURT: What about the attempt?

MR. DREHER: So what I would propose is that on this question of theories of liability and whether the government does not agree that they require unanimity and

would request just the opportunity. We can submit it later today but like a one page you know memo with a little bit of authority on that, on that position. And then ultimately you know [indiscernible]. Okay. Breaking it out or even you know removing aiding and abetting liability you know from the instructions, but we just think it makes the most sense for the parties to submit just a very short statement on that. Because we agree with the Court that that's an important question unanimity as to legal theories and something that we would want to get right.

THE COURT: So are you taking attempted --

MR. DREHER: Yes, out.

THE COURT: So that's gone now, so no attempt will be in play, is that right?

MR. DREHER: Sorry, Your Honor. We were proposing to take it out of that factual interrogatory, but not the theory of attempt would still be a viable theory to find the defendant guilty.

THE COURT: Well, I mean obviously if the actual obstruction or the impeding occurs then that would encompass the attempt because obviously if you've actually committed the completed act then there'd be no question about the fact you also attempted. But if they concluded that there was not the completed act and there was merely an attempt and that would not cover the competed act. So in that regard I

would be concerned about there not being unanimity.

MR. DREHER: Okay. I think that if we were, if we want to make sure that we include [indiscernible] interrogatory with unanimity on each thing that is required for both the attempt and aiding and abetting liability theories I think what we are, what I would propose is that again the parties submit just a short description of what their position is and have a few minutes to write out what, how we think it would be broken out either if the Court agrees that unanimity is required for those defense theories of liability or if not. So that we, we can think about exactly how to structure that.

THE COURT: Yes, you all need to talk and see if you can reach some agreement in reference to this and submit to me what your proposal is. Yes.

MR. SHAMANSKY: Judge, if I might. So the reason this is such a struggle is the way the statute is drafted. We can see that the government could theoretically convince a jury three of them could agree that it was obstruct, influence or impede. They can have four jurors on each of those. And if they all add up they don't need to be unanimous with respect to how the crime was committed within the body of the statute.

THE COURT: I agree with that.

MR. SHAMANSKY: Yes, sir. So I don't think that's

going to be an issue. Where we, where we diverge on -- and also for what it's worth, Your Honor, we stipulated to conduct. There's not going to be an issue regarding attempt. We have flat out stipulated that our client went in there and did these things.

And so yes, the issue is was it corruptly, I mean it all focuses on mental elements. So these mental gymnastics I guess, I understand they're good for lawyers. I don't think it's going to be an issue in the case. Most certainly would submit I believe the law will bare this out that when you shift the aiding and abetting you now change theories. That's the only I think area of disagreement, sir.

MR. DREHER: And I would --

THE COURT: I would tend to agree with that that the aiding and abetting is a different legal theory of culpability as compared to just being or being a principal. And I would think that unanimity would be needed in that regard. But I'll let counsel discuss it and hopefully you can resolve what your differences are. If you can't, submit to me what your proposals are from your different prospective if there is no agreement and I'll make the call.

MR. SHAMANSKY: Yes, sir.

THE COURT: But I would -- again, I think the government needs to think about whether it wants to proceed

on that aiding and abetting theory. Because I think I would have to give a unanimity or require unanimity finding if that separate theory of culpability is going to be presented to the jury. And in that regard I don't recall that since the government is asking for the special verdict form as indicated a definition of obstruction as compared to a definition of impeding. Was that included, I don't think it was?

MR. DREHER: The government's position is that it was the ordinary understanding of those terms.

THE COURT: Well, I mean I think most people would kind of understand from a common sense prospective, a layperson prospective what obstruction is. I'm not sure that people walk around talking about something was impeded. That's not the kind of language normal people use. They're not going to understand what the difference is between obstruction and impeding.

MR. SHAMANSKY: Judge, we'll be able to come up with an agreement relative to that language I'm sure. We'll have it for your consideration pronto.

THE COURT: Anything else regarding the verdict form?

MR. SHAMANSKY: Not on behalf of Mr. Thompson.

MR. DREHER: The only other thing obviously subject to the party's proposal about the special

interrogatory [indiscernible]. With respect to Count Three, I think that the special interrogatories referred to in part A --

THE COURT: I'm sorry, which charge is that?

MR. DREHER: Count Three.

THE COURT: I didn't put the counts. Maybe we should have the counts on the verdict form. What offense is that?

MR. DREHER: Entering or remaining in a restricted building.

THE COURT: I got it.

MR. DREHER: So for that offense the subpart mens rea is knowingly and intentionally, so we would submit it should day knowingly for both of those.

THE COURT: Any objection?

MR. SHAMANSKY: We agree, Your Honor.

THE COURT: Okay. We'll make that change. Is that it?

MR. DREHER: I think that's it other than the global issue that we'll try to come to resolution on.

THE COURT: Try to get back to me as soon as on that, so we can incorporate whatever changes need to be made and if I have to make a legal assessment if there's disagreement so I have time to do that.

MR. DREHER: Thank you, Your Honor.

THE COURT: Okay. In reference to the voir dire were there any questions regarding the voir dire I would propose to submit to the jury?

MR. SHAMANSKY: Judge on behalf of Mr. Thompson we have no further additions. We understand the Court's ruling.

MS. ROZZONI: From the government's prospective, Your Honor, I just had a couple of thoughts slash questions. In the email from your law clerk it indicated that you'd be asking questions of the proposed jury instructions -- excuse me, voir dire questions from the parties, 3.2 through four, and appears to have omitted 3.1. And that question is: Do you or someone you know have any direct or indirect connection to the events of January 6th, 2021?

The government would again propose to the Court that that would probably be an important question to asks potential jurors in this case though admittedly that question was perhaps a little bit broad and that's why it was excluded. And so we would suggest that we pare it down a bit and make it something to the effect of, do you have any connection to the events of January 6th, 2021.

We're just trying to get at whether they know someone who was there in the building involved in some way. I know that in some --

THE COURT: I don't disagree with that. I didn't

intend to exclude that inquiry. I thought what I asked was broad enough to cover that, but I do not disagree with what you're indicating.

MS. ROZZONI: Okay. Thank you, Your Honor.

THE COURT: So which you said that was in your proposed instructions, proposed voir dire?

MS. ROZZONI: It was, Your Honor.

THE COURT: What number was that again, so my law clerk can indicate, so we can add that.

MS. ROZZONI: It was Roman numeral III and then the first question, number one.

THE COURT: Any objection?

MR. SHAMANSKY: No objection, Your Honor.

THE COURT: Very well. We'll add that.

MS. ROZZONI: And then, your Honor, questions 14 through 18. They seem to go back and forth between whether something would affect versus whether something might affect, and the government would propose that the word would be used just to make things consistent across those questions.

THE COURT: You said 14 through what?

MS. ROZZONI: Fourteen through 18, would affect their impartiality. The questions go back and forth between you think this might affect versus do you think this would affect?

THE COURT: Any objection?

MR. SHAMANSKY: No, no objection, Your Honor.

THE COURT: Very well. We'll change it to would.

MS. ROZZONI: Then lastly, Your Honor, the government does have some concern about question 15, and if I could read that to the Court. It says: "Would any of you not be able to give a person a fair trial on the charges you are being asked to consider in the case, in this case if that person believed former President Trump's statements about who won the 2020 presidential election?"

Basically we see that suggesting that the defendant believed and therefore should be found not guilty and would you be able to -- basically that question seems to address the ultimate issue really the crux of this case. And we don't believe that it would be a proper question to ask in the voir dire of this case.

THE COURT: What question is that, I'm trying to find it?

MS. ROZZONI: It's 15 of your proposed voir dire questions, Your Honor.

THE COURT: Maybe I'm looking at something different, 15 that I have is: "Would any of you not be able to give a person a fair trial on the charges you're being asked to consider in this case if that person believed former President Trump's statements about who had won the

presidential election?" And you're saying you think that's a problem why?

MS. ROZZONI: Because Your Honor, we feel like that's basically the ultimate question of this case is whether, whether the defendant believed or not President Trump's statements. It's kind of like if you were to ask if you believed a person -- if you believe a, the defense of entrapment was appropriate would you be able to give a fair, be a fair and partial juror. We don't believe that that's the ultimate question and that the juror shouldn't necessarily be asked about that.

MR. DREHER: Add one thing, Your Honor, I think in particular the factual premise of the question is that the person in question believed former president's statements. We think that's the issues in the case. And so our concern is does it suggest to the jury that is -- by asking them, you know, what if someone believed these words would you be able to give them a fair and impartial trial?

We think that suggests to the jury panel that the defendant in this case did in fact believe Mr. Trump's statements and that's one of the questions in this case.

THE COURT: That's not what I was trying to convey. To be totally candid the concern that I have is that I think considering the political make up of the District of Columbia -- I'm always convinced because if I

were ever charged with a crime, I don't think you can get a better jury anywhere else in the country than the District of Columbia. But I also think that you have to scrutinize very carefully who ends up being on the jury panel because of the political prospectives that exists to a large degree in the District of Columbia.

I mean be very candid it's a democratic leaning city. And my concern is that there would be potential jurors who probably are not that fond of Donald Trump, and who if they were selected as a juror in a case where someone believed what Donald Trump had to say about the election would not be able to be fair and impartial to Mr. Thompson because of that belief. And I think somebody who has that mindset in my view should not be a part of this jury.

I mean I understand what you're saying, but that was my concern that -- I mean we got to talk about the reality. You can't hide the elephant in the room. And I don't think there's a need for any change of venue because I think like I say you can get a fair-minded jury in this jurisdiction. It just takes a lot of effort to make sure that you're weeding out people who have political prospectives that could cause them as was the situation in the Scooter Libby trial.

I knew that there was a lot of hostility against President Bush for the decision to go into Iraq. And I knew

I had to try and ferret that out with the panel to make sure that there weren't people that had such feelings, who even though that case wasn't necessarily directly about President Bush that nonetheless I thought we had to make sure that anybody serving on the jury would not have prospectives about President Bush that would cause them not to be able to give Mr. Libby a fair trial in light of Mr. Libby's association with bush.

And that's sort of the same feeling I have here. I have concerns that people may not think very fondly of Donald Trump. And as a result of that, Mr. Thompson obviously is a follower or at least was a follower at the time of Donald Trump, that they would, that their attitude about Donald Trump would also have an impact on their prospective about Mr. Thompson. And that's the concern that I have. That's what I was trying to ferret out in that question.

MR. DREHER: And I think, Your Honor, we understand and appreciate the Court's concern. I think the Court currently has five questions that are directed to this issue. We think 14, 16, 17, and 18 do a good job of asking about the juror's views on those questions without making it specific to, without asking specifically something about you know if a defendant believed X, Y, and Z.

For example, I think question 17 really ask the

same question just in a what I would submit is a better way. Because it says do you have feelings about people who didn't agree with the results of the 2020 presidential election that might affect your ability to be fair and impartial, without suggesting anything about the defendant's beliefs one way or another. If that makes sense to the Court. That why our objection is limited just to question 15.

THE COURT: What's the defense's position?

MR. SHAMANSKY: Our position is question 15 is appropriate and should stay. All it's really asking is are you willing to follow the law and put aside your understandable animosity towards those who drank this Kool-Aid and committed this heinous act. So I think it's perfectly appropriate. And it's a hundred percent analogous to Scooter Libby and George Bush. I mean it's a question that has to be asked. Otherwise, everybody is going to be wondering.

I don't know what the downside is. It's not -- you are asking if our defense is -- it says if the person. Doesn't, it's a perfectly appropriate question.

THE COURT: Yeah, I understand the government's concern, but I don't think I can exclude this question for the reasons that I indicated. I just think that someone should not be a part of this jury panel if they would have animosity towards someone who believed Donald Trump's

position regarding who won the election.

I mean it seems to me that doesn't mean that they wouldn't convict somebody who had those beliefs if they conclude that they committed the acts that Mr. Thompson is accused of committing. So I think it's an appropriate question, so over objection I will ask it. Any others?

MS. ROZZONI: No, Your Honor, I think that's it. Thank you.

THE COURT: Anything else from either government counsel or defense counsel that we need, other than the matter you all are going to discuss, anything else we need to discuss at this time? One moment, my clerk is giving me a note.

Oh yeah, I forgot. The Clerk of the Court staff wanted to know whether there would be family members here with Mr. Thompson who would be present during the trial?

MR. SHAMANSKY: Dustin, are your parents coming?

THE DEFENDANT: Nah, my wife might. I haven't thought about it really.

THE COURT: I'll let the clerk's office know that his wife might be there.

MR. SHAMANSKY: And Your Honor, the courtroom is even with the COVID restrictions open to spectators, correct?

THE COURT: It is now, yes.

MR. SHAMANSKY: And there's no problem with counsel wearing a mask if they so chose?

THE COURT: It's your choice you can wear a mask. Generally what I've required is that when you're not speaking you should wear a mask. And even though the numbers are down as far as infection rates are concerned I think that's the protocol that we should continue to use when you're not speaking wear the mask. When you're speaking you can take it off.

MR. SHAMANSKY: Very well.

THE COURT: Anything else from either side?

MS. ROZZONI: Your Honor, what time would you prefer the parties to be in the courtroom on Monday morning?

THE COURT: Let me see, by the time they get the jury here it will be 9:30, so usually I start, try and start at nine but since it will be the jurors first day it will probably be 9:30.

MR. SHAMANSKY: Got it.

MS. ROZZONI: Thank you.

THE COURT: If there's nothing else, thank you. Get back to me as soon as you can.

[Thereupon, the proceedings adjourned at 12:11 p.m.]

**CERTIFICATE**

**I, Cathryn J. Jones, an Official Court Reporter,** for the United States District Court of the District of Columbia, do hereby certify that the foregoing 40 pages is a true and correct transcript of the remotely reported proceedings in the above-entitled matter.

Please note: This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

In witness whereof, I have hereto subscribed my name, this the 5th day of July, 2022.

/s/_Cathryn J. Jones
Cathryn J. Jones, RPR
Official Court Reporter

**MR. DREHER: [32]** 3/4 5/23 6/4 15/21 18/7 18/9 20/2 20/24 21/4 21/18 21/23 22/2 23/2 23/5 23/24 25/21 26/11 26/20 26/22 27/11 27/14 28/1 29/13 30/8 30/23 31/4 31/8 31/11 31/18 31/24 35/11 37/17
**MR. SHAMANSKY: [41]** 3/7 6/5 6/16 8/6 8/19 10/25 11/6 11/14 11/23 12/3 12/8 13/11 14/10 15/9 15/12 16/18 17/8 18/6 18/18 19/10 20/1 23/11 23/13 24/17 25/8 25/10 28/15 28/24 29/22 30/17 30/22 31/15 32/3 33/12 34/1 38/8 39/16 39/21 39/25 40/9 40/17
**MS. ROZZONI: [17]** 8/21 9/4 9/10 10/24 11/7 32/6 33/3 33/6 33/9 33/14 33/21 34/3 34/18 35/2 39/6 40/11 40/18
**THE COURT: [77]**
**THE DEFENDANT: [2]** 3/12 39/17
**THE DEPUTY CLERK: [1]** 3/1

**.**

**.x [1]** 1/7

**/**

**/s [1]** 41/15

**1**

**11:08 [1]** 1/7
**12 [1]** 10/20
**12:11 [1]** 40/22
**13th [1]** 10/13
**14 [4]** 9/14 33/15 33/21 37/21
**14th [1]** 10/13
**15 [5]** 34/5 34/19 34/22 38/7 38/9
**16 [1]** 37/21
**161 [1]** 3/3
**17 [2]** 37/21 37/25
**18 [3]** 33/16 33/22 37/21
**18th [1]** 16/16
**19 [1]** 41/8

**2**

**20001 [1]** 2/4
**2020 [2]** 34/10 38/3
**2021 [2]** 32/14 32/21
**2022 [2]** 1/6 41/11
**203 [1]** 1/14
**206 [1]** 1/18
**21-161 [1]** 3/3
**21-161-RBW [1]** 1/4
**242-3939 [1]** 1/23

**3**

**3.1 [1]** 32/12
**3.2 [1]** 32/11
**30 [1]** 20/6
**32 [3]** 9/7 9/8 9/9
**333 [1]** 2/3
**350-6818 [1]** 1/15
**3939 [1]** 1/23
**3rd [2]** 1/14 1/22

**4**

**40 [2]** 20/6 41/4
**43215 [1]** 1/22
**4579 [1]** 1/18

**5**

**50 [2]** 7/20 20/6
**505 [1]** 1/15
**523 [1]** 1/22
**5230 [1]** 1/17
**553-4579 [1]** 1/18
**5th [1]** 41/11

**6**

**60 [1]** 7/22
**614 [1]** 1/23
**65 [1]** 7/22
**6521 [1]** 2/3
**6818 [1]** 1/15
**6th [5]** 13/15 13/19 15/4 32/14 32/21

**7**

**7-Eleven [1]** 13/25
**700 [1]** 1/17

**8**

**87102 [1]** 1/14

**9**

**900 [1]** 1/14
**98101 [1]** 1/18
**9:30 [2]** 40/15 40/17

**A**

**a.m [1]** 1/7
**abetted [1]** 23/23
**abetting [13]** 22/12 23/16 23/19 24/9 24/14 24/23 25/16 26/9 27/5 28/5 29/11 29/16 30/1
**abettor [2]** 25/5 25/24
**abide [1]** 12/10
**ability [3]** 8/24 10/7 38/4
**able [14]** 7/19 7/23 14/23 17/2 17/22 25/4 30/18 34/7 34/13 34/22 35/8 35/18 36/12 37/6
**about [32]** 4/23 4/24 5/23 7/10 12/14 13/19 14/22 15/3 22/11 23/22 26/22 27/22 28/1 28/11 29/25 30/14 30/25 34/5 34/10 34/25 35/11 36/11 36/16 37/3 37/6 37/14 37/15 37/22 37/23 38/2 38/5 39/19
**above [1]** 41/6
**above-entitled [1]** 41/6
**absence [1]** 12/14
**accommodate [1]** 19/22
**accused [1]** 39/5
**across [1]** 33/19
**act [4]** 27/22 27/24 27/25 38/13
**actions [1]** 15/20
**acts [1]** 39/4
**actual [3]** 18/1 24/5 27/19
**actually [4]** 4/20 6/13 10/17 27/21
**add [6]** 20/4 25/9 28/21 33/9 33/14 35/12
**additional [3]** 7/24 9/2 18/22
**additions [1]** 32/5
**address [1]** 34/14
**adduce [1]** 15/18
**adjourned [1]** 40/22
**admissible [3]** 16/4 20/20 20/22
**admission [1]** 20/15
**admit [2]** 20/11 21/6
**admits [1]** 21/7
**admitted [4]** 20/13 21/2 21/8 21/9
**admittedly [1]** 32/17
**advance [1]** 13/19
**advantage [1]** 17/25
**affect [7]** 12/25 33/17 33/18 33/22 33/24 33/25 38/4
**affected [1]** 14/4
**affirmatively [1]** 25/2
**after [2]** 19/23 21/2
**afternoon [2]** 8/2 8/3
**again [10]** 6/14 7/14 12/18 14/21 16/4 16/10 28/7 29/24 32/15 33/8
**against [1]** 36/24
**ages [1]** 10/12
**agree [15]** 15/15 20/19 20/22 23/14 23/18 25/11 25/13 26/13 26/25 27/8 28/19 28/24 29/15 31/16 38/3
**agreed [1]** 11/5
**agreement [3]** 28/14 29/22 30/19
**agrees [1]** 28/10
**ahead [2]** 18/9 21/9
**aid [3]** 17/20 26/9 38/13
**aided [2]** 2/7 23/23
**aider [2]** 25/5 25/24
**aiding [12]** 22/12 23/16 23/18 24/9 24/14 24/23 25/16 27/5 28/5 29/11 29/16 30/1
**albeit [1]** 14/4
**Albuquerque [1]** 1/14
**all [15]** 4/9 6/3 8/3 9/22 14/13 15/6 19/21 19/24 20/19 21/22 28/13 28/21 29/7 38/10 39/11
**allow [1]** 19/2
**allowed [1]** 15/18
**alluded [1]** 15/24
**already [1]** 5/22
**also [8]** 3/10 13/16 16/15 18/25 27/23 29/2 36/3 37/14
**alternate [3]** 10/18 10/19 10/22
**alternates [9]** 10/6 10/8 10/9 10/10 10/11 10/13 10/14 10/18 10/23
**alternative [3]** 23/17 24/1 24/16
**although [1]** 15/15
**always [6]** 10/13 17/5 17/14 17/18 24/24 35/25
**am [2]** 12/21 12/21
**ambiguous [1]** 22/4
**AMERICA [1]** 1/3
**among [2]** 9/9 11/20
**amount [1]** 8/14
**analogous [1]** 38/14
**animosity [2]** 38/12 38/25
**another [3]** 6/14 25/25 38/6
**answer [1]** 5/7
**anticipate [1]** 8/1
**any [17]** 4/6 6/18 15/21 17/15 21/21 23/10 24/4 31/15 32/2 32/13 32/21 33/12 34/1 34/6 34/22 36/18 39/6
**anybody [2]** 13/2 37/5
**Anyone [1]** 6/15
**anything [10]** 5/22 6/15 6/16 10/23 11/13 30/21 38/5 39/9 39/11 40/11
**anywhere [1]** 36/2

**A**

**apologize [1]** 9/6
**appearance [2]** 12/12 24/8
**APPEARANCES [2]** 1/12 2/1
**appears [1]** 32/12
**appellate [2]** 26/4 26/6
**apply [1]** 14/21
**appreciate [4]** 15/14 15/16 18/21 37/19
**appropriate [8]** 13/8 23/1 24/23 35/8 38/10 38/14 38/20 39/5
**approval [1]** 11/16
**April [1]** 1/6
**are [45]**
**area [2]** 26/4 29/12
**aren't [1]** 17/22
**argue [1]** 13/14
**argument [1]** 14/18
**arguments [2]** 23/25 24/1
**around [1]** 30/14
**arrest [2]** 11/10 11/19
**as [54]**
**aside [1]** 38/11
**ask [12]** 4/13 5/21 6/3 7/7 8/7 18/10 21/8 23/21 34/16 35/6 37/25 39/6
**asked [7]** 7/20 7/20 33/1 34/8 34/24 35/11 38/16
**asking [12]** 4/5 6/1 7/17 17/18 21/4 30/5 32/10 35/16 37/21 37/23 38/10 38/19
**asks [1]** 32/16
**assessment [1]** 31/23
**association [1]** 37/8
**assume [2]** 5/24 15/7
**assuming [3]** 12/13 15/25 19/17
**attempt [7]** 26/22 27/13 27/17 27/21 27/24 28/5 29/4
**attempted [2]** 27/11 27/23
**attempting [1]** 12/11
**attempts [1]** 22/12
**attitude [1]** 37/13
**ATTORNEY'S [2]** 1/13 1/17
**audience [1]** 4/20
**AUSA [2]** 1/13 1/16
**authority [2]** 14/12 27/3
**authorized [3]** 13/21 14/5 14/14
**available [2]** 14/13 17/21
**Avenue [1]** 2/3

**B**

**back [15]** 4/2 10/12 17/11 18/4 18/6 18/11 18/12 18/18 18/20 19/6 19/8 31/21 33/16 33/23 40/21
**bare [1]** 29/10
**based [3]** 13/15 13/21 25/7
**basically [3]** 34/11 34/13 35/4
**basing [1]** 26/10
**basis [1]** 15/19
**Batson [2]** 9/23 9/25
**be [123]**
**because [25]** 4/23 5/17 7/9 7/16 7/17 8/5 8/13 8/14 8/16 9/23 10/16 14/1 14/13 17/15 17/23 26/5 27/8 27/21 30/1 35/3 35/25 36/4 36/13 36/18 38/2
**become [1]** 11/12
**been [14]** 4/19 6/20 6/21 9/8 9/23 9/25 13/16 13/18 14/22 17/5 17/14 18/3 21/2 26/6
**before [6]** 1/10 9/2 18/2 18/3 19/25 20/12
**behalf [3]** 3/9 30/23 32/4
**behave [1]** 14/15
**being [9]** 7/10 9/20 23/24 28/1 29/17 29/17 34/8 34/23 36/4
**belief [1]** 36/13
**beliefs [2]** 38/5 39/3
**believe [15]** 11/17 13/6 13/16 13/22 14/19 14/20 15/1 15/20 16/23 18/23 29/10 34/15 35/7 35/9 35/20
**believed [11]** 14/4 34/9 34/12 34/24 35/5 35/7 35/14 35/17 36/11 37/24 38/25
**better [4]** 21/12 21/13 36/2 38/1
**between [3]** 30/16 33/16 33/23
**bit [4]** 18/16 27/2 32/18 32/20
**body [1]** 28/23
**both [11]** 10/7 10/8 13/13 16/25 18/17 19/6 22/7 25/13 26/2 28/5 31/14
**box [6]** 4/11 4/22 5/1 9/14 9/20 9/21
**break [1]** 22/23
**breaking [2]** 26/14 27/4
**Brief [1]** 23/13
**briefing [1]** 15/24
**bring [2]** 4/3 4/10
**broad [2]** 32/18 33/2
**broken [1]** 28/9
**brought [2]** 7/10 19/12
**building [4]** 24/2 24/17 31/10 32/23
**bush [5]** 36/25 37/4 37/6 37/8 38/15

**C**

**call [6]** 7/24 8/24 19/20 19/23 19/25 29/22
**can [32]** 3/24 5/21 6/8 6/10 6/14 18/6 19/21 19/22 19/24 20/1 20/10 20/23 21/9 22/23 25/13 25/23 26/12 27/1 28/11 28/14 28/18 28/20 29/20 31/22 33/9 33/9 36/1 36/19 38/22 40/3 40/9 40/21
**can't [5]** 7/12 9/3 21/7 29/20 36/17
**candid [3]** 24/19 35/23 36/7
**cannot [1]** 8/6
**Capitol [5]** 11/25 11/25 14/6 24/2 24/4
**capitulation [1]** 26/6
**carefully [1]** 36/4
**carried [1]** 22/13
**case [35]** 7/13 7/14 7/18 8/6 8/12 8/12 8/13 8/17 10/17 10/18 10/21 12/3 13/4 13/8 16/21 17/2 18/15 20/12 24/12 24/20 24/22 25/1 29/9 32/17 34/8 34/8 34/14 34/16 34/24 35/4 35/15 35/20 35/21 36/10 37/3
**cases [3]** 8/14 10/12 24/16
**Cathryn [4]** 2/2 41/2 41/15 41/16
**cause [4]** 9/6 9/8 36/22 37/6
**ceremonial [2]** 3/23 6/25
**certain [1]** 16/2
**certainly [5]** 13/12 15/15 18/21 25/15 29/10
**CERTIFICATE [1]** 41/1
**certify [1]** 41/4
**challenge [2]** 9/23 9/24
**change [5]** 23/19 29/11 31/17 34/3 36/18
**changed [1]** 3/21
**changes [2]** 3/16 31/22
**charge [1]** 31/4
**charged [1]** 36/1
**charges [2]** 34/7 34/23
**check [1]** 5/6
**chief [1]** 3/19
**choice [1]** 40/3
**choose [1]** 6/15
**chose [1]** 40/2
**circle [1]** 5/4
**circulated [1]** 11/19
**citizens [1]** 14/15
**city [1]** 36/8
**clear [5]** 21/17 25/14 25/17 25/21 26/10
**Clemens [1]** 8/13
**clerk [6]** 3/19 19/20 32/9 33/9 39/12 39/14
**clerk's [1]** 39/20
**client [3]** 14/3 14/21 29/4
**close [1]** 23/6
**closed [1]** 16/13
**colleagues [1]** 8/8
**COLUMBIA [5]** 1/2 35/25 36/3 36/6 41/4
**Columbus [1]** 1/22
**come [7]** 13/2 13/10 15/9 15/23 20/8 30/18 31/20
**coming [2]** 17/6 39/17
**committed [5]** 22/24 27/21 28/22 38/13 39/4
**committing [2]** 22/8 39/5
**common [1]** 30/12
**compared [3]** 23/24 29/17 30/6
**competed [1]** 27/25
**complained [1]** 4/24
**complete [1]** 7/23
**completed [2]** 27/22 27/24
**complex [1]** 26/4
**complicated [1]** 24/21
**complicates [1]** 24/20
**computer [1]** 2/7
**computer-aided [1]** 2/7
**concern [8]** 34/5 35/15 35/23 36/8 36/16 37/15 37/19 38/22
**concerned [3]** 5/2 28/1 40/6
**concerns [2]** 17/18 37/10
**concerted [2]** 13/16 14/2
**conclude [2]** 25/4 39/4
**concluded [1]** 27/23
**conclusion [1]** 25/6
**conduct [4]** 3/22 4/24 5/23 29/3
**conducting [1]** 3/18
**conference [2]** 1/9 19/25
**confused [3]** 11/10 12/7 13/9
**congressional [1]** 24/6
**connection [2]** 32/14 32/21
**consider [2]** 34/8 34/24
**consideration [1]** 30/20
**considering [1]** 35/24
**consistent [5]** 4/4 4/15 16/24 22/21 33/19
**Constitution [1]** 2/3
**constitutional [1]** 14/15
**Cont'd [1]** 2/1
**contact [2]** 15/9 19/24

**C**

**context [1]** 25/23
**continue [1]** 40/7
**contrasted [1]** 14/25
**conversation [1]** 15/23
**convey [1]** 35/23
**convict [1]** 39/3
**convince [1]** 28/18
**convinced [1]** 35/25
**correct [5]** 11/7 11/8 12/4 39/24 41/5
**correctly [1]** 15/5
**corruptly [1]** 29/6
**could [9]** 7/18 12/12 13/20 14/9 26/14 28/18 28/19 34/6 36/22
**counsel [12]** 4/14 5/8 5/25 6/3 6/10 9/13 15/23 24/11 29/19 39/10 39/10 40/2
**Count [5]** 22/6 22/17 23/2 31/1 31/5
**country [1]** 36/2
**counts [3]** 16/6 31/6 31/7
**couple [3]** 6/17 21/25 32/8
**course [3]** 11/17 14/18 15/2
**court [39]** 1/1 2/2 2/2 2/3 5/8 5/16 5/20 6/18 6/24 7/2 12/15 13/2 13/13 14/19 16/12 16/13 16/15 16/21 17/6 18/14 19/3 21/1 21/5 21/6 22/1 22/17 24/11 26/5 27/8 28/9 32/15 34/6 37/20 38/6 39/14 41/2 41/3 41/9 41/16
**Court's [11]** 12/11 12/18 14/12 15/15 15/16 18/21 20/16 21/11 22/13 32/5 37/19
**courthouse [2]** 3/20 16/18
**courtroom [13]** 3/24 4/2 4/3 4/11 4/21 6/10 6/13 6/14 6/25 9/17 9/22 39/22 40/13
**courtrooms [1]** 6/25
**courts [3]** 20/10 21/9 26/7
**cover [2]** 27/25 33/2
**COVID [2]** 39/23 41/8
**COVID-19 [1]** 41/8
**CR [1]** 1/4
**Cramer [1]** 19/21
**create [1]** 20/20
**creates [1]** 21/13
**crime [2]** 28/22 36/1
**Criminal [1]** 3/3
**cross [1]** 16/25
**crowd [1]** 24/9
**crux [1]** 34/14
**culpability [4]** 26/9 26/10 29/17 30/3
**curious [1]** 8/9
**currently [1]** 37/20

**D**

**D.C [2]** 1/6 2/4
**dark [1]** 10/12
**day [6]** 15/19 17/2 17/17 31/14 40/16 41/11
**days [4]** 8/9 8/17 8/19 16/18
**DC [1]** 4/24
**decide [1]** 10/17
**decided [1]** 11/14
**decision [3]** 15/4 26/11 36/25
**decision-making [1]** 15/4
**defendant [15]** 1/7 1/21 22/7 22/16 22/19 22/20 23/8 24/7 26/18 26/19 27/18 34/12 35/5 35/20 37/24
**defendant's [1]** 38/5
**defense [14]** 10/2 10/3 13/7 13/7 14/12 15/23 18/11 18/13 20/7 24/11 28/10 35/7 38/19 39/10
**defense's [1]** 38/8
**defenses [4]** 13/6 13/14 14/9 15/16
**definition [2]** 30/6 30/7
**degree [4]** 3/21 3/25 8/4 36/5
**democracy [1]** 14/7
**democratic [1]** 36/7
**depend [2]** 8/4 11/12
**depended [1]** 17/7
**depends [1]** 7/25
**description [1]** 28/7
**detention [1]** 11/18
**determine [1]** 15/5
**did [11]** 3/15 4/24 12/14 13/5 14/16 21/21 22/6 22/6 24/13 29/5 35/20
**didn't [4]** 25/1 31/6 32/25 38/2
**difference [1]** 30/16
**differences [1]** 29/20
**different [11]** 6/23 10/10 13/24 14/8 22/8 22/23 25/25 26/1 29/16 29/21 34/22
**differentiate [1]** 26/16
**dire [12]** 3/22 3/23 4/2 4/8 4/10 8/23 32/1 32/2 32/11 33/6 34/16 34/19
**direct [2]** 16/25 32/13
**directed [1]** 37/20
**directly [1]** 37/3
**disagree [5]** 14/19 25/12 25/20 32/25 33/2
**disagreement [2]** 29/12 31/24
**discuss [3]** 29/19 39/11 39/12
**discussed [1]** 20/5
**discussing [2]** 19/12 20/3
**dispute [2]** 17/1 18/24
**disrupt [1]** 14/6
**disrupting [1]** 24/3
**distance [2]** 3/25 6/14
**distinct [3]** 15/17 25/17 25/18
**DISTRICT [9]** 1/1 1/2 1/11 2/3 35/25 36/2 36/6 41/3 41/3
**diverge [1]** 29/1
**do [26]** 5/2 5/14 6/9 6/15 9/6 9/6 9/8 9/12 10/10 12/2 17/10 17/11 18/14 24/10 24/16 25/1 25/2 26/8 31/24 32/12 32/20 33/2 33/24 37/21 38/2 41/4
**Docket [1]** 1/4
**does [7]** 6/18 8/24 20/25 23/18 26/25 34/5 35/16
**doesn't [7]** 8/18 8/19 18/13 24/14 24/21 38/20 39/2
**don't [32]** 6/23 7/14 9/1 9/22 10/8 10/11 11/20 13/2 13/3 15/15 16/10 17/20 18/20 19/5 20/18 21/22 22/14 25/11 25/12 25/20 28/21 28/25 29/9 30/4 30/7 32/25 34/15 35/9 36/1 36/18 38/18 38/22
**Donald [9]** 1/21 3/9 13/24 36/9 36/11 37/11 37/13 37/14 38/25
**done [5]** 6/19 13/19 18/6 19/23 24/25
**down [4]** 6/25 16/18 32/19 40/6
**downside [1]** 38/18
**drafted [1]** 28/17
**drank [1]** 38/12
**Dreher [2]** 1/16 3/6
**due [1]** 22/3
**duped [1]** 14/3
**during [7]** 4/7 5/13 14/9 16/1 20/14 39/16 41/7
**DUSTIN [4]** 1/6 3/3 3/9 39/17

**E**

**each [3]** 10/5 28/4 28/20
**earlier [1]** 19/13
**easier [2]** 5/17 9/12
**effect [2]** 12/6 32/20
**effectively [3]** 21/9 22/18 23/25
**effectuate [1]** 12/16
**effort [2]** 13/17 36/20
**eight [1]** 10/20
**either [3]** 28/9 39/9 40/11
**election [6]** 13/18 34/10 35/1 36/11 38/3 39/1
**element [1]** 16/6
**elements [2]** 15/6 29/7
**elephant [1]** 36/17
**Eleven [1]** 13/25
**elongate [1]** 7/6
**else [10]** 6/15 6/16 10/24 25/2 30/21 36/2 39/9 39/11 40/11 40/20
**email [2]** 3/15 32/9
**empower [1]** 14/15
**encompass [1]** 27/20
**encouraged [1]** 25/2
**endeavored [1]** 16/20
**ends [1]** 36/4
**enough [1]** 33/2
**enter [2]** 12/1 13/21
**entered [1]** 24/17
**Entering [1]** 31/9
**entire [4]** 3/23 4/1 4/10 16/17
**entirely [1]** 22/3
**entitled [1]** 41/6
**entrapment [3]** 13/7 14/20 35/8
**equal [1]** 10/4
**equipment [1]** 7/2
**equitable [1]** 14/18
**especially [1]** 8/15
**Esquire [2]** 1/21 1/21
**essence [2]** 11/22 13/22
**essentially [1]** 20/11
**estoppel [3]** 13/7 14/18 14/20
**even [10]** 14/21 15/2 17/18 19/7 20/12 24/4 27/4 37/2 39/23 40/5
**event [1]** 24/4
**events [3]** 13/1 32/14 32/21
**ever [1]** 36/1
**every [1]** 10/11
**everybody [1]** 38/16
**everything [4]** 15/8 17/19 18/5 20/1
**evidence [12]** 11/13 13/10 15/18 16/3 17/6 17/15 17/15 18/2 18/22 20/23 23/22 25/8
**evident [1]** 24/7
**exact [1]** 19/9
**exactly [5]** 21/3 21/4 21/14 26/21 28/12
**examination [1]** 16/1
**example [2]** 22/12 37/25
**exclude [2]** 33/1 38/22
**excluded [1]** 32/19

**E**

**excuse [1]** 32/10
**exercise [3]** 5/9 9/19 10/7
**exercised [1]** 9/23
**exhibit [5]** 18/11 21/6 21/7 21/8 21/16
**exhibits [10]** 19/14 20/4 20/7 20/11 20/13 20/14 20/17 20/20 20/22 21/1
**exists [1]** 36/5
**expect [1]** 16/23
**expeditiously [2]** 16/11 16/25
**experience [1]** 6/21
**extends [1]** 7/3
**extent [1]** 24/20

**F**

**facilities [1]** 19/18
**fact [6]** 11/19 11/25 13/21 14/3 27/22 35/20
**facts [1]** 8/15
**factual [4]** 24/5 24/13 27/16 35/13
**factually [1]** 17/1
**fair [10]** 8/6 34/7 34/23 35/8 35/9 35/18 36/12 36/19 37/7 38/4
**fair-minded [1]** 36/19
**family [1]** 39/15
**far [8]** 3/18 3/22 5/2 13/19 13/24 14/2 17/4 40/6
**fault [1]** 22/4
**feel [4]** 7/9 8/5 9/25 35/3
**feeling [1]** 37/9
**feelings [2]** 37/2 38/2
**ferret [2]** 37/1 37/16
**few [1]** 28/8
**fill [2]** 4/4 5/3
**final [1]** 10/22
**find [6]** 22/6 22/9 22/19 24/19 27/17 34/18
**finding [2]** 22/16 30/2
**fine [7]** 12/5 17/4 18/12 18/18 19/9 20/7 23/17
**finished [2]** 16/12 16/16
**first [7]** 9/13 14/13 26/14 26/15 26/17 33/11 40/16
**five [1]** 37/20
**fix [1]** 17/17
**fixed [1]** 23/15
**flagged [1]** 22/1
**flat [1]** 29/4
**flaws [1]** 17/16
**focus [3]** 10/15 18/24 19/3
**focuses [1]** 29/7
**follow [3]** 4/15 21/11 38/11
**follow-up [1]** 4/15
**follower [2]** 37/12 37/12
**following [1]** 5/13
**fond [1]** 36/9
**fondly [1]** 37/10
**foregoing [1]** 41/4
**forgive [1]** 14/20
**forgot [1]** 39/14
**form [10]** 9/15 21/20 21/22 22/2 22/14 22/25 25/14 30/5 30/22 31/7
**formally [1]** 21/8
**formed [1]** 15/19
**former [5]** 7/7 12/7 34/9 34/25 35/14
**forms [1]** 25/21
**forth [2]** 33/16 33/23
**found [1]** 34/12
**foundation [2]** 16/1 16/5
**four [4]** 8/17 10/19 28/20 32/11
**Fourteen [1]** 33/22
**framework [1]** 14/15
**Frankly [1]** 16/25
**Friday [5]** 16/12 16/12 16/13 16/14 16/17
**full [1]** 8/9
**fully [2]** 6/3 6/7
**further [2]** 8/20 32/5

**G**

**gallery [1]** 4/25
**gang [1]** 18/25
**general [1]** 25/12
**generally [2]** 12/1 40/4
**George [1]** 38/15
**get [15]** 3/15 4/16 9/2 9/7 9/7 22/2 23/16 23/17 27/10 31/21 32/22 36/1 36/19 40/14 40/21
**give [12]** 4/14 7/21 10/8 19/20 19/23 19/23 30/2 34/7 34/23 35/8 35/18 37/7
**given [1]** 18/14
**gives [1]** 17/25
**giving [2]** 18/21 39/12
**global [1]** 31/20
**gmail.com [1]** 1/23
**go [14]** 4/1 4/9 9/21 13/25 18/4 18/9 18/18 18/20 20/18 21/9 24/1 33/16 33/23 36/25
**going [34]** 4/5 5/18 7/7 7/8 7/11 7/14 8/1 8/4 10/17 12/13 13/10 13/14 16/11 17/9 18/10 18/11 18/12 19/5 19/13 19/13 19/16 20/8 21/14 21/16 23/21 24/4 26/2 29/1 29/3 29/9 30/3 30/16 38/16 39/11
**gone [1]** 27/13
**good [9]** 3/5 3/7 3/8 3/11 11/1 16/13 18/7 29/8 37/21
**got [5]** 12/5 23/10 31/11 36/16 40/18
**government [23]** 1/13 6/5 10/2 10/4 11/18 15/5 15/21 15/24 18/8 19/2 20/10 21/24 23/21 25/13 25/20 26/25 28/18 29/25 30/5 32/15 33/18 34/5 39/9
**government's [4]** 23/22 30/9 32/7 38/21
**grapevine [1]** 8/8
**grappling [1]** 11/18
**grouse [1]** 12/14
**guess [7]** 8/10 12/7 13/9 17/10 23/18 25/23 29/8
**guessing [1]** 17/22
**guilty [3]** 22/16 27/18 34/12
**gunpoint [1]** 13/25
**gymnastics [1]** 29/8

**H**

**had [19]** 3/18 4/19 7/21 11/11 11/25 12/25 13/18 13/25 15/9 17/18 20/5 24/9 32/8 34/25 36/11 37/1 37/2 37/4 39/3
**half [1]** 8/17
**handle [1]** 16/21
**handled [1]** 8/12
**happened [1]** 25/1
**happens [1]** 10/21
**happy [2]** 4/23 19/1
**hard [2]** 7/5 19/16
**hardness [1]** 4/25
**has [11]** 10/2 10/3 12/2 13/13 15/6 16/16 18/11 19/18 36/13 37/20 38/16
**have [86]**
**haven't [1]** 39/18
**having [3]** 4/19 13/2 20/14
**he [16]** 7/11 14/4 14/5 14/16 14/23 15/8 15/9 15/10 16/2 19/22 20/1 23/23 24/10 25/1 25/4 25/5
**he's [1]** 14/13
**hear [4]** 5/17 10/21 14/24 15/3
**heard [4]** 8/8 12/24 16/2 21/18
**hearing [3]** 5/20 19/23 41/7
**hearsay [2]** 11/3 11/5
**heinous [1]** 38/13
**help [2]** 18/23 24/8
**her [1]** 7/2
**here [7]** 4/24 17/1 24/24 25/17 37/9 39/15 40/15
**hereby [1]** 41/4
**hereto [1]** 41/10
**hey [1]** 13/25
**hide [1]** 36/17
**high [1]** 8/12
**him [6]** 7/10 12/12 12/15 12/25 19/21 19/25
**his [10]** 12/12 12/14 12/22 12/22 14/4 14/25 15/4 19/24 24/8 39/21
**Hold [1]** 23/12
**holiday [2]** 16/12 16/15
**Honor [51]**
**HONORABLE [1]** 1/10
**hope [3]** 7/18 8/3 8/18
**hopeful [2]** 8/10 17/2
**hopefully [6]** 5/19 7/23 10/1 16/11 17/17 29/19
**hostility [1]** 36/24
**how [15]** 5/23 6/18 8/5 13/2 13/4 13/9 13/22 14/8 15/20 16/10 16/21 26/4 28/9 28/12 28/22
**hundred [1]** 38/14

**I**

**I'll [12]** 4/12 4/14 5/20 6/23 9/19 9/20 10/18 10/19 10/19 29/19 29/22 39/20
**I'm [16]** 4/5 7/7 7/17 12/7 12/13 13/9 14/19 16/9 19/17 21/3 30/13 30/19 31/4 34/17 34/21 35/25
**I've [6]** 5/22 17/17 24/22 24/24 26/6 40/4
**identify [2]** 3/4 3/12
**III [1]** 33/10
**illogical [1]** 25/6
**impact [1]** 37/14
**impacts [1]** 13/23
**impanel [2]** 9/24 10/6
**impartial [3]** 35/18 36/12 38/4
**impartiality [1]** 33/23
**impede [1]** 28/20
**impeded [5]** 22/7 22/20 23/7 26/19 30/14
**impeding [6]** 23/17 26/15 26/16 27/20 30/7 30/17
**implications [1]** 8/16

I


important [2] 27/9 32/16
improved [1] 4/22
inclination [1] 18/20
include [1] 28/3
included [1] 30/7
inconsistent [1] 11/14
incorporate [2] 3/16 31/22
indicate [3] 20/21 21/15 33/9
indicated [9] 5/22 11/11 11/14 12/24 13/5 13/9 30/6 32/9 38/23
indicating [3] 4/7 5/7 33/3
indirect [1] 32/13
indiscernible [3] 27/4 28/3 31/1
individual [1] 4/8
individually [4] 4/3 4/10 20/15 20/19
infection [2] 3/20 40/6
inferred [1] 13/21
influence [1] 28/20
information [3] 7/9 13/23 19/24
informational [1] 16/19
initial [3] 9/4 10/3 10/20
initially [1] 7/20
inquire [1] 20/15
inquiry [1] 33/1
inside [1] 24/4
insidious [1] 14/2
instruction [3] 19/15 22/5 22/5
instructions [5] 3/16 22/1 27/6 32/10 33/6
intend [1] 33/1
intended [2] 24/8 24/10
intent [4] 12/23 13/1 13/10 24/10
intentionally [1] 31/13
interest [1] 13/7
interfere [1] 24/13
interference [1] 24/6
interrogatories [4] 22/17 22/22 26/14 31/2
interrogatory [4] 26/19 27/16 28/4 31/1
involved [2] 8/16 32/23
Iraq [1] 36/25
irrelevant [2] 12/23 15/14
is [101]
issue [15] 5/2 11/3 11/21 12/23 12/25 24/5 26/5 26/7 29/1 29/3 29/6 29/9 31/20 34/14 37/21
issues [5] 18/24 19/12 21/22 21/25 35/15
it [97]
it's [31] 4/4 7/5 8/1 8/4 12/9 13/14 13/24 15/20 17/1 17/5 17/5 17/15 18/3 22/16 23/16 24/12 24/12 25/3 29/2 29/9 34/19 35/6 36/7 38/10 38/13 38/14 38/15 38/18 38/20 39/5 40/3
its [4] 15/24 20/11 20/12 26/10
itself [1] 19/16


J


January [3] 15/4 32/14 32/21
January 6th [3] 15/4 32/14 32/21
Jenna [1] 19/12
Jennifer [2] 1/13 3/6
jennifer.m.rozzoni [1] 1/15
job [1] 37/21
joint [4] 13/17 17/9 19/14 20/16
Jones [4] 2/2 41/2 41/15 41/16
JUDGE [8] 1/10 1/11 8/7 11/1 19/15 28/16 30/18 32/4
July [1] 41/11
jurisdiction [1] 36/20
juror [7] 5/19 9/13 9/17 10/13 35/9 35/10 36/10
juror's [1] 37/22
jurors [33] 3/24 4/3 4/11 4/16 4/17 4/19 4/22 4/24 5/8 5/12 6/12 7/13 7/18 7/19 7/20 7/22 7/22 7/24 8/5 8/23 9/2 9/14 9/15 9/20 9/25 10/20 17/19 17/22 19/8 28/20 32/17 36/9 40/16
jury [49]
just [43]
justice [1] 17/16


K


keeping [1] 19/3
kind [3] 30/12 30/15 35/6
knew [4] 10/14 11/24 36/24 36/25
know [37] 4/12 5/8 6/22 7/9 7/14 9/1 9/13 9/17 10/11 12/13 16/10 17/14 17/16 17/23 19/1 19/8 20/13 21/22 22/19 24/3 24/3 24/25 25/11 26/3 26/4 27/2 27/4 27/5 27/5 32/13 32/22 32/24 35/17 37/24 38/18 39/15 39/20
knowingly [2] 31/13 31/14
knowledge [4] 13/23 14/4 15/1 15/1
known [1] 15/2
Kool [1] 38/13
Kool-Aid [1] 38/13


L


laid [2] 16/1 16/5
language [2] 30/15 30/19
large [3] 3/24 8/4 36/5
last [2] 10/5 16/11
lastly [1] 34/4
later [1] 27/1
law [5] 19/20 29/10 32/9 33/8 38/11
lawyers [1] 29/8
layperson [1] 30/13
leaning [1] 36/7
least [10] 3/21 3/22 5/7 5/25 7/22 8/2 16/5 25/7 25/18 37/12
leave [1] 9/21
Lee [1] 3/9
legal [6] 22/11 22/15 25/17 27/9 29/16 31/23
legally [3] 13/6 14/23 25/12
let [8] 6/3 12/16 17/6 18/19 22/2 29/19 39/20 40/14
liability [11] 22/11 22/12 22/15 24/17 24/24 26/1 26/2 26/24 27/5 28/5 28/11
Libby [5] 8/13 8/15 36/23 37/7 38/15
Libby's [1] 37/7
light [2] 3/20 37/7
like [13] 5/16 6/1 8/6 10/8 17/15 18/6 20/8 24/1 26/13 27/2 35/3 35/6 36/19
limitations [1] 41/9
limited [3] 16/3 16/7 38/7
line [1] 4/7
listed [1] 9/15
little [9] 6/22 7/3 7/16 11/9 12/7 13/9 18/15 27/2 32/18
location [2] 3/24 10/11
long [7] 6/7 6/18 7/1 7/4 8/18 16/10 19/15
longer [2] 6/21 7/16
look [1] 26/5
looking [1] 34/21
lose [4] 7/12 7/18 8/5 9/3
lot [4] 7/18 17/1 36/20 36/24


M


machine [1] 2/7
made [4] 13/11 20/23 22/10 31/22
mainly [2] 6/24 19/13
make [16] 19/18 19/22 20/1 21/10 21/21 26/12 28/3 29/22 31/17 31/23 32/20 33/19 35/24 36/20 37/1 37/4
makes [4] 5/17 9/12 27/6 38/6
making [2] 15/4 37/22
manner [1] 14/16
many [1] 8/5
mark [1] 4/6
marshals [2] 12/6 12/15
mask [6] 6/2 6/8 40/2 40/3 40/5 40/8
masks [3] 5/13 5/16 5/18
matter [4] 3/3 24/13 39/11 41/6
matters [2] 3/14 19/3
may [10] 7/6 7/9 7/12 9/24 14/21 19/8 24/11 24/18 25/9 37/10
maybe [4] 8/3 21/25 31/6 34/21
me [18] 6/3 7/21 8/17 14/20 17/25 19/9 21/4 22/2 25/3 26/1 28/15 29/21 31/21 32/11 39/2 39/12 40/14 40/21
mean [15] 7/5 18/18 20/19 23/22 24/24 25/1 27/19 29/6 30/11 36/7 36/15 36/16 38/15 39/2 39/2
meaning [1] 15/10
means [3] 5/5 22/8 22/23
media [1] 13/17
meeting [2] 3/19 7/21
members [1] 39/15
memo [1] 27/2
mens [2] 16/5 31/12
mental [3] 15/6 29/7 29/7
merely [1] 27/24
message [2] 14/3 14/22
messages [1] 11/4
Mexico [1] 1/14
might [10] 6/19 11/15 20/4 20/6 28/16 33/17 33/24 38/4 39/18 39/21
mind [1] 18/20
minded [1] 36/19
mindset [1] 36/14
mine [1] 7/1
minutes [2] 7/4 28/8
misconduct [1] 24/13
mistaken [1] 14/22
mistakenly [1] 14/5
modifications [2] 21/21 21/23
moment [2] 16/10 39/12
Monday [6] 8/24 16/9 16/15 16/17 19/25 40/13
more [6] 7/13 8/24 12/19 14/2 17/2 24/24
morning [10] 3/5 3/7 3/8 3/11 6/20 8/2 8/25 9/2 11/20 40/13
most [6] 16/21 16/24 25/15 27/6 29/9 30/11
move [7] 4/2 6/24 7/1 16/11 20/10

**M**

**move... [2]** 20/15 21/6
**Mr [18]** 3/11 3/13 11/24 12/24 13/20 14/21 15/10 15/19 16/1 19/21 30/23 32/4 36/12 37/7 37/11 37/15 39/4 39/16
**Mr. [3]** 20/6 35/20 37/7
**Mr. Libby [1]** 37/7
**Mr. Shamansky [1]** 20/6
**Mr. Trump's [1]** 35/20
**much [2]** 6/23 10/16
**my [13]** 4/2 9/5 17/5 18/3 19/20 25/7 33/8 36/8 36/14 36/16 39/12 39/18 41/10

**N**

**N.W [1]** 2/3
**Nah [1]** 39/18
**name [2]** 14/7 41/11
**nature [2]** 7/17 23/19
**necessarily [2]** 35/11 37/3
**necessary [1]** 15/6
**need [16]** 3/14 4/7 4/17 11/17 20/20 20/21 22/6 22/9 24/21 25/15 28/13 28/21 31/22 36/18 39/10 39/11
**needed [3]** 13/18 24/25 29/18
**needs [3]** 19/22 22/14 29/25
**never [1]** 26/4
**New [1]** 1/14
**next [4]** 9/5 9/13 9/17 19/25
**nine [1]** 40/16
**no [18]** 1/4 3/17 4/21 10/25 11/1 13/14 17/2 18/17 20/7 27/13 27/22 29/22 32/5 33/13 34/2 34/2 39/7 40/1
**nobody's [1]** 12/13
**none [1]** 10/22
**nonetheless [1]** 37/4
**normal [1]** 30/15
**normally [2]** 7/13 7/16
**not [66]**
**note [3]** 24/12 39/13 41/7
**noted [2]** 20/6 21/24
**nothing [3]** 8/20 12/2 40/20
**notion [2]** 6/18 23/15
**now [9]** 4/19 4/21 4/22 4/25 6/23 12/22 27/13 29/11 39/25
**number [10]** 4/17 7/16 7/19 7/22 9/3 9/7 24/20 24/21 33/8 33/11
**numbered [2]** 4/4 9/16
**numbers [2]** 10/4 40/6
**numeral [1]** 33/10
**numerically [1]** 9/17

**O**

**object [1]** 18/13
**objected [1]** 11/6
**objection [13]** 3/17 18/11 18/17 20/8 20/13 23/10 31/15 33/12 33/13 34/1 34/2 38/7 39/6
**objectively [1]** 15/3
**obstruct [2]** 24/8 28/19
**obstructed [5]** 22/7 22/19 23/8 24/3 26/18
**obstructing [3]** 23/17 26/15 26/16
**obstruction [4]** 27/20 30/6 30/13 30/17
**obviate [1]** 11/17
**obviates [1]** 11/17
**obviously [9]** 5/11 5/16 12/10 18/5 20/20 27/19 27/21 30/24 37/12
**occur [1]** 10/1
**occurred [3]** 13/1 22/9 41/7
**occurs [1]** 27/20
**off [2]** 6/8 40/9
**offense [5]** 22/8 22/23 23/19 31/7 31/12
**offering [1]** 17/8
**office [3]** 1/13 1/17 39/20
**official [8]** 2/2 22/20 22/21 23/8 26/18 26/20 41/2 41/16
**Oh [1]** 39/14
**Ohio [3]** 1/22 11/18 12/3
**okay [12]** 3/14 9/5 9/11 11/2 19/4 22/2 23/10 27/4 28/2 31/17 32/1 33/4
**omitted [3]** 23/2 23/3 32/12
**once [5]** 4/1 4/9 4/16 20/22 21/9
**one [29]** 4/23 7/5 8/8 8/22 10/3 10/4 10/5 10/19 10/21 16/10 17/16 17/17 21/25 22/6 22/9 22/18 22/19 23/2 23/12 24/20 25/9 25/24 26/12 27/2 33/11 35/12 35/21 38/6 39/12
**only [9]** 5/24 6/25 7/20 8/7 13/15 16/20 22/8 29/12 30/24
**open [1]** 39/23
**opening [1]** 20/12
**opportunity [2]** 4/14 27/1
**opposed [2]** 18/22 23/19
**oral [2]** 17/12 18/3
**order [5]** 9/14 12/15 12/20 15/4 20/21
**ordinary [1]** 30/10
**other [12]** 3/19 7/11 9/24 13/17 17/10 17/15 21/9 24/15 24/25 30/24 31/19 39/10
**others [4]** 13/20 18/23 24/9 39/6
**others' [1]** 14/6
**otherwise [4]** 5/10 10/16 15/13 38/16
**ought [1]** 15/3
**our [20]** 3/21 6/2 9/6 12/16 12/19 14/3 14/14 14/21 15/22 17/16 18/20 19/4 19/21 22/4 25/18 29/4 35/15 38/7 38/9 38/19
**out [22]** 4/4 4/20 4/25 5/3 7/10 8/23 10/4 13/17 19/17 22/23 23/7 26/14 27/4 27/12 27/16 28/8 28/9 29/4 29/10 36/21 37/1 37/16
**outset [1]** 20/11
**over [2]** 22/13 39/6

**P**

**p.m [1]** 40/23
**page [1]** 27/2
**pages [1]** 41/4
**pandemic [1]** 41/8
**panel [7]** 7/24 8/9 9/4 35/19 36/4 37/1 38/24
**paper [3]** 4/4 4/12 5/3
**pare [1]** 32/19
**parents [1]** 39/17
**part [5]** 8/2 24/8 31/2 36/14 38/24
**partial [2]** 8/6 35/9
**particular [4]** 4/7 18/14 21/16 35/13
**parties [18]** 3/4 11/4 11/13 11/20 16/20 16/23 17/7 18/18 19/6 19/9 20/5 20/14 20/22 26/13 27/7 28/7 32/11 40/13
**party [1]** 17/8
**party's [1]** 30/25
**past [2]** 6/20 6/20
**pause [1]** 23/13
**people [10]** 5/5 7/9 7/11 30/11 30/14 30/15 36/21 37/2 37/10 38/2
**per [3]** 10/9 10/23 19/15
**percent [1]** 38/14
**perfectly [2]** 38/14 38/20
**perhaps [3]** 22/1 22/4 32/18
**permission [1]** 21/1
**permitted [1]** 5/15
**person [9]** 19/21 25/23 34/7 34/9 34/23 34/24 35/7 35/14 38/19
**person's [1]** 15/1
**personnel [1]** 3/20
**pertinent [1]** 13/4
**pick [3]** 7/19 8/17 9/3
**piece [1]** 18/22
**place [4]** 5/6 19/18 20/1 23/24
**Plaintiff [1]** 1/4
**platforms [1]** 13/17
**play [1]** 27/14
**played [1]** 7/11
**please [2]** 3/4 41/7
**plexiglass [2]** 5/14 6/9
**podiums [2]** 6/10 6/11
**point [1]** 9/7
**police [1]** 11/25
**policy [1]** 18/3
**political [4]** 8/16 35/24 36/5 36/21
**portion [1]** 23/15
**portions [1]** 19/17
**position [12]** 14/12 15/16 18/21 19/4 21/12 21/13 27/3 28/8 30/9 38/8 38/9 39/1
**possibility [1]** 20/5
**potential [5]** 5/8 7/12 11/3 32/17 36/8
**pow [1]** 18/19
**practice [2]** 6/20 17/5
**practicing [1]** 12/19
**precluded [1]** 13/13
**preempts [1]** 9/9
**prefer [2]** 21/1 40/13
**preference [1]** 21/11
**preferred [1]** 21/15
**prefers [1]** 21/5
**premise [1]** 35/13
**prerogative [1]** 5/11
**presence [1]** 12/22
**present [5]** 3/10 17/2 20/23 24/2 39/16
**presented [5]** 14/9 16/25 17/19 26/2 30/3
**presenting [1]** 6/1
**president [12]** 7/8 12/7 13/25 14/5 14/13 14/14 34/9 34/25 35/5 36/25 37/3 37/6
**president's [2]** 13/22 35/14
**presidential [3]** 34/10 35/1 38/3
**presume [1]** 9/7
**PRETRIAL [1]** 1/9
**previously [4]** 11/14 12/23 13/5 13/8
**principal [5]** 23/24 25/4 25/16 25/24 29/17
**principle [2]** 25/12 26/8
**prior [2]** 11/10 21/12

P

**probably [9]** 5/6 7/8 7/15 8/1 8/2 9/1 32/16 36/9 40/17
**problem [4]** 5/19 19/5 35/2 40/1
**problems [2]** 7/6 11/3
**procedural [1]** 19/12
**proceed [2]** 4/17 29/25
**proceeding [8]** 22/20 22/21 23/8 24/3 24/6 24/13 26/18 26/20
**proceedings [5]** 2/7 5/23 14/7 40/22 41/6
**process [8]** 7/3 7/6 10/24 12/16 15/4 19/15 20/19 21/6
**produced [1]** 2/7
**proffer [1]** 12/12
**proffering [1]** 12/14
**profile [1]** 8/12
**progress [1]** 16/15
**prominence [1]** 24/15
**pronto [1]** 30/20
**proper [3]** 16/1 16/4 34/15
**proposal [3]** 26/13 28/15 30/25
**proposals [1]** 29/21
**propose [6]** 22/16 26/23 28/6 32/3 32/15 33/18
**proposed [8]** 22/4 22/5 22/14 22/25 32/10 33/6 33/6 34/19
**proposing [1]** 27/15
**prospective [8]** 12/19 25/19 26/11 29/22 30/12 30/13 32/7 37/15
**prospectives [3]** 36/5 36/22 37/5
**protecting [1]** 12/17
**protocol [3]** 3/21 5/12 40/7
**proved [1]** 15/6
**public [2]** 13/6 14/11
**publicity [1]** 8/14
**publish [2]** 21/1 21/8
**pull [1]** 19/17
**purportedly [1]** 13/3
**purposes [1]** 16/20
**pursue [1]** 25/13
**put [9]** 10/10 10/18 10/19 10/19 11/16 13/17 23/1 31/6 38/11
**putting [1]** 4/22

Q

**qualified [1]** 4/17
**question [31]** 6/11 8/23 9/5 17/10 17/15 23/18 26/17 26/24 27/9 27/22 32/12 32/16 32/18 33/11 34/5 34/13 34/15 34/17 35/4 35/10 35/13 35/14 37/17 37/25 38/1 38/7 38/9 38/15 38/20 38/22 39/6
**questioning [2]** 3/23 6/9
**questions [26]** 4/1 4/5 4/6 4/8 4/9 4/12 4/14 4/15 6/1 6/18 7/7 7/17 20/4 21/21 22/18 32/2 32/8 32/10 32/11 33/15 33/20 33/23 34/20 35/21 37/20 37/22
**quick [1]** 6/18
**quickly [1]** 17/21

R

**raised [1]** 11/3
**rally [1]** 19/16
**rate [1]** 3/21
**rates [1]** 40/6
**rather [1]** 22/8
**RBW [1]** 1/4
**re [1]** 9/24
**re-impanel [1]** 9/24
**rea [2]** 16/5 31/13
**reach [2]** 25/7 28/14
**read [8]** 16/22 16/23 17/7 18/6 19/7 19/10 21/14 34/6
**reading [1]** 19/1
**reality [2]** 10/15 36/17
**really [7]** 8/12 12/2 24/23 34/14 37/25 38/10 39/19
**reason [3]** 8/7 24/14 28/16
**reasonably [1]** 13/20
**reasons [3]** 13/8 18/13 38/23
**recall [1]** 30/4
**reconnect [1]** 7/2
**record [11]** 3/4 12/13 12/17 17/7 17/13 19/7 19/10 20/21 20/23 21/13 21/17
**recorded [1]** 2/7
**recordings [1]** 7/10
**reduced [2]** 3/20 17/11
**reference [7]** 5/10 11/2 11/10 12/8 16/9 28/14 32/1
**referred [1]** 31/2
**refuse [2]** 5/5 5/7
**regard [9]** 12/11 13/5 13/11 15/8 25/24 25/25 27/25 29/19 30/4
**regarding [13]** 3/15 5/22 7/7 8/14 11/3 11/4 15/18 18/21 21/20 29/3 30/21 32/2 39/1
**Regensburger [2]** 1/21 3/9
**REGGIE [1]** 1/10
**relate [1]** 15/8
**related [1]** 21/25
**relates [1]** 12/25
**relative [2]** 14/11 30/19
**release [1]** 9/22
**relevant [4]** 11/12 12/24 15/20 19/17
**rely [2]** 14/23 17/12
**relying [1]** 26/8
**remaining [2]** 22/22 31/9
**remarks [1]** 15/25
**remember [1]** 17/19
**remotely [2]** 41/5 41/9
**remove [2]** 6/2 6/24
**removing [1]** 27/5
**repeat [1]** 5/21
**reported [1]** 41/5
**reporter [7]** 2/2 2/2 5/20 6/24 7/2 41/2 41/16
**reporters [1]** 5/16
**reporting [1]** 41/9
**request [3]** 12/6 21/1 27/1
**require [3]** 25/18 26/25 30/2
**required [5]** 5/12 26/3 28/4 28/10 40/4
**reserve [1]** 11/11
**resolution [1]** 31/20
**resolve [2]** 3/15 29/20
**respect [6]** 16/3 16/5 24/5 26/13 28/22 31/1
**respectfully [2]** 14/19 15/15
**respond [2]** 4/13 5/5
**response [3]** 4/6 4/8 15/21
**responses [4]** 4/13 4/15 4/16 5/21
**restricted [1]** 31/9
**restrictions [1]** 39/23
**result [2]** 10/15 37/11
**results [1]** 38/3
**right [7]** 9/21 11/6 23/5 24/11 26/15 27/10 27/14
**rob [1]** 13/25
**Roger [1]** 8/13
**Roman [1]** 33/10
**room [4]** 2/3 6/13 19/19 36/17
**rounds [2]** 10/3 10/5
**Rozzoni [2]** 1/13 3/6
**RPR [2]** 2/2 41/16
**ruling [4]** 11/11 12/11 12/18 32/6
**rulings [1]** 13/11
**run [1]** 8/23

S

**safely [1]** 12/19
**said [9]** 7/11 13/3 13/25 14/1 17/22 17/23 23/8 33/5 33/21
**sake [2]** 19/2 19/14
**Sam [1]** 3/8
**same [6]** 5/3 14/23 24/10 24/15 37/9 38/1
**Samuel [1]** 1/21
**save [1]** 18/25
**saving [1]** 14/7
**say [8]** 4/16 7/5 7/12 15/8 21/9 22/6 36/11 36/19
**saying [5]** 15/7 20/7 23/1 35/1 36/15
**says [4]** 11/24 34/6 38/2 38/19
**schedule [1]** 16/9
**Scooter [4]** 8/13 8/15 36/23 38/15
**scrupulously [1]** 12/10
**scrutinize [1]** 36/3
**seat [4]** 6/19 8/9 10/19 10/20
**seated [5]** 4/11 4/20 5/1 9/14 9/16
**seats [1]** 4/25
**Seattle [1]** 1/18
**second [2]** 23/12 26/19
**secret [2]** 12/15 13/14
**section [1]** 8/24
**secure [1]** 12/12
**secured [1]** 11/25
**see [8]** 7/15 13/2 13/3 21/17 28/13 28/18 34/11 40/14
**seem [3]** 22/10 26/1 33/16
**seems [4]** 17/25 25/3 34/13 39/2
**seen [2]** 24/22 26/6
**selected [2]** 8/4 36/10
**selection [3]** 7/3 7/6 7/23
**send [1]** 17/11
**SENIOR [1]** 1/10
**sense [3]** 27/7 30/12 38/6
**sent [1]** 14/3
**separate [2]** 15/17 30/3
**series [1]** 20/11
**serve [1]** 12/15
**server [1]** 12/16
**service [3]** 12/6 12/16 12/16
**serving [1]** 37/5
**set [1]** 19/24
**seven [1]** 16/24
**several [2]** 3/14 10/5
**Shamansky [3]** 1/21 3/9 20/6
**shamanskyco [1]** 1/23
**she'll [1]** 19/23
**sheet [3]** 4/4 4/12 5/3
**shift [1]** 29/11

## S

**short [3]** 17/18 27/7 28/7
**shorthand [1]** 2/7
**should [16]** 10/16 14/20 14/24 17/6 19/7 19/10 23/15 26/10 31/7 31/14 34/12 36/14 38/10 38/24 40/5 40/7
**shouldn't [2]** 7/1 35/10
**show [2]** 21/7 21/10
**shown [2]** 21/14 21/16
**shut [1]** 16/18
**side [4]** 9/21 10/9 10/23 40/11
**sides [1]** 10/8
**significantly [1]** 14/8
**similarly [1]** 5/25
**since [12]** 3/16 5/14 10/2 12/15 12/21 12/23 16/17 17/5 17/11 17/16 30/4 40/16
**sir [5]** 12/4 15/13 28/25 29/13 29/23
**sit [3]** 9/21 16/14 16/17
**situated [1]** 6/12
**situation [1]** 36/22
**six [2]** 10/3 16/6
**slash [2]** 11/19 32/8
**so [81]**
**social [1]** 13/17
**socially [2]** 3/25 6/14
**some [24]** 3/19 3/21 3/25 5/5 7/4 7/8 7/11 9/24 15/25 16/5 16/6 18/22 20/4 20/10 21/21 23/23 24/5 25/2 25/23 26/6 28/14 32/23 32/24 34/5
**somebody [3]** 25/2 36/13 39/3
**somehow [1]** 25/21
**someone [9]** 24/2 24/17 24/25 32/13 32/23 35/17 36/10 38/23 38/25
**something [12]** 10/21 13/18 24/1 25/1 25/3 27/10 30/14 32/20 33/17 33/17 34/21 37/23
**sometime [1]** 19/25
**sometimes [3]** 10/15 21/5 26/4
**somewhat [1]** 22/4
**soon [2]** 31/21 40/21
**sorry [4]** 14/20 16/10 27/15 31/4
**sort [3]** 22/22 24/15 37/9
**sounds [2]** 18/7 26/13
**speaking [4]** 25/12 40/5 40/8 40/9
**special [4]** 22/17 30/5 30/25 31/2
**specific [1]** 37/23
**specifically [2]** 17/23 37/23
**spectators [2]** 4/21 39/23
**staff [1]** 39/14
**stand [1]** 5/15
**start [2]** 40/15 40/15
**stated [1]** 18/14
**statement [2]** 20/12 27/7
**statements [8]** 11/5 16/2 17/12 34/9 34/25 35/6 35/14 35/21
**STATES [6]** 1/1 1/3 1/11 3/3 3/6 41/3
**statute [2]** 28/17 28/23
**statutory [1]** 14/14
**stay [1]** 38/10
**step [1]** 21/6
**Stewart [1]** 1/17
**still [4]** 12/21 15/17 16/14 27/17
**stipulate [1]** 16/20
**stipulated [3]** 24/12 29/2 29/4
**stipulation [6]** 11/16 11/19 11/23 17/8 18/2 19/10
**stipulations [6]** 16/22 17/5 17/7 18/1 18/4 18/15
**stolen [1]** 13/18
**storm [1]** 14/6
**streamline [1]** 18/23
**streamlining [1]** 19/14
**Street [3]** 1/14 1/17 1/22
**stretch [1]** 25/3
**stricken [1]** 9/20
**strike [3]** 5/10 10/6 10/7
**strikes [7]** 4/18 9/6 9/19 9/22 10/9 10/20 10/23
**struck [1]** 9/8
**structure [1]** 28/12
**struggle [1]** 28/17
**struggling [1]** 23/14
**subject [3]** 11/16 30/25 41/8
**subjectively [1]** 15/2
**submit [11]** 13/23 15/17 27/1 27/7 28/7 28/14 29/10 29/20 31/13 32/3 38/1
**subpart [1]** 31/12
**subscribed [1]** 41/10
**such [2]** 28/17 37/2
**sufficient [1]** 9/3
**suggest [2]** 32/19 35/16
**suggested [1]** 14/16
**suggesting [2]** 34/11 38/5
**suggests [1]** 35/19
**Suite [2]** 1/14 1/17
**summarize [1]** 19/2
**support [1]** 23/23
**sure [13]** 6/6 16/21 19/18 19/22 20/1 21/3 21/11 28/3 30/13 30/19 36/20 37/1 37/4
**surprised [2]** 8/11 8/19
**system [1]** 17/17

## T

**take [13]** 6/8 6/19 6/23 7/1 7/15 8/1 8/18 8/19 19/8 23/7 24/15 27/16 40/9
**takes [3]** 6/21 7/3 36/20
**taking [1]** 27/11
**talk [3]** 19/21 28/13 36/16
**talking [2]** 22/11 30/14
**tape [2]** 7/10 19/15
**technological [1]** 41/9
**technology [2]** 17/17 17/21
**tell [2]** 5/20 18/5
**ten [1]** 10/2
**tend [1]** 29/15
**terms [2]** 18/25 30/10
**testify [2]** 5/15 13/2
**testimony [3]** 12/22 18/3 20/14
**text [1]** 11/4
**than [8]** 6/21 7/13 7/16 17/2 24/25 31/19 36/2 39/10
**thank [11]** 8/21 9/11 10/25 11/1 20/25 21/19 31/25 33/4 39/8 40/19 40/20
**that [268]**
**that's [37]** 5/10 7/14 12/5 13/4 14/25 15/14 15/20 16/13 17/4 17/14 18/18 19/4 19/6 19/8 19/9 22/21 23/17 25/16 25/21 27/8 27/13 28/25 29/12 30/15 31/19 32/18 35/1 35/4 35/9 35/15 35/21 35/22 37/9 37/15 37/16 39/7 40/7
**their [9]** 4/12 5/16 5/18 5/21 15/6 28/8 33/23 37/13 37/14
**them [36]** 3/17 4/4 4/10 4/13 5/3 5/4 5/6 5/17 5/20 5/20 5/21 7/21 9/21 9/22 10/8 10/21 15/2 15/5 16/22 16/23 17/11 17/19 18/2 18/3 18/6 18/12 19/1 19/2 19/5 19/8 19/8 28/19 35/16 35/18 36/22 37/6
**themselves [1]** 24/2
**then [27]** 4/9 4/14 4/17 5/18 8/4 9/5 9/7 9/8 10/5 10/6 10/22 17/10 17/11 18/12 18/12 18/13 20/13 20/23 23/6 23/7 23/9 27/3 27/20 27/22 33/10 33/15 34/4
**theoretically [1]** 28/18
**theories [10]** 22/11 25/13 25/17 25/25 26/2 26/24 27/9 28/6 28/10 29/12
**theory [11]** 22/13 22/15 24/16 24/23 26/9 26/9 27/17 27/17 29/16 30/1 30/3
**there [27]** 4/20 5/19 5/20 7/8 9/9 9/15 11/13 15/25 20/6 21/20 21/24 24/5 24/24 25/17 26/5 27/23 27/24 28/1 29/5 29/22 32/2 32/23 36/8 36/24 37/2 39/15 39/21
**there'd [1]** 27/22
**there's [11]** 3/17 7/12 9/23 9/25 18/5 18/17 29/3 31/23 36/18 40/1 40/20
**therefore [5]** 4/20 5/24 14/4 34/12 41/8
**thereon [1]** 12/1
**Thereupon [1]** 40/22
**these [6]** 19/12 19/13 25/21 29/5 29/7 35/17
**they [58]**
**they'll [2]** 4/23 4/25
**they're [9]** 5/5 5/17 6/13 11/5 17/9 17/11 26/2 29/8 30/15
**thing [4]** 25/9 28/4 30/24 35/12
**things [8]** 4/21 6/1 6/22 15/9 20/8 22/9 29/5 33/19
**think [89]**
**this [47]**
**THOMPSON [18]** 1/6 3/3 3/10 3/11 3/13 11/24 12/24 13/20 14/21 15/10 16/1 30/23 32/4 36/12 37/11 37/15 39/4 39/16
**Thompson's [1]** 15/20
**those [24]** 3/16 4/8 4/13 5/10 8/14 9/9 9/24 11/5 13/13 14/9 16/18 18/11 20/8 20/13 21/22 22/9 28/10 28/21 30/10 31/14 33/19 37/22 38/12 39/3
**though [5]** 14/21 19/7 32/17 37/3 40/5
**thought [4]** 24/24 33/1 37/4 39/19
**thoughts [1]** 32/8
**three [3]** 28/19 31/1 31/5
**through [9]** 4/1 4/9 8/8 15/25 20/18 32/11 33/16 33/21 33/22
**Thursday [1]** 16/16
**time [12]** 6/23 7/3 13/3 16/15 18/25 19/3 21/16 31/24 37/13 39/12 40/12 40/14
**today [3]** 3/15 7/21 27/2
**together [2]** 11/16 23/1
**told [1]** 7/21
**took [3]** 8/8 8/17 23/24
**totally [1]** 35/23
**towards [2]** 38/12 38/25

T

**transcript [5]** 1/9 2/7 17/20 17/21 41/5
**transcription [1]** 2/7
**transmitted [1]** 14/23
**trespassing [1]** 11/10
**trial [19]** 3/18 4/23 5/13 8/13 8/16 10/11 14/10 16/9 16/10 16/14 16/16 16/23 17/18 34/7 34/23 35/18 36/23 37/7 39/16
**true [1]** 41/5
**Trump [7]** 13/24 13/25 36/9 36/11 37/11 37/13 37/14
**Trump's [6]** 19/16 34/9 34/25 35/6 35/20 38/25
**try [4]** 31/20 31/21 37/1 40/15
**trying [5]** 10/12 32/22 34/17 35/22 37/16
**Tuesday [2]** 8/25 9/2
**two [24]** 6/25 8/9 8/12 8/19 10/3 10/6 10/8 10/19 10/22 10/23 13/6 14/9 15/16 16/18 21/5 22/7 22/18 22/20 24/21 25/17 25/25 26/1 26/14 26/15
**type [3]** 9/24 16/3 24/22

U

**U.S [3]** 1/13 1/17 2/3
**ultimate [3]** 34/14 35/4 35/10
**ultimately [1]** 27/3
**unanimity [13]** 25/18 26/3 26/5 26/7 26/11 26/25 27/9 28/1 28/4 28/10 29/18 30/2 30/2
**unanimous [3]** 22/15 25/15 28/22
**under [2]** 14/14 23/2
**underlying [1]** 8/15
**understand [14]** 11/2 11/4 12/10 12/18 13/13 14/12 14/16 29/8 30/12 30/16 32/5 36/15 37/19 38/21
**understandable [1]** 38/12
**understanding [3]** 15/22 25/7 30/10
**UNITED [6]** 1/1 1/3 1/11 3/2 3/6 41/3
**unlawful [1]** 12/1
**unless [2]** 10/21 21/7
**until [3]** 4/19 9/22 10/4
**unusual [1]** 18/16
**unvaccinated [1]** 5/4
**up [10]** 4/15 4/19 9/13 9/17 19/12 19/24 28/21 30/18 35/24 36/4
**upon [5]** 11/12 14/23 17/8 25/7 26/8
**upper [1]** 23/15
**urging [2]** 13/22 14/6
**us [4]** 14/13 18/19 18/25 25/14
**usdoj.gov [2]** 1/15 1/19
**use [5]** 6/10 20/14 21/10 30/15 40/7
**used [1]** 33/19
**usually [1]** 40/15
**uttered [1]** 13/15

V

**vaccinated [7]** 5/4 5/6 5/9 5/14 5/18 6/4 6/8
**various [1]** 26/6
**venue [1]** 36/18
**verbatim [2]** 19/1 19/7
**verdict [10]** 21/20 21/21 22/2 22/14 22/22 22/25 25/14 30/5 30/21 31/7
**versus [5]** 3/3 25/16 26/15 33/17 33/24
**very [18]** 6/7 11/9 12/5 12/20 14/22 16/8 16/8 16/24 20/2 24/19 24/19 27/7 33/14 34/3 36/4 36/7 37/10 40/10
**viability [1]** 24/14
**viable [1]** 27/17
**video [1]** 15/25
**videos [1]** 20/8
**view [5]** 12/21 12/21 12/22 20/16 36/14
**views [1]** 37/22
**violation [2]** 9/25 13/11
**virus [1]** 5/2
**voir [12]** 3/22 3/23 4/2 4/8 4/10 8/23 32/1 32/2 32/11 33/6 34/16 34/19
**volume [1]** 18/15

W

**WA [1]** 1/18
**walk [1]** 30/14
**WALTON [1]** 1/10
**want [8]** 5/9 12/14 18/18 19/6 19/9 20/1 27/10 28/3
**wanted [3]** 20/15 21/10 39/15
**wants [1]** 29/25
**was [50]**
**Washington [2]** 1/6 2/4
**wasn't [2]** 25/4 37/3
**way [8]** 18/2 22/10 23/23 25/2 28/17 32/23 38/1 38/6
**we [120]**
**we'd [1]** 9/2
**we'll [16]** 4/10 4/17 5/23 7/1 7/15 7/18 7/23 8/3 9/6 10/6 30/18 30/19 31/17 31/20 33/14 34/3
**we're [14]** 5/13 11/1 12/17 13/14 16/12 16/21 17/1 17/18 19/11 19/13 19/16 20/3 23/14 32/22
**we've [2]** 3/21 7/19
**wear [5]** 5/13 5/18 40/3 40/5 40/8
**wearing [1]** 40/2
**Wednesday [1]** 1/6
**weeding [1]** 36/21
**weight [1]** 18/22
**well [18]** 6/2 6/7 6/22 11/9 12/5 12/20 13/12 14/11 14/22 16/8 16/8 19/19 20/2 27/19 30/11 33/14 34/3 40/10
**went [3]** 15/3 15/19 29/4
**were [16]** 4/21 10/13 10/14 12/11 13/7 13/15 13/21 20/16 21/20 22/11 27/15 28/2 32/2 35/6 36/1 36/10
**weren't [1]** 37/2
**what [63]**
**what's [5]** 11/22 15/2 25/14 25/16 38/8
**whatever [2]** 21/15 31/22
**when [13]** 5/25 5/25 6/8 6/13 9/6 9/19 10/12 13/1 23/16 29/11 40/4 40/8 40/8
**where [6]** 6/10 21/6 24/22 29/1 29/1 36/10
**whereof [1]** 41/10
**whether [19]** 5/4 5/7 5/8 5/9 11/5 11/11 15/5 15/18 16/22 16/22 18/10 26/24 29/25 32/22 33/16 33/17 35/5 35/5 39/15
**which [21]** 3/24 5/5 5/12 6/25 7/3 9/13 11/17 14/16 17/8 18/15 18/24 20/17 20/21 21/16 22/7 22/15 22/22 22/23 25/18 31/4 33/5
**while [2]** 19/11 20/3
**who [24]** 3/10 5/10 7/9 9/17 10/12 10/13 10/20 24/9 24/17 32/23 34/10 34/25 36/4 36/9 36/10 36/13 36/21 37/2 38/2 38/12 38/25 39/1 39/3 39/16
**who's [1]** 24/2
**whole [1]** 17/1
**whom [1]** 16/24
**why [4]** 15/14 32/18 35/2 38/7
**wife [2]** 39/18 39/21
**will [52]**
**William [2]** 1/16 3/5
**william.dreher [1]** 1/19
**willing [1]** 38/11
**wishes [1]** 22/17
**within [1]** 28/22
**without [7]** 5/15 17/20 20/12 20/14 37/22 37/23 38/5
**witness [2]** 5/15 41/10
**witnesses [4]** 5/14 6/9 6/11 16/24
**won [3]** 34/10 34/25 39/1
**won't [2]** 5/19 18/2
**wondering [1]** 38/17
**word [1]** 33/18
**words [2]** 13/15 35/17
**work [1]** 19/16
**worth [2]** 12/10 29/2
**would [91]**
**wouldn't [3]** 8/19 10/15 39/3
**wow [1]** 18/19
**write [1]** 28/8
**writing [2]** 17/11 17/24
**written [2]** 18/1 18/4
**wrote [1]** 22/10

Y

**yeah [3]** 23/16 38/21 39/14
**yes [17]** 4/6 6/5 6/8 9/1 9/10 15/12 15/13 18/9 25/10 26/21 27/12 28/13 28/15 28/25 29/6 29/23 39/25
**yesterday [1]** 12/6
**you [97]**
**you'd [1]** 32/9
**you'll [2]** 6/19 16/22
**you're [14]** 6/7 6/8 15/7 21/4 23/1 26/8 33/3 34/23 35/1 36/15 36/21 40/4 40/8 40/8
**you've [1]** 27/21
**your [74]**
**yourself [1]** 3/12
**yourselves [1]** 3/4