IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

DUSTIN BYRON THOMPSON,

        Defendant.
_____/

Criminal Action
No. 1:21-cr-0161-1

Washington, DC
November 18, 2022

9:05 a.m.

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:    **WILLIAM DREHER**
        DOJ-USAO
        700 Stewart Street, Suite 5220
        Seattle, WA 98101

        **JENNIFER ROZZONI**
        DOJ-USAO
        201 3rd Street NW - Suite 900
        Albuquerque, NM 87102

For the Defendant:    **ANDREW STEWART**
        2111 Wilson Boulevard, 8th Floor
        Arlington, VA 22201

Court Reporter:    **JEFF M. HOOK**
        Official Court Reporter
        U.S. District & Bankruptcy Courts
        333 Constitution Avenue, NW
        Room 4700-C
        Washington, DC 20001

1            **P R O C E E D I N G S**

2            **DEPUTY CLERK:**  This is criminal action 21-161-1,

3   United States of America v. Dustin Thompson.  Would the

4   parties please come forward and identify themselves for the

5   record, starting with the government.

6            **MR. DREHER:**  Good morning, Your Honor.  William

7   Dreher and Jennifer Rozzoni for the United States.

8            **THE COURT:**  Good morning.

9            **MR. STEWART:**  Good morning, Your Honor.  Andrew

10  Stewart on behalf of Mr. Thompson.

11            **THE COURT:**  Good morning.

12            **MR. WALTERS:**  Good morning, Your Honor.  Robert

13  Walters with probation.

14            **THE COURT:**  Good morning.  This matter's here

15  today for the sentencing of the defendant following a trial

16  in which he was found guilty of a number of counts related

17  to the events that took place at the United States Capitol

18  on January 6th.  In preparation for the sentencing, I did

19  review the verdict form again; the presentence investigation

20  report; the sentencing recommendation; the government's

21  sentencing memorandum; the defendant's position with respect

22  to sentencing; the supplement to the defendant's position

23  with respect to sentencing; the government's response to the

24  defendant's sentencing memorandum; five letters from the --

25  submitted by the defendant, one including the defendant -- a

1    letter from the defendant himself.  Also, an evaluation by

2    Diane Benscoter; also, a second supplement to the

3    defendant's position with respect to sentencing.

4            Is there anything else I should have reviewed in

5    preparation for the sentencing?

6            MR. STEWART:  No, Your Honor, not from the

7    defense.

8            MR. DREHER:  I don't believe so.  Did Your Honor

9    mention you saw the letters submitted in both of the --

10   there were letters, I think, with the defense memorandum and

11   then separate letters with the supplement that they filed on

12   Monday.

13           THE COURT:  No, I only saw letters that were

14   submitted, I think, with the first defense submission.  Let

15   me just check.

16           MR. STEWART:  Your Honor, if you have the letter

17   from Mr. Thompson and the evaluation that was done by

18   Ms. Benscoter, then those were attached to the second.  That

19   would be everything.

20           THE COURT:  I did review those.  There are a

21   number of matters we need to address before I actually

22   proceed to sentencing.  First of all, there were -- let me

23   just ask, did the government have any objections to the

24   presentence investigation report?

25           MR. DREHER:  No, Your Honor, not the final report.

1          **THE COURT:**  And are there still outstanding

2    objections from defense counsel?

3          **MR. STEWART:**  There are, Your Honor.  I guess the

4    enhancements under 2J1.1 --

5          **THE COURT:**  Let me just ask, are you fully

6    vaccinated?

7          **MR. STEWART:**  Yes, I am.

8          **THE COURT:**  If you are, you can take your mask

9    off.  It makes it easier for the court reporter to hear you.

10         **MR. STEWART:**  Very well.  Thank you, Your Honor.

11   The outstanding objections are those outlined in the first

12   half of the position on sentencing.

13         **THE COURT:**  We need to go through them then so I

14   can rule on them.  First was paragraph 102, and there was an

15   issue about whether the event out in Ohio -- or one of the

16   events out in Ohio occurred in Franklin County, Ohio not

17   Franklin County, Tennessee.  The probation officer says

18   counsel must have misconstrued that, because the report does

19   indicate that it occurred in Ohio.

20         **MR. STEWART:**  Right.  I think that there were a

21   couple of places where it referenced -- there was a

22   reference to Tennessee in one of the lines.  But just as

23   long as we're clear that those -- that offense -- those

24   offenses all occurred in Ohio.

25         **THE COURT:**  I think 102 does say that.  I went and

1    looked at that, and it does seem to comport with what the

2    probation officer indicates.

3            Also, paragraph 44, what's your position regarding

4    that?  I mean, I understand he said that he found it, but he

5    was wearing it.  What does the report say that you think is

6    incorrect?

7            **MR. STEWART:**  I just wanted to clarify that it

8    wasn't brought -- he didn't bring it to the rally, that's

9    all.

10           **THE COURT:**  That's his position, but --

11           **MR. STEWART:**  That is our position, yes, Your

12   Honor.

13           **THE COURT:**  I think that's clear, that he said he

14   found it whereas -- who knows what happened, I don't know.

15   And paragraph 51 relates to the -- whether the defendant

16   stole a bottle of liquor.  What is that all about?

17           **MR. STEWART:**  Well, I guess one of the things that

18   I noticed -- obviously I wasn't trial counsel.  One of the

19   things I noticed is that the stipulation referenced two

20   bottles that were stolen.  It seems as though during the

21   trial there was evidence of one bottle.  I think that

22   counsel adopted -- both trial counsel at the time concluded

23   or argued there was only one bottle.  So I just wanted to

24   point out the fact that that stipulation may not have been

25   accurate or that that second bottle may not have been

1    stolen.

2                THE COURT:  Government.

3                MR. DREHER:  Thank you, Your Honor.  Just briefly,

4    it is true that --

5                THE COURT:  Are you vaccinated?

6                MR. DREHER:  I am.

7                THE COURT:  You can take it off, because he can

8    hear you better.

9                MR. DREHER:  It is true that the stipulation was

10   to two bottles.  That's based on the fact that we thought

11   from the CCTV there were two bottles visible.  At trial, the

12   testimony only discussed a single bottle.  But the

13   government does not think it matters much either way whether

14   he stole one bottle or two bottles of liquor from the

15   Capitol.

16               THE COURT:  I would agree, it really doesn't make

17   much difference.  I guess the report should indicate that

18   the stipulation said two bottles, but the evidence presented

19   during the trial only related to one bottle.

20               MR. DREHER:  That would be fine with the

21   government.

22               THE COURT:  To the extent that that change needs

23   to be made, we'll do that.

24               MR. STEWART:  Thank you, Your Honor.

25               THE COURT:  Paragraph 68, and that's related to

**1**   the guidelines.  Obviously we need to address that issue.

**2**   The question is whether he's entitled to a reduction in the

**3**   offense level based upon acceptance of responsibility.  I've

**4**   read the submissions presented by counsel, but if you want

**5**   to elaborate on that orally, you can do that.

**6**        **MR. STEWART:**  Your Honor, the summary of our

**7**   argument is that the stipulations that prior counsel entered

**8**   into with the government focused the trial to really a

**9**   single issue, notwithstanding the fact that the jury

**10**   instruction that was ultimately used -- the limiting

**11**   instruction that was used acknowledged that Trump didn't

**12**   have the authority to authorize that conduct.

**13**        So we think that based on the stipulations, and

**14**   the fact that the trial issue was really focused on that one

**15**   intent issue -- albeit, our argument is that a lot of those

**16**   stipulations also undermined that defense argument.  But

**17**   based on those circumstances, and the fact that defense

**18**   counsel and Mr. Thompson entered into those stipulations to

**19**   narrow the case to that one issue would warrant the

**20**   two-level reduction for acceptance of responsibility in this

**21**   case.

**22**        **THE COURT:**  Government response.

**23**        **MR. DREHER:**  Thank you, Your Honor.  We did

**24**   outline this in our memo, but we think the guidelines

**25**   commentary is very clear that when a defendant has put the

1    government to its burden of proof by disputing a factual

2    element -- in this case, the mens rea with respect to many

3    of the offenses of conviction, and loses at trial and only

4    then expresses contrition or remorse, the reduction for

5    acceptance is not intended to apply.  Here, even though

6    there were a number of facts that were stipulated, it was

7    very clear that what was not stipulated was his mens rea,

8    and that is why Mr. Thompson took the stand in service of

9    his factual defense at trial.

10            So he's no different than any defendant who

11   agrees, for example, that drugs were found in his apartment,

12   but disputes that he was the one possessing them; the kinds

13   of things we constantly have trials and factual disputes

14   over.  So I'm also unaware of a case in which a defendant

15   took the stand and gave, in the government's view at least,

16   false testimony about that key factual issue, and then was

17   still found to have accepted responsibility after trial.

18            THE COURT:  If the defendant had stuck to what is

19   contained in the stipulation, that would be maybe a hard

20   issue to address.  But here, he did take the stand, and he

21   clearly said some things that were not consistent with

22   accepting responsibility for his conduct, because he was

23   seeking to suggest that he did not have the mens rea to

24   commit the crimes that he was charged with.  And he clearly

25   made misstatements inconsistent with the evidence about what

1    he did and what his intent was.

2              I mean, one thing I think that was glaring was

3    when he made the representation that he took the Senate coat

4    rack because he wanted to protect law enforcement from

5    having it used against them.  And that just was not

6    consistent with the evidence that was presented.  Because if

7    theoretically he really did that, then why did he need to

8    take it outside of the Senate -- I mean, the House, the

9    Capitol building itself.  And then when the police officers

10   approached him outside of the building, he picked it up and

11   seemed to be intending to take it away.  But then when he

12   was told to drop it, he dropped it and then he ran.

13             So I think there's just a host of different facts

14   that were presented during the course of the testimony,

15   presented by him, that was indicating that he was not

16   acknowledging culpability for his conduct, and was seeking

17   to provide to the jury a basis -- a factual basis for them

18   to find him not guilty despite what was indicated in the

19   stipulation.

20             **MR. STEWART:**  I agree with that characterization,

21   Your Honor.  The thing that I can't square in my own --

22   well, in hindsight, as new counsel, the thing that I have

23   difficulty understanding is why then enter into the

24   stipulation that the coat rack was stolen as opposed to

25   taken.  So, of course, he was not candid with the tribunal

1   when he was testifying about that, there's no question about

2   that.  The question that I have is whether or not it

3   mattered, and that's because of that stipulation that he

4   stole the rack, the coat rack.  But I obviously understand

5   your point, Your Honor.

6           **THE COURT:**  Very well.  I just don't think the

7   two-point reduction was intended to benefit someone under

8   the circumstances presented in this case, so I'd have to

9   agree with probation and the government that the two-point

10  reduction is not appropriate.

11          **MR. STEWART:**  Yes, sir.  And then --

12          **THE COURT:**  Okay -- go ahead, I'm sorry.

13          **MR. STEWART:**  Oh, I was just going to suggest,

14  Your Honor, that that might dovetail with the instruction

15  enhancement.

16          **THE COURT:**  That's what I was going to get to

17  next.  I know several of my colleagues have confronted this

18  issue.  It appears only one of my colleagues, Judge

19  McFadden, agrees with the position you take with regard to a

20  narrow reading of what constitutes obstruction.  The

21  government obviously takes a position that it's broader than

22  just only applying to judicial or judicial-related

23  proceedings.  But I'll hear from you in reference to why

24  that limitation is in fact consistent with what was intended

25  with the guidelines.

1      **MR. STEWART:**  So there's the obstruction --

2   there's a two-level obstruction enhancement based on his

3   lack of candor with the tribunal.  So I guess addressing

4   that one, it's similar to our argument for the acceptance of

5   responsibility in that even though he wasn't candid with the

6   tribunal -- and there's no dispute about that, that it

7   wasn't material.  Because with the stipulations, he can't

8   overcome -- or his testimony or his lack of candor wasn't

9   sufficient to overcome those stipulations.  And as a result,

10  those statements weren't material.

11     **THE COURT:**  As to that issue, again, I think I

12  would have to conclude that the enhancement does apply if a

13  person does not provide accurate information in reference to

14  the event.  And here, he clearly did not.  It seems to me he

15  was clearly seeking to avoid culpability for his conduct by

16  presenting the testimony he presented despite the fact that

17  the stipulation had been entered into.  So I would have to

18  conclude in reference to that argument that the two-point --

19  that the enhancement, the two-point enhancement, is

20  appropriate.

21     Then we have the other obstruction issue which is

22  what I was mentioning.

23     **MR. STEWART:**  Right, yes.  Your Honor's correct in

24  that I did adopt and attempt to summarize Judge McFadden's

25  memorandum opinion and some of the other arguments used by

1    counsel in that case.  As to the substantial interference

2    with the administration of justice, I think application note

3    one that describes the premature termination of felony

4    proceedings, indictment, verdict or other judicial

5    determination -- oh, I apologize.

6              THE COURT:  And you're referring to which --

7              MR. STEWART:  Let me make sure I'm talking about

8    the right one.  So let's address 2J1.2(b)(1)(B) first.

9    That's the eight-level enhancement, and the first one I

10   discussion discuss in my position.

11             THE COURT:  Okay, one moment, let me find it.

12   2J1 --

13             MR. STEWART:  .2(b)(1)(B).

14             THE COURT:  Okay.

15             MR. STEWART:  So this is property damage to

16   obstruct the administration of justice.  Before we get to

17   the administration of justice issue, the property damage --

18   well, this section describes -- or explains that property

19   damage must be for the express purpose to intimidate or

20   retaliate.  In essence, part of our argument is that, one,

21   he didn't damage any property.  He stole property.  That act

22   is not contemplated within this subsection of 2J1.2.

23             So the first is that --

24             THE COURT:  I don't mean to cut you off, I would

25   agree there's no evidence that he did any damage to

1    property.  Query:  I guess the government's theory is that

2    his involvement facilitated the activity of the others to

3    engage in the conduct that did result in the destruction of

4    property; and query, is that sufficient?

5              MR. STEWART:  Right.  And not to put words in the

6    government's mouth, but I think part of their argument is

7    that destruction of property would fall under -- or theft of

8    property would fall within this section based on their

9    different analysis of definitions of theft.  But I think one

10   of the important things to look at is the background notes

11   of this section specifically explain that the entire

12   section -- not the subsection of this eight-level

13   enhancement, but the entire section is designed to cover

14   various types of obstruction, including theft.

15             But theft -- so when the guidelines were prepared,

16   the writers contemplated theft being covered by this entire

17   section, all of 2J1.2.  But it's not specifically listed

18   within (b)(1)(B), the subsection.  And so if Your Honor is

19   looking at the guidelines manual, the section that I

20   referenced is in the background notes.

21             THE COURT:  It's in the what?

22             MR. STEWART:  The background notes.

23             THE COURT:  Okay.

24             MR. STEWART:  The language approximately is this

25   section covers various types of obstruction, including

1    theft.  It lists other covered --

2             THE COURT:  Hold on, you said the background

3    notes?

4             MR. STEWART:  Yes.

5             THE COURT:  You're not talking about the

6    commentary -- oh, I'm sorry, background notes.  I see it

7    now, okay.  And where are you referencing?

8             MR. STEWART:  It should say this section covers

9    various types or forms of obstruction including, and then it

10   lists a number of offenses or conduct, theft being one of

11   them.

12            THE COURT:  When it says -- the one I have, which

13   is the most recent -- the 2021 manual, are you referencing

14   the first paragraph under the background section or the

15   second one?

16            MR. STEWART:  So the first paragraph, and then

17   it's right in the middle.

18            THE COURT:  Okay, I see what you're talking about.

19            MR. STEWART:  Oh, it says stealing, not theft.  My

20   apologies, Your Honor.  The word stealing is right in the

21   middle of that paragraph.

22            THE COURT:  Okay.

23            MR. STEWART:  And so in essence, the argument is

24   that when the guidelines were prepared, the writers --

25            THE COURT:  Again, the only section that seems to

1    deal with theft is the section -- or the clause that says

2    stealing or altering court records.

3             MR. STEWART:  Right.

4             THE COURT:  Is there anything else in there that

5    relates to theft?  I don't see it.

6             MR. STEWART:  Huh-uh, no.

7             THE COURT:  Before you go on, let me ask

8    government counsel:  If, in the same clause, the conduct of

9    theft only relates or seems to relate to court records --

10   because it says stealing or altering court records, so I

11   assume this is talking about altering court records or

12   stealing court records.  Why or how can I construe it

13   broader than that?

14            MR. DREHER:  Yeah, so I think that this is clearly

15   an illustrative list, but they're merely examples of the

16   types of things that can constitute obstruction of justice.

17   What happened on January 6th, I think the government would

18   agree, is an unusual, if not unique, event in terms of how

19   justice was obstructed.  I mean, the government provided a

20   hypothetical in its supplement that tries to approximate,

21   you know, what this Court would see if there were a case in

22   which, I don't know, multiple co-defendants went to a

23   witness' house and engaged in the same type of conduct,

24   right, really riotous conduct inside of that witness' house;

25   stealing things from the witness' house while the witness is

1    hiding within the house.

2              In the government's view, that kind of conduct

3    would be viewed as obstruction of justice even though --

4    insofar as it affected the witness' testimony, it would

5    delay the witness from testifying, even though it may not be

6    specifically listed as -- on this list.  So we don't think

7    this is an all-encompassing list of examples.

8          THE COURT:  But query, in the context of this

9    case, how could I construe his conduct of stealing the

10   liquor and stealing the coat rack as an intent to try and

11   obstruct the ability of Congress to do its work?

12         MR. DREHER:  So I think that that goes a little

13   bit to this other question that's been raised, which is did

14   it relate to intimidation or retaliation; was that sort of

15   the purpose behind that theft.  And in the government's

16   view, in the context of January 6th, it's hard to come up

17   with another sort of coherent purpose that he may have had.

18   It's clear that he was not stealing these things to sell

19   them for his own gain or that that was the primary

20   motivation of what he was doing.

21             The individuals who went inside the Capitol

22   building and scattered papers all over the floors of

23   congressional offices or knocked things over in

24   congressional offices or, in his case, stole things from

25   congressional offices, all of that conduct, it may be that

1    those staffers were not in the room at that moment.  But all

2    of that conduct was a show of force or control to intimidate

3    the members of Congress who were hiding in the Capitol to

4    retaliate them for their -- retaliate against them for their

5    anticipated vote on the certification.  It was clearly --

6    again, as the government wrote, much like how a schoolyard

7    bully sort of just peruses through the property of his

8    victims in a show of force to intimidate that individual.

9    That's what this event was about.

10        And stealing property demonstrates that as much or

11   more so than just knocking property over within somebody's

12   office.  It is the same type of loss of control by the

13   staffers knowing that their personal offices were invaded,

14   their things ransacked and rummaged through, and then

15   ultimately their property stolen.

16        **THE COURT:**  But as a criminal-related regulation,

17   obviously it needs to be strictly construed.  And it seems

18   to me that in order for me to conclude that this enhancement

19   would apply as it relates to the theft activity, I would

20   have to be able to conclude that the theft occurred for the

21   purpose of obstructing the ability of Congress to certify

22   the 2020 election.

23        **MR. DREHER:**  Well, what the guidelines commentary

24   says is that it's intended to apply when the intent is

25   intimidation or retaliation.  Now, so we do think that was

1    the intent here, that it's part and parcel of this broader

2    set of activity to intimidate Congress to come to what they

3    perceived to be the correct result on January 6th.

4         But yes, we do think that -- I mean, he

5    stipulated -- I'll just note that he stipulated that his

6    conduct in the Senate Parliamentarian's office did in fact

7    have an obstructive effect on the certification.

8         THE COURT:  The stipulation says that?

9         MR. DREHER:  Yes.

10        THE COURT:  Where?

11        MR. DREHER:  That would be in the original set of

12   stipulations, docket 62-4.  Let's see if I cited that

13   specific paragraph.  But the factual basis for that

14   stipulation was the fact that the Senate Parliamentarian and

15   her staff did not have access to that office afterward

16   because of the damage and the things that were taken from

17   within that office.  And really, just the fact that rioters

18   had been in that office.

19        THE COURT:  That may be a stronger argument, and

20   obviously I'll have to hear from defense counsel on that.

21   But it does seem to me an argument could be made that the

22   mob mentality that contributed to what took place was in

23   fact done for the purpose of stopping Congress from carrying

24   out its legislative obligation under the Constitution to

25   certify the election; and that everything that took place in

1        the context of that was designed to accomplish that

2        objective.

3                It seems to me that obviously the fact that there

4        were a large group of people that assembled and had a

5        greater ability to take control of the Capitol because of

6        the limited number of officers, in fact, contributed to the

7        ability to stop Congress, at least for some period of time,

8        from carrying out its constitutional mandate.  And arguably,

9        everybody who entered the Capitol with the intent of

10       stopping that, and anything that they did in the context of

11       that, was in fact designed to obstruct the ability of

12       Congress to do its work.

13               **MR. DREHER:**  So I think the Court is correct, on

14       this question of intimidation and retaliation, that yes,

15       individuals who went inside that building that day, that

16       would appear, to the government at least, to be the core

17       essential purpose of them going in there that day was to --

18       not -- I mean, the alternative was were they going inside to

19       gently persuade the members of Congress.  I think certainly

20       with respect to the subset of individuals who, as

21       Mr. Thompson conceded at trial, looted and rioted individual

22       staffer's offices, there's just no argument that they were

23       doing this in some measure for peacefully attempting to

24       influence Congress.

25               **THE COURT:**  I understand that, but I guess the

1   problem I'm having as it relates to the theft activity is

2   whether I can conclude that that activity did in fact amount

3   to an act of obstruction as it relates to Congress'

4   constitutional obligation.

5           **MR. DREHER:**  So paragraph 48 of the original

6   stipulations is where Mr. Thompson stipulated that his

7   conduct within the Capitol building obstructed the

8   certification.

9           **THE COURT:**  And what's it say?

10          **MR. DREHER:**  Let me pull it up.

11          **MR. WALTERS:**  Your Honor, it's paragraph 59 of the

12  presentence report.

13          **THE COURT:**  Paragraph 59.  Okay, I've got it.

14  Well, that does seem to indicate an agreement on his part

15  that his activity did in fact, and was designed to, obstruct

16  Congress' ability to certify the election.

17          **MR. DREHER:**  And I would just add to that, Your

18  Honor, that I don't think at trial it would have been

19  particularly difficult to show the linkage between the

20  conduct in the Senate Parliamentarian's office -- you know,

21  being part of this group that is in the office as it's being

22  ransacked and destroyed, and effects on the certification.

23  I believe that there was testimony at trial, for example,

24  from -- even though that was not a disputed issue, from a

25  Capitol police officer about needing to have cleared the

1    Capitol before the certification could resume.  So presence

2    within the Capitol.  But then on top of that, there were

3    additional stipulations about the Senate Parliamentarian in

4    this case -- that was the second set of stipulations, about

5    how their offices were so damaged that they weren't able to

6    effectively use those offices even later when they were

7    assisting with the certification that night.

8         The only thing -- so I agree with the Court, that

9    with respect to any individual who engaged in that kind of

10   conduct, A, the linkage to obstruction of the congressional

11   certification we think is factually clear; but B, we think

12   it's also clearly designed to -- and really, the only

13   plausible purpose was that it was designed to intimidate the

14   members of Congress who were within the building with that

15   kind of show of force.  That's why we think that theft,

16   along with property damage -- they're really sort of two

17   sides of the same coin in some respects, qualify for the

18   eight-level increase.

19        But I would also note, as the Court has noted and

20   as defense counsel has noted, there is also this alternative

21   argument that we've made which we think is just as sound,

22   which is in particular, if you watch the video -- if the

23   Court recalls the video of Mr. Thompson within the Senate

24   Parliamentarian's office where he is shouting encouragement.

25   I mean, at that point, there are papers already scattered

1    all over the floor.  Other rioters have opened the

2    refrigerator within the office and are looking through its

3    contents.  Mr. Thompson picks up a cell phone off of a

4    staffer's desk and then discards it, and then says:  "Is

5    that Weiner's laptop?  Find the laptop."  He's just yelling

6    that out.

7            We think that that conduct, with these other

8    rioters around him engaging in property destruction, does

9    constitute aiding and abetting or at least joining in the

10   common unlawful purpose of the rioters that day, if

11   demonstrated by nothing else than by the fact that he had

12   returned to the office after first coming in and seeing it,

13   leaving and then chose to go back and rejoin and reengage

14   with that conduct.  So we think either of those bases would

15   be sufficient to apply the eight-level enhancement in this

16   case.

17           **THE COURT:**  Further argument from defense counsel

18   in response to what the government says.  I mean, again, I

19   would tend to be inclined to conclude that if all we had

20   here was the taking of the liquor and the taking of a coat

21   rack, that without more I think I'd be hard pressed to

22   conclude that that amounted to obstruction.  But I don't

23   think I can consider that in a vacuum.  I have to consider

24   it in the context of everything that was taking place that

25   day.  Specifically, everything that was taking place as it

1   related to the defendant and his proximity to the events

2   that were taking place inside of the Parliamentarian's

3   office; and also the conduct that resulted in him entering

4   the building on the first occasion, and then leaving and

5   coming back on the second occasion.  And then I think what

6   is really difficult to overcome is the stipulation that

7   clearly indicates that he did in fact go in with the intent

8   of obstructing the proceedings.

9           **MR. STEWART:**  Well, Your Honor, I would -- a

10  couple of points.  Generally, this section, the 2J1.2

11  section, describes obstruction.  As I mentioned earlier, the

12  background describes that this section is designed to cover

13  various forms of obstruction.  Certainly Mr. Thompson

14  stipulated that he obstructed Congress in this circumstance.

15  There's no question about that.  Those stipulations are --

16  that stipulation specifically is -- appears throughout the

17  two different stipulation documents.

18          I think the question is whether or not this

19  specific subsection applies to Mr. Thompson's conduct.  The

20  subsection reads that it's applied where an individual

21  causes or threatens to cause injury to a person or property

22  damage.  That's the language of this specific subsection.

23  It does not mention theft specifically.  My argument is that

24  it's not just an omission by the commission in this case.

25  They specifically mentioned theft or stealing in the

1     background notes; that that's covered by the entire section;

2     that that's conduct that could be covered by the entirety of

3     2J1.2.  But as it relates to this specific subsection, theft

4     is -- or stealing is not mentioned by the commission.  And

5     so what is --

6               **THE COURT:**  I would agree.  I would agree with

7     that.  But how do I reconcile your position with the fact

8     that there clearly was intent on the part of the mob to

9     destroy property, and I think clearly for the purpose of

10    stopping Congress from doing its job?  And while the

11    defendant did not do any specific damage himself, he did go

12    in with the group, he saw what was going on and made some

13    encouraging statements to the group that, I think, could be

14    construed as inspiring them to continue the illegal activity

15    they were engaged in.

16              **MR. STEWART:**  I think what Your Honor's suggesting

17    is -- it sounds like you're agreeing that theft in and of

18    itself is not covered by this particular subsection.

19    Instead, that the threatening or causing property damage is

20    possibly applicable to Mr. Thompson under this aiding and

21    abetting theory that the government has suggested.

22              My argument would be that it's important to note

23    that he did not assist or encourage the destruction of

24    property.  I think that the government characterized certain

25    statements that he made while he was in the building -- or

1  in the office, and those statements were "find the

2  computer."  It doesn't sound like there's any -- there was

3  any evidence -- I haven't found any, where he's saying oh,

4  let's destroy this or knock that over; or here's a cabinet

5  that no one's gone through yet and dumped out; or anything

6  along the lines of if we don't trash this place, we're

7  not -- if we don't trash this place, they're going to be

8  able to come back here and finish the certification process.

9  **THE COURT:**  I agree that he didn't do anything of

10  that nature.  But query, if you associate yourself with

11  others who are in fact engaging in violence and you don't

12  depart yourself from that activity, and you make some

13  statements that could be construed as inciting the other

14  individuals in your proximity, why shouldn't that be

15  considered as obstruction to the extent that you were aiding

16  and abetting the activity of those who were actually doing

17  the destruction?

18  **MR. STEWART:**  Well, part of the purpose of the

19  guidelines is to account for relative culpability.  So I

20  think the aiding and abetting theory of applying this

21  particular subsection, it's not completely invalid.  But I

22  think what then we need to do is look at Mr. Thompson's

23  actual conduct, what he said, how long he was in the

24  building -- or how long he was in that room.  In these

25  circumstances, it seems -- of course, you can argue that he

1    was part of this group.  But there are distinctions that are

2    made within the stipulations that he wasn't participating in

3    the destruction or the -- for lack of a better term,

4    trashing of this office beyond what he stole.

5           **THE COURT:**  What if you take advantage of the

6    destruction that occurs by others in order to carry out your

7    intent to stop an event from taking place, i.e., the

8    evidence clearly indicated that he saw the destruction that

9    had been done to the entryway into the Capitol that he used

10   in order to enter.  So if you are present and you see that

11   destruction taking place, and you take advantage of the

12   destruction in order to gain entry to do what you want to

13   accomplish, consistent with what the others wanted to

14   accomplish -- and that is, obstruct the proceedings from

15   going forward, why under those circumstances shouldn't the

16   enhancement apply?

17          **MR. STEWART:**  Well, I think there should be a line

18   at some point for where someone may be part of a mob that is

19   engaged in this sort of activity and encouraging it, aiding

20   and abetting it.  I mean, one could argue if you were part

21   of a mob, you're aiding and abetting the mob.

22          **THE COURT:**  Because I think a strong argument

23   could be made that if you didn't have that number of people

24   who were able to overwhelm the law enforcement authorities,

25   that none of this would have occurred.  And but for the fact

1     that you had a large number of people who were set on doing

2     something illegal, i.e., stopping the certification from

3     occurring, it would not have occurred.  So his presence

4     contributed to the entry and contributed to what occurred as

5     far as Congress having to, at least for some period of time,

6     cease its activity.

7          **MR. STEWART:**  And I think that certainly under

8     that theory, one can argue that he certainly aided and

9     abetted the obstruction.  I think the question is whether or

10    not he aided and abetted the destruction of property with

11    the express purpose to intimidate or threaten.  And I think

12    that's -- he's part of the mob, he goes into the office

13    where the property's being destroyed, and he's made some

14    comments.  All of that could be construed as aiding and

15    abetting.  And certainly he was aiding and abetting and

16    himself obstructing Congress.  The question is whether or

17    not he was also aiding and abetting the destruction of

18    property with the express purpose to intimidate or threaten.

19    That's where I think the distinction is made, that he didn't

20    have that express purpose.

21          **THE COURT:**  Okay.

22          **MR. STEWART:**  So turning next to I guess the

23    administration of justice.  I don't want to restate all of

24    Judge McFadden's arguments, but looking first at the text, I

25    think that the plain meaning of administration of justice

1   comports with Judge McFadden's interpretation.  He looks at

2   the definitions of administration of justice and due

3   administration of justice, and concludes that they involve

4   judicial or quasi-judicial tribunals that apply the force of

5   the state to determine legal rights, and that the

6   certification did not have those same attributes.

7        THE COURT:  The government points out that the

8   guideline, as far as obstruction is concerned, does in fact

9   encompass conduct other than judicial-related activity.

10  They identify other types of crimes that a person can engage

11  in that amounts to obstruction other than just obstruction

12  of judicial proceedings.

13       MR. STEWART:  And I think it doesn't necessarily

14  need to be a proceeding, it's the function of the Judiciary

15  in general.  And I think that that's where the line is that

16  Judge McFadden was trying to draw.

17       THE COURT:  And he gets that from where in the

18  guidelines themselves?

19       MR. STEWART:  Well --

20       THE COURT:  Because I didn't see where he was

21  identifying any specific language in the guideline itself

22  that restricted obstruction in the manner that he did.

23       MR. STEWART:  Well, if you look at the way that

24  the obstruction -- not this obstruction section, but if you

25  look at the obstruction -- the other obstruction section,

1    there is a cross-reference to this section.  And it suggests

2    that that obstruction section may not apply when the 2J1.2

3    section is applied because there is that overlap.  If you're

4    obstructing under that section and, say, perjuring yourself

5    or somehow interfering with the administration of a judicial

6    proceeding, that would be redundant to the application of

7    this section and the two-point enhancement would not -- or

8    should not or may not be appropriate.

9         So I think that's an important cross-reference,

10   because it suggests that this section is dealing with

11   judicial or quasi-judicial proceedings as opposed to a

12   proceeding such as the certification.  And because of that,

13   that other section where someone is perjuring themselves or

14   trying to interfere with the proceedings, why it wouldn't

15   apply.  Because in essence, it would be redundant.  I mean,

16   it was a 30-page memorandum opinion, so I don't remember

17   specifically if he referenced that.  But I did notice that

18   as I was going through and comparing the two obstruction

19   sections of the guidelines.

20        **THE COURT:**  Government response.

21        **MR. DREHER:**  Thank you, Your Honor.  So just

22   briefly with the Court's indulgence on the aiding and

23   abetting point earlier.  I would just highlight that

24   Mr. Thompson testified at trial when pressed on

25   cross-examination about what was going on inside the Senate

1    Parliamentarian's office.  I asked him whether he saw the

2    broken windows in that office, and he said yes.  I said:

3    "When you went into the office" -- I should just note for

4    the record, this is in Exhibit 1 to our original sentencing

5    memorandum, pages 53 through 55, "there were at least a

6    dozen other people in there, right?"

7            Answer:  "Yes."

8            "They had knocked over furniture?"

9            Answer:  "Yes."

10           "They had scattered papers all over the floor?"

11           Answer:  "Yes."

12           "These people didn't work at the Capitol building,

13   did they?"

14           Answer:  "No."

15           "Okay.  It was a riot, right?"

16           Answer:  "Yes."

17           Then I asked him if he was a part of it, and he

18   said:  "I was just trying to observe it, I guess."  So I

19   asked him a series of other questions about his conduct, and

20   ultimately asked:  "You looted the Senate Parliamentarian's

21   office; is that right?"

22           Answer:  "Yes."

23           "Okay.  So wouldn't you agree with me that you

24   participated in the riot going on inside the Senate

25   Parliamentarian's office?"

1           Answer:  "Yes."  And then we discussed the video

2    of him from within that office.

3           So, again, it's not just the stipulations in this

4    case, it's his testimony at trial and the other evidence at

5    trial that establishes he is -- this is much more than mere

6    presence.  This is much more than somebody who, for example,

7    went into the Capitol building, walked around in public

8    areas and took some photos -- which does not minimize that

9    conduct, but it does show that Mr. Thompson is in a separate

10   class.

11          And as the Court has noted in this case, if you

12   were to just look at factors other than mere presence,

13   you've got recognition and seeing the property damage;

14   you've got admission that he participated in the riot going

15   on inside that office; you've got the second entry after he

16   sees that property damage the first time; you've got him on

17   video shouting effectively a celebratory woohoo, which I

18   think is hard to interpret as anything other than

19   encouragement of the conduct of those around him.  And then

20   you've got him directing, yelling to other people to go find

21   additional property.

22          So for all of those reasons, we think it is clear

23   that under the two theories of liability that we have

24   announced -- either one really, either aiding and

25   abetting/encouraging other rioters or just undertaking in a

1    jointly undertaken criminal activity with the purpose -- a

2    shared purpose with those other rioters at that time is more

3    than sufficiently shown here.

4            With respect to the separate question of whether

5    the administration of justice includes the certification of

6    the vote, I guess I'll start with the last point that was

7    made by defense counsel.  And that is this cross-reference

8    to 3C1.1.  3C1.1 is the obstruction -- two-level obstruction

9    enhancement.  Defense counsel is right that in application

10   note seven to that guideline, it says that in some contexts,

11   if the defendant is convicted of an offense covered by

12   2J1.2, right -- which is the other obstruction guideline

13   we're talking about, then you don't apply the two-level

14   enhancement just because of the underlying offense, right,

15   there has to be a separate act of obstruction.

16           Now, we explained in our papers that's obviously

17   the case here.  You've got obstruction of Congress, and then

18   the perjury at trial is what's the basis for the two-level

19   enhancement.  But what I think is important is defense

20   counsel noted the significant overlap or the sort of

21   mirroring of those two obstruction guidelines provisions.

22   And in 3C1.1, one of the examples that's provided of

23   obstruction of justice to which the two-level enhancement

24   applies is in application note four, example I:  Other

25   conduct prohibited by obstruction of justice provisions

1     under Title 18 United States Code, for example, 18 U.S.C.

2     sections 1510 and 1511, which are the two sections prior to

3     the one -- the offense of conviction in this case.

4            So to the extent there is that significant

5     overlap -- which we agree between those two guidelines

6     provisions, that indicates actually that those other

7     obstruction of justice statutes within Title 18, like 18

8     U.S.C. 1512, is considered by the drafters of the guidelines

9     to be obstruction of justice.  And indeed, that's reflected

10    in the title of section 2J1.2 which is obstruction of

11    justice.  When the drafters chose to cross-reference section

12    1512 to that guidelines provision, that was in effect a

13    judgment call or a determination that that conduct in

14    violation of that statute constitutes obstruction of

15    justice.  And if that conduct obstructs justice, it's hard

16    linguistically to understand how it would not also interfere

17    with the administration of justice.  And so the title alone

18    is significant from an -- significant interpretive evidence

19    that what the guidelines commentators had in mind here is a

20    relatively broad interpretation of administration of

21    justice.

22            In our memorandum, we provided dictionary

23    definitions in which obstruction of legislature specifically

24    in Black's Law Dictionary is cited in the same sentence --

25    or is cited as constituting interference with the

1    administration of justice.  We think the context, the fact

2    that the other statutes cited to 2J1.2, also include things

3    that clearly are not limited to judicial proceedings but

4    instead include interference with investigations -- for

5    example, administrative investigations, again, underscores

6    the broader scope.  And then, of course, the cases that we

7    cite applying it in that broader fashion, we cite those at

8    page 11 of our supplemental brief.  And the definition of

9    interference with the administration of justice that appears

10   in the notes to section 2J1.2, which includes things like

11   termination of a felony investigation which is not -- would

12   not itself be a judicial proceeding, and expenditure of

13   governmental or court resources.  And in the government's

14   view, if that provision -- if that definition were limited

15   to interference with a judicial court proceeding, it would

16   be odd that they would have chosen to include substantial

17   expenditure of governmental resources as distinct from

18   those.

19           **THE COURT:**  Thank you.  Probation, anything you

20   want to say on this?

21           **MR. WALTERS:**  No, sir, Your Honor.

22           **MR. STEWART:**  Your Honor, just with regard to this

23   subsection -- and not to belabor the aiding and abetting

24   argument we've been sort of going back and forth on, but I

25   think another important consideration when determining where

1    Mr. Thompson fits in sort of the spectrum of how much and

2    the degree to which he aided and abetted, I think it's

3    important to point out that when he got into that office,

4    there was -- there had already occurred a significant amount

5    of destruction and causing of disarray.  So to the extent

6    that Your Honor is persuaded by the government's argument, I

7    think it's also important to consider when he joined that

8    mob and what had already been done, and the extent to which

9    he was able to assist or encourage any further destruction

10   or causing of disarray.

11           I guess getting back to one of the points that was

12   made by Judge McFadden, he did also -- I think it's

13   important also to look at the definitions that he looked at

14   which was actually administration of justice and due

15   administration of justice.  I think you can spend a lot of

16   time flipping through -- well, I guess maybe you wouldn't

17   flip through the actual law dictionary anymore and you'd

18   just look online.  But I think you can spend a lot of time

19   going through and looking at different legal terms in order

20   to try and fit them to this circumstance, I think.

21           But it's important that Judge McFadden actually

22   looked at the definition of the actual terms.  He also

23   pointed out the precedent that he took into consideration

24   with U.S. v. Aguilar where the Supreme Court construed the

25   same phrase as it pertained to 1503, and determined that it

1    was analogous to judicial or grand jury proceedings.

2           And then I do have some points to make with regard

3    to substantial interference, the next enhancement, if you

4    wanted me to discuss that.

5           **THE COURT:**  No, let's deal with this first.

6           **MR. STEWART:**  Okay.  Thank you, Your Honor.

7           **THE COURT:**  I mean, it's not an easy question,

8    because the guidelines don't specifically address this

9    particular situation.  I don't think anybody could have

10   envisioned something like this happening in America.  It is

11   a unique situation that clearly was spurred by a desire on

12   the part of the individuals who were at the Capitol to stop

13   the proceeding from taking place based upon the falsehood

14   that they had been fed about the election.  And everybody

15   who went down there, it seems to me, it's readily apparent,

16   did so for the purpose of stopping the certification of the

17   election.

18          And the only means by which they were able to gain

19   entry into the Capitol -- and as I recall, the evidence

20   indicated the entry point that was utilized by the defendant

21   was an entry point where damage itself had occurred in order

22   to gain entry.  I believe that was the evidence.  And then

23   once he enters, he then goes into the Parliamentarian's

24   office which had been ransacked and significant damage done,

25   and he did not disassociate himself from that activity.  And

1   the evidence tended to indicate that at the time he entered,

2   there was still destructive activity taking place.  And as

3   the government says, he made sounds and made statements that

4   clearly could be construed as nothing other than encouraging

5   the others to continue the activity that he knew had already

6   taken place.  Under those circumstances, I would have to

7   conclude that his conduct does in fact justify the

8   enhancement based upon the aiding and abetting theory as it

9   relates to what the group was doing for the purpose of

10  trying to stop a legitimate, necessary constitutional act to

11  occur.

12          Then the question becomes, well, was this

13  obstruction of justice.  Judge McFadden takes a very narrow

14  view of what obstruction entails, and concludes it only

15  relates to judicial or judicially-related proceedings.  I

16  don't think that is the case, because as the government

17  indicates, the obstruction enhancement does apply in

18  contexts other than the activity having been engaged in for

19  the purpose of obstructing judicial or judicial-related

20  proceedings.  So I think that it is envisioned in the

21  guidelines that there's other activity that individuals can

22  engage in outside of judicial proceedings that can amount to

23  obstruction, and that the guideline or enhancement does

24  apply.

25          And I think that would be the case here, because

1    we're talking about a constitutionally mandated activity

2    that Congress had to engage in regarding the 2020

3    presidential election.  And the group, the mob did what they

4    did to try and impede the ability of that process occurring,

5    and did in fact for some hours do that.  So I would have to

6    conclude, consistent with the government's position and

7    consistent with probation's position, that the enhancements

8    as calculated do in fact apply.  It's an issue that I'm sure

9    may go up on appeal and we'll get something from the Court

10   of Appeals on it.

11           But I know that while I respect Judge McFadden and

12   his ruling, the majority of the judges who have addressed

13   this issue have not agreed with that position, and have

14   concluded consistent with my ruling that the enhancements do

15   in fact apply.  So over objection, I will conclude that the

16   probation department and the government's positions are

17   correct.

18           The next matter.

19       MR. STEWART:  Sort of taking that ruling into

20   consideration, I'll limit the argument for the next section

21   which is also part of 2J1.1.  And this is the substantial

22   interference with the administration of justice.

23   Application note one describes --

24           THE COURT:  You said 2J1.1?

25           MR. STEWART:  2J1.2.

1          **THE COURT:**  You said 1, I thought.  But 2J1.2?

2          **MR. STEWART:**  2J1.2.

3          **THE COURT:**  (b).

4          **MR. STEWART:**  (b).  And this is the substantial

5     interference with the administration of justice, the

6     three-point -- the three-level enhancement.

7          **THE COURT:**  Right.  That's 2J1.2(b)(2)?

8          **MR. DREHER:**  That is correct, Your Honor.

9          **MR. STEWART:**  So Your Honor, application note one

10    of this section describes different activities that would be

11    covered by this subsection which include premature

12    termination of felony investigation, indictment, verdict or

13    any other judicial determination.  And then semicolon,

14    unnecessary expenditure of substantial government or court

15    resources.  So what you have is this description of it

16    applying to various phases of a judicial proceeding, and

17    then this sort of catchall phrase that describes any

18    unnecessary expenditure of substantial government or court

19    resources.

20          So the point that I think is important to make

21    here is that this last phrase does not remove the context

22    that's provided by the prior phrase.  Because to do so would

23    then improperly expand the application of this subsection

24    beyond the judicial or quasi-judicial proceedings that are

25    specified in that phrase immediately before.

1          **THE COURT:**  Government.

2          **MR. DREHER:**  Thank you, Your Honor.  This is the

3     issue that, with respect, the Court just decided.  It's the

4     same phrase.  So in the prior eight-point enhancement, the

5     phrase is in order to obstruct the administration of

6     justice.  And in the three-point -- the three-level

7     enhancement we're talking about right now, the phrase is

8     substantial interference with the administration of justice.

9     So the phrase is administration of justice, and we cited

10    that same definition in support of our argument that that

11    phrase encompasses the congressional certification.

12    Obviously we think that that same phrase appearing sentences

13    apart should be interpreted the same as to those two.

14         **THE COURT:**  The application note, counsel says,

15    though, does seem to say that it's restricted in this

16    context to judicial proceedings or court proceedings.

17         **MR. DREHER:**  So the definition, substantial

18    interference with the administration of justice?

19         **THE COURT:**  Right.

20         **MR. DREHER:**  Well, no, we think that's evidence of

21    the breadth of that term.  Because it describes first

22    premature or improper termination of a felony investigation,

23    so an investigation that could be occurring prior to the

24    initiation of any kind of judicial proceeding.  Then it

25    lists things like indictment, verdict, judicial

1   determination.  And then as a separate category, it says or

2   the unnecessary expenditure of substantial governmental or

3   court resources.

4           THE COURT:  Query, does that phrase you're relying

5   upon have to be construed in the context of the other

6   language in the application note -- and all of that language

7   seems to indicate judicial proceedings?

8           MR. DREHER:  Well, no, we don't think so.  I guess

9   first I would say that really is the debate that Judge

10  McFadden was having with the government when he ruled that

11  the administration of justice did not include the

12  congressional certification.  He relied on that theory, that

13  that final phrase must be limited to judicial or

14  quasi-judicial proceedings, because otherwise it would be

15  somehow inconsistent with the prior two.

16          But that is not always how -- in fact, that's not

17  even ordinarily how one would interpret a list of three

18  things, if those three things are an investigation that's

19  not a judicial proceeding, things related to a judicial

20  proceeding or the unnecessary expenditure of substantial

21  governmental resources or court resources.  One easy way to

22  interpret that is that those are three separate ways in

23  which you can have the substantial interference with the

24  administration of justice.  And those are not exhaustive,

25  those are just three examples noted by the definition.  So

1        it includes those things.

2              And we think obviously the unnecessary expenditure

3        of substantial governmental resources is going to encompass

4        most of these sort of unique incidents like January 6th, but

5        we think the breadth of that cuts strongly the other way.

6              THE COURT:  So your theory is that a person can

7        engage in activity that does not involve interference or

8        obstruction of a judicial proceeding, but if their activity

9        does in fact result in a substantial expenditure of

10       government resources, that that would be sufficient to

11       satisfy this provision?

12             MR. DREHER:  That would be sufficient to apply

13       this enhancement.

14             THE COURT:  That's what I mean.

15             MR. DREHER:  And we have to be talking about a

16       case in which they've already been convicted of an offense,

17       all the elements of an offense, that is cross-referenced to

18       this obstruction of justice section.  So it's not like just

19       causing some unnecessary expenditure of government resources

20       by itself would ever lead to a sentence.  Rather, the

21       question is once you have a conviction for obstruction of

22       justice, as we do in this case, then if the government has

23       shown that there was the unnecessary expenditure of

24       substantial governmental resources outside the context of a

25       judicial proceeding, then yes, that three-point enhancement

1    would apply.

2          **THE COURT:**   Okay.   Well, again, I would agree that

3    the government has the better position, and therefore would

4    conclude that the three-point enhancement does in fact

5    apply.   Again, hopefully maybe we can get some assistance

6    from the Court of Appeals as to how this particular

7    provision is to be applied.   As I said, we are talking about

8    a very unique situation that I don't think anybody could

9    have envisioned would have occurred in our country prior to

10   January 6th.   I would have to conclude that the -- as I said

11   before, the activity of Congress of carrying out a

12   constitutional mandate does qualify as a proceeding that can

13   be obstructed.   And if someone engages in conduct that does

14   obstruct that activity, and in the context of this

15   particular guideline in doing so causes unnecessary

16   expenditure of governmental funds, I think that that is

17   sufficient to justify application of this enhancement.   So

18   over objection, I will conclude that it does apply in this

19   case.

20          Any other objections we need to deal with?

21          **MR. STEWART:**   No, Your Honor.   Thank you.

22          **THE COURT:**   Then we can proceed to the sentencing.

23   As I said, I've reviewed the submissions that were made by

24   counsel, but obviously I'll hear any additional argument

25   that you have.

1          Government counsel.

2          **MR. DREHER:**  This Court is obviously intimately

3   familiar with the facts of this case, having sat through a

4   four-day trial back in April of 2022, so I won't spend time

5   going through in detail all of the defendant's conduct.

6   Instead, I'm going to try to focus on things that, in the

7   government's view, make this case unusual with respect to

8   that of other rioters.  And I'm going to start not with

9   necessarily the most egregious fact, but one I think is

10  important for setting the tone of Mr. Thompson's conduct

11  that day.  And that's the bulletproof vest that Mr. Thompson

12  was wearing inside the Capitol that day.

13          It's an important fact, because it does separate

14  him wearing that body armor from many, many other rioters

15  who did not have that on when they went inside the Capitol.

16  But it's also important for a separate reason, and that's

17  that it undercuts this version of Mr. Thompson's conduct

18  that I would argue the defense sentencing memorandum --

19  which was well done, paints of his conduct.  And that is

20  someone who was just swept away by what was happening at the

21  rally; sort of followed a crowd; was just there to see what

22  was going on; and then sort of at the last second got caught

23  up in what was going on.  And that's not an accurate

24  portrayal or description of his conduct.

25          Even if -- which the government only has its

1    doubts as to the credibility of this, but even if

2    Mr. Thompson indeed did find someone else's bulletproof vest

3    near the Washington Monument on the morning of January 6th,

4    he still put it on on the way to the Capitol.  And he

5    testified on cross-examination that he did that because he

6    anticipated there would be violence there that day.  And he

7    still chose to go.  So this was a conscious choice lasting

8    not the 30 seconds that -- before he went inside the

9    building, not just the nine minutes that he was inside the

10   Capitol building.  But rather, a fairly long period of time

11   that he continued to walk down Pennsylvania Avenue towards

12   the Capitol knowing that there was the potential for

13   violence.

14          So while obviously I do appreciate the letters

15   that were submitted on Mr. Thompson's behalf, many of them

16   said things like he is someone who would never put himself

17   in a situation involving danger or violence.  And I think

18   that is probably the Dustin Thompson that they know, but it

19   is not the Dustin Thompson who went to the Capitol on

20   January 6th.

21          Second, Mr. Thompson's unique in that he is the

22   first defendant to have been convicted after trial of both

23   obstruction of Congress and theft of government property

24   within a sensitive governmental office.  In fact, as the

25   stipulations and the evidence in the case showed, the Senate

1   Parliamentarian was one of the most important individuals in

2   the U.S. Capitol during the certification that day, assisted

3   with the actual proceeding itself.  And Mr. Thompson, again

4   in his words at trial, looted the office of the Senate

5   Parliamentarian and her staff and participated in the riot

6   going on in that office.  He left once.  He could have made

7   a better decision at that point.  And instead, he went back

8   in and stole again.

9          Now, I'll note here, one of the themes in the

10  defense submission is that Mr. Thompson only spent nine

11  minutes inside the building.  It is true that that is, just

12  measured temporally, a shorter period of time than some of

13  the other individuals who have gone to trial and been

14  convicted under 1512.  But the government does not view that

15  as cutting in Mr. Thompson's favor in any way, and here's

16  why.  Unlike those other individuals, Mr. Thompson was

17  stealing property from the United States Capitol.  So it is

18  unsurprising that he only spent a few minutes inside the

19  Capitol each time.  Because what else was he going to do,

20  walk around and say hi to the Capitol police officers while

21  attempting to cart out stolen property that he had just

22  removed from the Parliamentarian's office?  Obviously not.

23  I think the video reflects that he understood he was taking

24  something from that office, that it was illegal for him to

25  possess it, and therefore he got out of the building as

1          quickly as he could when he was possessing that property.

2                    I think the better indication of his true intent

3          of what he would have done had he not chosen to steal --

4          which in any -- by any measure is an indication of the more

5          aggravated nature of his conduct relative to these folks who

6          walked around for 45 minutes, chanted, walked around public

7          hallways -- otherwise public hallways I should say.  But the

8          better indications of what he otherwise would have done are

9          the fact that he went back in a second time; the fact that

10         the second time he didn't actually leave until officers were

11         almost at the door of the Parliamentarian's office clearing

12         that hallway.  And that was on video that they were pushing

13         all the rioters out of the building.  And had he waited any

14         longer, he would likely have been caught inside the

15         Parliamentarian's office holding the goods he was trying to

16         steal.

17                    And then his conduct later that day when he's at

18         the north doors at the front of the crowd texting his friend

19         a picture of those doors saying "going inside."  And that's

20         over an hour after he's left the second time from the U.S.

21         Capitol building.  And as he was there, the crowd was

22         actively trying to ram the doors with bike racks and breach

23         those doors.  So it is true that the Capitol Police were

24         able to withstand the crowd's assaults on that particular

25         entrance that day, but in the government's view, that is a

1    very strong indication that even an hour after he left --

2    you know, this is not someone who had abandoned the idea of

3    going inside the Capitol or had realized his mistake.

4         Had that entrance been open, the government has

5    full confidence he would have been back in the Capitol

6    shortly thereafter.  And, again, that's consistent with the

7    reason for his prior stays being short.  Because after he

8    leaves, what does he do?  He gives the coat rack to his

9    co-defendant Mr. Lyon, and asks him to watch it so that he

10   can go back and try effectively to get back into the

11   building.  So, again, all of that corroborates the idea that

12   it's really just his possession of stolen property which is

13   an aggravating factor that led to his short time inside the

14   Capitol.

15        Third, Mr. Thompson, unlike many other rioters as

16   just described, in the government's view, and based on the

17   evidence from Mr. Lyon and their text messages, convinced

18   another rioter, Mr. Lyon, to join him inside the Capitol

19   even after Mr. Lyon said in his statement of offense that he

20   advised Mr. Thompson they shouldn't go inside that building.

21   And their text messages also indicate Mr. Thompson was the

22   driving force behind them going to January 6th in the first

23   place.  Mr. Lyons said he was not really interested in going

24   just a few days before, and that it was Mr. Thompson who

25   ultimately convinced him to go.

1          Obviously we didn't argue and don't think that he

2     technically qualifies as an organizer or leader under the

3     guidelines, so we don't think there's a guidelines

4     enhancement.  But it is certainly conduct that

5     differentiates him from others who went by themselves, or in

6     some cases, were brought by their parents or things like

7     that.  This is someone who convinced someone else who was

8     reluctant to go to come with him.

9          Fourth, Mr. Thompson fled from law enforcement on

10    January 6th.  Again, that puts him in a very small subset of

11    individuals, most of whom were not confronted by law

12    enforcement.  But when he was confronted, he disregarded the

13    Capitol Police special agents' instructions and fled the

14    area.  And then fifth, of course, Mr. Thompson, unlike most

15    rioters other than those who went to trial, opted to go to

16    trial.  And then importantly, he opted to take the stand in

17    his defense, which was his right.  He didn't have to do it,

18    but he chose to do it.  And when he did, he took the

19    opportunity to, in the government's view, disrespect the

20    jury and this Court by making what he knew were false

21    statements about the only key issue in the case, and that

22    was his mens rea on that day.

23         As the Court has noted, most egregious and

24    obvious, of course, was the statement that he took the coat

25    rack from the Parliamentarian's office to protect the

1    police.  And to have a defendant who was inside the Capitol

2    that day pretend to put on the mantle under oath of defender

3    of the police is frankly an insult to those officers who

4    were actually seriously injured and sacrificed their bodies

5    defending the Capitol that day.  It's also a clear reminder

6    that, at least as of his trial, Mr. Thompson did not have

7    remorse for what he had done, and certainly had not accepted

8    that his conduct was criminal.

9         One way that we know he had no remorse is because

10   even though he said that, he then got up on the stand and

11   was still trying to excuse his conduct, explain it as

12   something that was heroic and helpful to the police.  He

13   knew it was a lie when he said it.  He took an oath to tell

14   the truth and said it anyways.

15        Now, that connects to the second major theme in

16   the defense's papers, and that is that Mr. Thompson has

17   already learned his lesson; he's really thought about it,

18   and realizes everything he did that day was wrong.  That

19   should sound familiar to this Court, because that's exactly

20   the same story that Mr. Thompson -- or at least his counsel,

21   portrayed to the jury at trial.  After trial, Mr. Thompson's

22   counsel indicated that he had been in counseling for over a

23   year since January 6th.  During his testimony, he talked

24   about having recognized the pernicious influences he was

25   under on January 6th.  And yet that lasted only about 15 or

1   45 minutes when he was under oath before he started to make

2   these statements that were simply incredible in several

3   respects.

4        And we obviously went through several of those

5   statements, but statements about having heard statements at

6   the rally that he actually wasn't present for; the statement

7   about the coat rack; the statement disputing whether or not

8   he had picked up the coat rack after the Capitol police

9   officers confronted him; and denying that he wanted to go

10  back inside the building through the north doors at around

11  4:00 o'clock p.m.  Mr. Thompson said all of those things to

12  the jury to minimize his conduct after he supposedly had

13  seen the light and realized the errors of his ways.  And so

14  I would caution the Court not to credit too much now that

15  Mr. Thompson's been in custody.  Again, the repeated

16  assertion that he has realized the error of his ways, the

17  time to do that frankly was the 16 months between January

18  6th and his -- or 15 months between January 6th and his

19  trial when -- and before Mr. Thompson got up to take the

20  stand.

21        Obviously, at the same time, the government hopes

22  that Mr. Thompson is sincere in his efforts at

23  rehabilitation.  That's always what the government hopes.

24  And I hope that incarceration was a wake up call, and that

25  Mr. Thompson continues with those efforts.  So that is, of

1    course, the government's hope for Mr. Thompson.  But the

2    government just doesn't have any confidence that that is

3    necessarily going to continue.  And, if anything, his

4    testimony at trial does indicate that he is not like some of

5    those defendants who immediately recognized the wrongfulness

6    of their conduct and therefore might be more easily

7    deterred.

8           Then I'll just spend a minute on some of the other

9    sentences that have been handed out in January 6th cases

10   with section 1512 convictions after trials.  There were a

11   few more after the government filed its sentencing

12   memorandum in September.  I put them into two categories.

13   So there were two cases involving additional substantive

14   offenses like possession of a dangerous weapon or

15   obstructing a law enforcement officer.  And those two cases

16   each resulted in sentences of 87 months for Messrs. Reffitt

17   and Robertson.  Then there are cases in which the defendants

18   went inside but, like Mr. Thompson, did not engage in

19   violence and weren't convicted of obstructing police

20   officers.  And the sentences in those cases to date have

21   been -- two have been issued by Chief Judge Howell, 60

22   months for Mr. Williams which we described as the most

23   analogous case to Mr. Thompson's; 48 months for Mr. Bledsoe.

24   And then Judge McFadden has had two defendants.  And in one

25   case, even though he didn't apply the plus eight or plus

1      three enhancement, he varied upwards and gave a 48-month

2      sentence above the guidelines range.  And in another, there

3      was a young son who was taken by -- in his early 20s, who

4      was taken by his father to the Capitol who was recently

5      sentenced to 24 months.

6              So because of the additional aggravating factors

7      that I've described, the government views Mr. Thompson as

8      sort of between those two categories.  But at the very

9      least, they show that three of the four defendants in

10     Mr. Thompson's sort of similar boat received sentences of

11     four or five years, and that a sentence in the area of that

12     after trial is not unusual.  Here, we're recommending the

13     low end which is less than six years, five years and 10

14     months.

15             And I'll just close by noting that although there

16     is a tendency -- and it's understandable, in these cases to

17     sort of keep the focus narrow on other defendants who have

18     been sentenced for January 6th conduct, it is not -- a

19     70-month sentence is not in the grand scheme of federal

20     sentencing an extraordinarily excessive sentence.  In fact,

21     defendants are sentenced to five-year sentences all the time

22     across this country.  And they're sentenced to sentences

23     like that for things like having a pound of methamphetamine

24     in their home.  Parents of small kids get sentenced to five

25     years for that all the time.  There's far less public

1    attention paid to those cases, there are far fewer letters

2    of support filed.  The sentencing memoranda are not nearly

3    as detailed and intricate.  But those individuals end up

4    serving a significant period of time, and they did not

5    participate in one of the most disgraceful events in the

6    history of this country:  The unique breach of the United

7    States Capitol on January 6th, 2021.

8         So I say that just to try to put in a little bit

9    of a frame of reference for our discussion about what an

10   appropriate sentence should look like in these kinds of

11   cases.  Thank you.

12        **THE COURT:**  Counsel, you may proceed.

13        **MR. STEWART:**  Thank you, Your Honor.  Your Honor,

14   I guess taking up the government's last point first to I

15   guess create a context for how to view this case compared to

16   other cases, I think we need to be careful about discussing

17   other cases generally that aren't related, dissimilar

18   offense conduct, dissimilar sentencing guidelines in order

19   to justify what an appropriate sentence might be in this

20   case.  Certainly there are issues with the way the drug

21   guideline table is prepared, and how those guidelines are

22   calculated.  I would submit that in many of those cases,

23   even the guidelines are not an accurate description or a

24   just punishment for the conduct that they punish.

25        That being said, there was discussion about

1    leadership roles and who has been held accountable so far in

2    these cases.  I don't want to engage in too much hyperbole,

3    but I think that -- well, in speaking with the January 6th

4    Committee, one of the things that they asked Mr. Thompson

5    was what he thinks needs to happen going forward.  His

6    response was that the people who organized, facilitated and

7    managed that rally that turned into a riot ultimately would

8    need to be held accountable.  And then also the people who

9    are I guess fostering, perpetuating some of these different

10   conspiracy theories during this even most recent election

11   cycle.  Until some of those people are held accountable,

12   it's going to be difficult for the Court or the sentencing

13   commission, the Department of Justice really to say that

14   this type of activity and conduct has been deterred.

15           That being said, one of the things that I think is

16   important to point out is that notwithstanding some very

17   poor decisions that Mr. Thompson made, both on the days

18   leading up to January 6th, on January 6th, the days leading

19   up to his trial, and then during his trial, since this Court

20   incarcerated him, he -- it was a wake up call.  He's tried

21   to take advantage of that.  Obviously he can't go back in

22   time and tell the truth during his testimony, but he's done

23   really everything that he possibly can in order to try and

24   make amends.

25           One of the things that I think is very important

1    for the Court to consider is the work that he's done with

2    Ms. Benscoter.  As a defense attorney -- and I think as the

3    Court as well, you look at a circumstance like this and you

4    try to wrap your head around the why.  You know, why were

5    all of these people at the Capitol that day based on a lie.

6    And I think that you would look at a lot of these people and

7    wonder what it is that impacted them so greatly that brought

8    them to the Capitol.  As a defense attorney, one of the

9    first things that jumps into your mind is, well, is there

10   some sort of a mental illness, is that what caused an

11   otherwise -- or what one would assume a reasonable person

12   wouldn't do, to do what they did.  That's just not the case

13   in this case, and I don't think it's the case in the six,

14   eight, however many hundreds of these cases have now been

15   prosecuted.

16            So the question is what is it about his thinking

17   that got him there.  So his work with Ms. Benscoter has

18   helped him understand how it is that he got to where he is,

19   why it is that these conspiracy theories held such sway over

20   him.  It's not just that he's been talking about them with

21   her, it's been confrontation at times with Mr. Thompson

22   where he's been putting the work in to really try and

23   disavow and sort of leave behind his belief in some of these

24   conspiracy theories.  For me, it seems ridiculous that these

25   conspiracy theories can hold so much weight with people or a

1    wing of a political party, but it's pervasive.

2            The thing that I think is admirable about

3    Mr. Thompson is that he's actually putting the work in.  I

4    think that -- and he acknowledges that it's not a complete

5    process, it's something he needs to continue working on.

6    But I think one of the things that I've noticed anyway in

7    some of the statements that other defendants have made to

8    the Court is there's this persistent reluctance to really

9    accept responsibility for what they did and acknowledge that

10   their belief system is wrong and based on a lie.  So I think

11   it's important to acknowledge that Mr. Thompson has done

12   that.

13           The reference letters, I think, paint a picture of

14   who Mr. Thompson is within the community and on a daily

15   basis.  It's generally positive.  It's interesting that he's

16   taken on sort of an altruistic role, whether it be with his

17   neighbors or helping with relocate beehives within his

18   community.  So there are these redeeming qualities.  But at

19   the same time, he's accepted responsibility for what he did

20   on January 6th.  At this point, there's no equivocation.  As

21   I mentioned, when he spoke with the January 6th Committee,

22   he completely acknowledged the -- his actions, what his

23   intent was.  And there wasn't any of the same equivocation

24   that we heard -- or lack of candor that was present during

25   the last trial.  And then also in that second addendum,

1    there's that last paragraph that I redacted for the public

2    filing that just, I think, goes to show some of the

3    additional efforts that he's making in order to try and make

4    amends.

5              With regard to the different sentences that are

6    available to the Court -- well, I guess before I get into

7    that, just one last point is I hope that my position on

8    sentencing didn't suggest that Mr. Thompson wasn't accepting

9    responsibility, and it was only the crowd -- you know, but

10   for the crowd he wouldn't have done these things.  He

11   acknowledges that he made the decision to go to the rally.

12   He made the decision to walk to the Capitol.  He made the

13   decision to go past whatever was left of the temporary

14   barriers that were put up.  He made the decision to go into

15   the Capitol building even though it was -- there was alarms

16   sounding and it was obvious that the building had been

17   broken into.  It was his own decision to steal the bottle or

18   bottles of alcohol and the coat rack and reenter the

19   building and then not leave.  There's no question he's

20   acknowledging those were his own choices, no one forced him

21   to do it.  He wasn't under the influence of Donald Trump.

22   So I just want to make that clear.

23             With regard to some of the other sentences, I

24   think if you look at Mr. Lyon, obviously his co-defendant,

25   not situated precisely.  Obviously he accepted a plea

1    agreement.  I think it's important to note that when viewing

2    his offense conduct compared to Mr. Lyon's offense conduct,

3    the plea offers were relatively similar.  The distinction

4    being that they expected Mr. Thompson would receive a

5    minimum sentence of 60 days.  Obviously Mr. Thompson

6    rejected that.  But I think that when the government viewed

7    these two cases with the factors that they typically use to

8    analyze these cases and put them on the spectrum, they were

9    relatively close.

10         And so if the question for the Court is, okay,

11   well, Mr. Lyon pled guilty, accepted responsibility, he gets

12   one benefit, how then do you quantify the difference in the

13   sentence that Mr. Lyon received and the sentence that

14   Mr. Thompson should receive, having persisted in his desire

15   to go to trial, albeit with significant stipulations, and

16   then not being candid with the tribunal during that trial?

17   And so I think that our suggestion that 12 months and a day

18   is appropriate.  It's nine times greater than the sentence

19   that Mr. Lyon received.  Certainly there are distinctions

20   between the two.

21         I think that one can argue that Mr. Lyon went into

22   the building twice, went out and got Mr. -- or Mr. Thompson

23   went in the building twice, got Mr. Lyon to go back in with

24   him.  Mr. Lyon was encouraged by Mr. Thompson to come to the

25   Capitol in the first place.  I think it's important to note,

1    though, that Mr. Lyon drove, so it wasn't just that

2    Mr. Thompson went and picked him up and convinced him and

3    drove him down here, Mr. Lyon drove.  So one of the

4    questions I think is based on the offers that they received,

5    what is the additional punishment that's appropriate for

6    Mr. Thompson to receive.  And on a magnitude of nine, I

7    think that a year and a day would be appropriate.

8              Looking at some of the other sentences, I list

9    them on the last few pages in my position on sentencing.

10   There's Jason Riddle.  He pled guilty, but he stole wine

11   from the Parliamentarian's office.  Importantly, he also

12   stole the book of procedure which I think is important,

13   because that is something that would -- may actually have

14   been used or needed on that day.  I have no idea, but that

15   just strikes me as a possibility.  He received six months I

16   believe.  You have Mostofsky -- I'm probably not pronouncing

17   that properly.  He pled guilty to misdemeanors.  He was

18   involved in a scrum of protesters that was pushing through a

19   police line, stole a police shield and a vest.  He received

20   eight months.  I understand these are all individuals who

21   pled guilty, but just I think that their conduct is

22   important to provide context for this case.  Moises Romero,

23   he also received a much lower sentence than what the

24   government's asking for in this case.  He pushed through a

25   police line.

1           But then you have the case of Williams, which the

2     government argues is the most analogous to this case.  So he

3     obviously went to trial.  In that case, I understand from

4     the record that he received an offer -- he didn't receive

5     the misdemeanor offer, his offer was to plead to the felony.

6     Then there was a contemplated guideline range of 15 to 16

7     months.  So that's the starting point based on the

8     government's nine-factor evaluation to put him into whatever

9     on the spectrum of culpability compared to where

10    Mr. Thompson was within the government's spectrum of

11    culpability, which was 60 days and two misdemeanors.

12          Obviously, Mr. Thompson and Mr. Williams both went

13    to trial.  But the notion that they are basically analogous,

14    I think, is misplaced.  Starting with the criminal history,

15    I don't think it's accurate to suggest that they have

16    comparable criminal histories.  Mr. Thompson's criminal

17    history is -- involves trespassing, motor vehicle offenses,

18    substances -- or illegal substance -- possession of

19    marijuana I think.  And compared to Mr. Williams'

20    testimony -- which is much lengthier, it involves charges

21    that are much more serious, and I specified all those in the

22    position.

23          I think it's also important to point out that he

24    was involved in the first wave that initially entered the

25    Capitol building.  Mr. Thompson was not -- he was inside for

1    an hour.  That's one of the government's factors in putting

2    these cases on their spectrum.  Mr. Thompson was in the

3    building for nine minutes.  Mr. Williams was involved with

4    overrunning a police line in the crypt after which he

5    decided to smoke marijuana inside the building.

6    Mr. Thompson, while inside the building, there's the photos

7    that the government included in their position on

8    sentencing.  You don't -- you see him walking out of the

9    building and then police in the background.  Clearly he's

10   not involved in a push to get further into the building.

11        There's the police there, and he basically walks

12   out of the Parliamentarian's office.  And rather than

13   turning right and going further in and being confrontational

14   with police, he turns left and leaves.  Obviously he comes

15   back in later.  But again, rather than turning right and

16   being confrontational with police, he turns left and leaves.

17   The government also suggested that he goes back to the north

18   doors and is, again -- they suggest that if that -- those

19   doors had been broken through, that he would have entered

20   again.  But he didn't, he left.  I think that's noteworthy

21   as well.

22        Getting back to Mr. Williams.  While police were

23   trying to get him and others to leave, he actively resisted.

24   And then after the fact, after this is all over with, he

25   gets on social media and basically brags about it all.  So I

1    think that -- the fact that he was involved in the first

2    wave, the fact that there were numerous occasions when he

3    was confronting law enforcement, trying to push through

4    their line or disobeying their instructions to leave the

5    building or actively resisting, I think that that suggests

6    that he and Mr. Thompson are not analogous, and that a much

7    lower sentence would be appropriate in this case.

8              So Your Honor, our argument is -- or suggestion

9    is -- recognizing there is a difference between some of the

10   conduct -- well, between the conduct of Mr. Lyon and

11   Mr. Thompson, recognizing that he decided to go to trial,

12   recognizing that he was not candid with the tribunal, we're

13   suggesting a sentence of 12 months and a day.  In addition

14   to that -- well, if the Court is inclined to give him a

15   lengthier sentence, we would also ask the Court to include

16   in its judgment that he be recommended to participate in the

17   RDAP program in the Bureau of Prisons, and also that he

18   serve his sentence or be designated to a facility that is

19   close to the Columbus, Ohio area.  Thank you, Your Honor.

20             **THE COURT:**  As far as RDAP, what is the thought?

21   There was no current real problem with substance abuse.

22             **MR. STEWART:**  Pardon me?

23             **THE COURT:**  Regarding RDAP, I thought currently --

24   I mean, there had been drug abuse, but I thought that that

25   had ceased?

1      **MR. STEWART:**  Well, it ceased because he was

2   incarcerated, I think.  So while he was on pretrial

3   services, I don't believe that there were -- or while he was

4   on pretrial release, I don't believe there were any issues.

5   I think that the importance of RDAP is to -- it's an

6   opportunity for him to receive services while he's

7   incarcerated, and set him up for success upon his release.

8   The purpose of the -- of that request really focuses on that

9   timeframe after he was laid off and prior to -- he was laid

10   off in March of 2020.  And so between then and January 6th

11   is when he really went down the proverbial conspiracy theory

12   rabbit hole, his drinking had increased.  So in order to

13   avoid -- well, in order to put him on the best possible

14   path, we're asking that he receive that treatment while he's

15   at the Bureau of Prisons.

16      **THE COURT:**  Let me just ask, I mean, I am

17   absolutely confident that he's not entitled to the reduction

18   for acceptance because of the circumstances, the stipulation

19   plus his testimony.  I'm totally confident that that

20   reduction would not be appropriate.  On these other

21   enhancements, I think an argument can be made that

22   conceivably they don't apply.  But I do, you know,

23   nonetheless conclude that while it's a tough issue, I think

24   they do apply.

25      What would be your position -- assuming that

1  you're correct regarding the enhancements not applying, what

2  would the guideline be with him not receiving the benefit of

3  that?

4        **MR. STEWART:**  So my calculation on the first page

5  of my position included all of the provisions that I

6  objected to being removed which would have gotten us to an

7  offense level of 12, which was 10 to 16 months.  Without

8  acceptance of responsibility he would be at 14, and I want

9  to say that that would give him a low end of 12.  Oh, I'm

10  sorry.  So my calculation without any of the enhancements

11  and the credit for acceptance of responsibility would have

12  put him at 10 to 16.  With what Your Honor suggested, it

13  would be an offense of level of 14 with a guideline range of

14  15 to 21 months.  That's all, Your Honor.  Oh, sorry,

15  Mr. Thompson would like to allocute.

16        **THE COURT:**  He may.

17        **MR. STEWART:**  Thank you.

18        **THE DEFENDANT:**  Good morning, Your Honor.  I just

19  want to begin by apologizing to the Capitol Police, everyone

20  in the Capitol on January 6th, and everyone in the United

21  States for my conduct that day.  I'm deeply ashamed.  I also

22  want to apologize to you, Judge Walton, for not being candid

23  and truthful with my testimony.  I was scared and -- it's

24  okay.

25        I love America, and I'm ashamed of my actions on

1    that day.  There's no excuse or justification for what I

2    did.  My participation in the insurrection threatened

3    government, and I take full responsibility.  I'm truly

4    sorry.  This has been a very sobering experience for me.  I

5    have learned a lot about myself.  Through self-reflection,

6    with the assistance of counseling I'm doing with Diane, I

7    believe I have an understanding of how to become a better

8    man, big brother and husband that I've always wanted to be.

9    I realize it's a process to try to be a better person each

10   and every day, and I just look forward to being reunited

11   with my family; and God willing, starting one of my own.

12   Thank you.

13             **THE COURT:**  Mr. Thompson, you know, I read what

14   the therapist had to say about why she believes you got to

15   where you were and did what you did.  But it's just

16   perplexing to me as to how someone who's astute enough to go

17   to a very good university and graduate, who could do down,

18   as you said, this rabbit hole and put yourself in a position

19   where you did what you did.  It's just mind boggling to me

20   that -- you know, I don't get it, I don't understand.  It's

21   just beyond my comprehension as to how someone with the

22   privilege of being able to go to college and get a college

23   degree at a good university where a lot of people don't have

24   those opportunities, how you got to the point where you

25   believed so much in a lie that caused you to drive all the

1  way from Columbus, Ohio here and then do what you did.

2         I mean, it just seems to me that -- sure,

3  everybody has a right to protest, even if the protest is

4  totally ludicrous.  That's the American way.  The First

5  Amendment gives you the right to do stupid things if you

6  want to do stupid things as far as speech is concerned.  You

7  had a right to come to D.C. even though there was no factual

8  predicate whatsoever that would support that the election

9  had been stolen.  But nonetheless, you bought in on that lie

10  and you came here.  Fine, okay, that's all fine.  Then you

11  get here and you hear these speeches.  And I guess that

12  inspires you, I don't know why, because what was being said

13  was nonsensical.  But then you come down to the Capitol.

14  Okay, that's all fine.  Protest.

15         But then you get there, and you see all this

16  mayhem, craziness going on.  And it seems to me that at that

17  point, you would have said even though I have these beliefs,

18  I ain't associating myself with that.  You know, but you

19  don't.  I mean, alarms going off, police officers being

20  beat.  We've had officers who have died as a result of this.

21  I'm not saying you had anything to do with that, but the mob

22  mentality created the circumstances that resulted in people

23  losing their lives.  And then you see this break in

24  occurring at the citadel of our country, and even at that

25  point, that doesn't get you to say I've got to stop this,

**1**     this is wrong.  And then you go into the Capitol.  And then

**2**     when you get in, you're gleeful, you're happy.  You're

**3**     saying things that's inspiring the other people to believe

**4**     that what they were doing was righteous.

**5**             And then you go in, and how do you stoop to the

**6**     point where you steal some liquor?  How do you stoop to the

**7**     point where you steal a coat rack?  What are you going to do

**8**     with a coat rack?  I guess, like you said, it was a trophy.

**9**     And then you come in this courtroom and you lie; you get on

**10**    the stand and you lie.  I mean, you must think that those 12

**11**    people sitting over on that jury were fools to think that

**12**    you could convince them that you took this coat rack, and

**13**    the reason you took the coat rack was to keep it from being

**14**    used as a weapon against the cops.  How would you think

**15**    anybody would believe that?

**16**            **THE DEFENDANT:**  I mean, I don't.  I think it's

**17**    possible to understand that this can happen to people that

**18**    are well educated, I guess went to college.  You know, with

**19**    the contributing factors of the time, with the factors of

**20**    like being laid off and just isolation, drinking and stuff

**21**    more -- take liquor, you know, because I was -- there's no

**22**    excuse.  But I'm just saying it was just a combination of

**23**    factors I guess, Your Honor, that led me there that day.

**24**            **THE COURT:**  It makes for a very difficult

**25**    situation, because I'm not unsympathetic to people being

1    radicalized to engage in abhorrent behavior.  We saw it

2    happen in Nazi Germany, a very educated, intelligent

3    population was able to be swayed to engage in the atrocities

4    that took place in Germany based upon a demagogue.  And it

5    seems to me you bought into that same type of mentality.  If

6    we had a lot of people -- if the majority of the American

7    public -- fortunately it's not the case, were able to buy in

8    on the same mentality that you bought in on, create the same

9    mentality you bought in on based upon the same type of

10   Hitler type movement, we could be in the same situation in

11   this country.  I find that utterly scary, that we still have

12   millions of people in this country who are still buying a

13   lie that's not based upon anything other than someone who's

14   unhappy because they didn't get what they wanted.  I just --

15   I don't get it.

16        And it's hard, because I don't know if you have a

17   change in heart.  Maybe you do.  You hadn't at the time when

18   you testified during this trial.  You were still of the same

19   mind set.  Otherwise, you wouldn't have got up there and did

20   what you did.  I don't know if you've had this come to Jesus

21   moment only because you've been locked up, I don't know.

22   Because I know there have been other individuals who have

23   been in this Court who actually pled guilty and admitted

24   what they did, and then went out and said they really just

25   said that because all they wanted to do was get a lighter

1   sentence.  So I don't know if you're running a game on me or

2   not.

3           It's hard, because like I say, the greatest

4   attribute, gift that we have as human beings is freedom.  I

5   don't like taking someone's freedom away, but sometimes that

6   has to be the case.  Because when people engage in conduct

7   that's disruptive to our society -- and in this case was a

8   threat on undermining what this country is all supposed to

9   be about, democracy, it's something that has to be punished.

10          There are a lot of things obviously I've got to

11  take into account in deciding what the appropriate sentence

12  is.  One of those is punishment, and I think punishment is

13  appropriate.  I think also one of the things I have to think

14  about is the nature of the crime.  And for the reasons I've

15  been articulating, I think this is a very, very serious

16  crime.  Because if you and your cohorts had been successful

17  at what you wanted to do, it would have undermined the

18  integrity and existence of this country.  You all were

19  trying to tear down this country.  You were trying to

20  destroy it because you didn't get what you wanted, and that

21  was somebody who wasn't willing to admit their defeat didn't

22  get what they wanted.  And if you had had your way, you

23  would have torn this country down and you would have made

24  this country in a sense a dictatorship, because that's what

25  someone wanted to occur.  You were willing to buy in on

1    that, willing to let that happen along with the other people

2    who went over there and did what you did.  That has to be

3    punished, that's very serious behavior that cannot be

4    tolerated.

5         Then I have to think about, well, you know,

6    maybe -- I don't know, I hope maybe this experience has

7    deterred you from doing anything like this.  I don't know if

8    it has or not.  I don't know, maybe you'll get out and go

9    back to the same mind set you had before.  I can't tell, I'm

10   not a mind reader.  But I do know it's important to not only

11   send a message to you -- even if that message doesn't

12   necessarily need to be sent because maybe you have reformed,

13   but a message needs to be sent to others.  Because

14   unfortunately, the same things that were being said that

15   riled up people to do what they did on January 6th, those

16   same things are being said now by the same people.

17        I don't know what's going to happen in the future.

18   I don't know if there will be the ability to rile up people

19   again like what happened that occurred on January 6th.  I

20   don't know.  I know the same language, the same false

21   allegations are being made.  It's still being perpetrated.

22   And unfortunately, there are a lot of people who are still

23   buying in on it.  I hope not to the same degree it was

24   before.  But there's still probably millions of people who

25   are still accepting the lie as a predicate for believing

1   that the election was unfair.

2          So I think it is important for people to realize

3   that, well, you can have a belief, but if you act on that

4   belief and you do what occurred on January 6th, you're going

5   to get punished.  Maybe that sends a message to people that,

6   hey, I may have these beliefs, but I don't want to go to

7   prison.  So despite what somebody is saying, even if I want

8   to believe what they're saying, I ain't going to do what

9   happened on January 6th because I don't want to go to

10  prison.  And that message needs to be sent to every American

11  in this country, that if you're going to do what happened on

12  that day, you're going to pay a price.  Because otherwise,

13  how do we maintain our democracy if people can do what you

14  did and what these other folk did and no consequences.

15  Because then that sends a message that we can do this again,

16  and we're not going to pay a price.  We can't send that

17  message, can't do it.

18          And then the question becomes, you know, I have to

19  obviously consider what sentences are available.  Your

20  lawyer asked very eloquently that you receive a lenient

21  sentence.  I can't go where he goes, because I don't think

22  that would be the appropriate message to send.  Then I have

23  to think about, you know, what other people have been given

24  by way of sentences who have engaged in the same type of

25  behavior.  And it's very difficult to fit everybody into the

1    same category, because everything is different.  It's hard,

2    because in the case of Mr. Lyon, I think clearly your level

3    of culpability and the punishment that you received has to

4    be greater than his.  And that's not just because you went

5    to trial, because everybody has a right to go to trial.

6    Although when the evidence is clearly just so overwhelming

7    and you're still not ready to admit what you did, that is a

8    factor to take into account.

9            But there are a lot of things different from

10   Mr. Lyon.  I mean, Mr. Lyon did come forward and admit that

11   he lied, admit that he had committed this crime and he pled

12   guilty.  The whole thing about the bulletproof vest, you

13   know, maybe what you say is true.  There are things that

14   happen that you can't reconcile, and maybe they happened.

15   But even assuming you did not bring the vest with you, you

16   know, you put it on.  And you obviously put it on because

17   you thought there was going to be violence.  And again, if

18   you were thinking right, you wouldn't have put that vest on

19   and went down there, because you'd have said if there's

20   going to be violence, I'm going back to Silver Spring, I'm

21   getting back in my car and driving back to Columbus, Ohio.

22   You didn't do that, you put on that vest and went down there

23   because you anticipated there was going to be violence, as

24   there was.  That's a significant factor to take into

25   account.

1          Like I said, taking the liquor, taking the coat

2    rack, seeing these police officers engage in a mortal

3    battle, but nonetheless you still went in the building.  You

4    know, you take the coat rack, bring it outside, get

5    confronted by the cops.  Rather than saying, hey look, okay,

6    I'm wrong, you take off and run.  There's just so many

7    factors that are different than Mr. Lyon.  Initially, he

8    didn't even want to come, and you encouraged him to come to

9    D.C.  And then he didn't go in with you the first time, and

10   you came out and got him, took him back in there.  You went

11   into the Parliamentarian's office, you saw all that was

12   taking place.

13          Again, once you got in there and saw that taking

14   place, you didn't say this is the Capitol of the United

15   States of America, the greatest country in the world, I'm

16   not going to contribute to destroying my country.  But you

17   didn't.  You saw what was happening and you became happy

18   about it; you became gleeful about it.  How could you do

19   that?  But yet now you say you love America.  You didn't

20   love America that day.  I mean, all of that makes it, like I

21   say, very, very difficult as to what I should do in your

22   case.

23          As I said, I have concluded that a certain period

24   of incarceration is appropriate.  I understand what the

25   probation office says, and I think what they say has some

1   legitimacy.  I hear what the government argues as to what

2   they think the appropriate sentence should be, and I think

3   there's a lot of legitimacy with that.  We talked about what

4   the guidelines should be.  As I've said, I don't believe in

5   any way that you're entitled to a reduction in your offense

6   level based upon you accepting responsibility, because you

7   didn't accept responsibility.  I think the stipulation,

8   coupled with what you said on the witness stand, show you're

9   clearly not entitled to that reduction in your offense

10  level.

11          As far as the enhancements are concerned, as I

12  said, I do believe that the appropriate view is consistent

13  with the government's.  But I think it can be argued that

14  conceivably those enhancements would not apply.  I feel a

15  lot more comfortable about the one regarding you having

16  aided and abetted, engaged in conduct that encouraged others

17  to do what they did.  Because none of this destruction of

18  our Capitol would have occurred but for everybody who was

19  involved.  If only one person was down there or two or

20  three, they wouldn't have done what they did, because they

21  would have been outnumbered by the cops.  But because the

22  mob came down there, and you all had the numbers and the

23  mind set, you were able to do what you all did.  So all of

24  you as a group contributed to the mentality that resulted in

25  the breach of the Capitol and the destruction of more than

1    $2,000,000 of a building that's the citadel of our country.

2              So I think that the enhancement based upon you

3    having aided and abetted the destruction of property with

4    the purpose of stopping the certification of the

5    presidential election, I think that enhancement was

6    appropriate.  But it can be argued that maybe that doesn't

7    apply.  And then the other one may not apply, I don't know.

8    But, you know, we may get something from the Court of

9    Appeals at some point that will give us some guidance in

10   there.  But according to -- you know, your lawyer says that,

11   well, if those enhancements weren't applied, and if you

12   didn't get the reduction -- which I clearly conclude you

13   weren't entitled to receive based upon you accepting

14   responsibility for what you did, that the guideline would be

15   15 to 21 months.  That's not a sentence based upon what you

16   did and based upon the seriousness of the conduct that I

17   would give.

18             But how much do I go above it?  Because even if I

19   conclude that that was the appropriate guideline -- which I

20   haven't, because I concluded that the guideline is

21   calculated by the probation officer, and the government is

22   the appropriate guideline.  But even if I agree with your

23   lawyer -- who's done a good job advocating for you, I would

24   not give you a guideline sentence because I think the

25   conduct is too serious.  I think the message that needs to

1    be sent to others so that we can deter this from occurring

2    again has to occur.  I just think a sentence within the

3    guidelines, even if they would be what your lawyer says, I

4    don't think that would be adequate.

5            So it is my view based upon what other people have

6    received -- and, you know, you have the one prior drug

7    conviction, a couple traffic violations, but you don't have

8    any criminal history points because of the nature of your

9    prior history.  I'm not unsympathetic to someone who found

10   themselves in your situation, having lost your job and

11   having started to abuse alcohol and prescription drugs and

12   hearing all this dis- and misinformation that's out there.

13   I'm not unsympathetic that for whatever reason, people can

14   be gullible enough to accept a lie and act on that lie.

15           I don't understand it.  I don't understand how

16   somebody is intelligent enough to go to a good university

17   like Ohio State University and graduate.  I don't understand

18   how that dis-information and that misinformation, how it got

19   you to where you were.  I don't get it.  There's probably

20   some good reason why people are willing to buy in on a lie,

21   but I don't understand it, especially when it results in

22   them engaging in conduct that seeks to undermine the

23   integrity of our governmental system as a democracy.  So

24   because of all that I've said, I would not give you a

25   sentence within the guidelines, I would go above the

1    guidelines because I think it's appropriate.  I just don't

2    see how a sentence of anything less than 36 months is

3    appropriate in this case.

4            So my sentence will be that you'll be sentenced

5    to -- on count one of the indictment, to 36 months in prison

6    with credit for any time that you're entitled to receive.

7    As to counts two and four, you'll be sentenced to 12 months

8    in prison.  As to counts five and six, you'll be sentenced

9    to six months in prison.  And all of these counts are to run

10   concurrent with each other.  So your total sentence, as far

11   as prison is concerned, will be 36 months minus any time

12   that you're entitled to receive credit for for the time

13   you've already served.

14           In reference to once you are released, I will

15   place you on supervised release on count one of the

16   indictment for 36 months.  As to counts two and four, I will

17   sentence you to 12 months of supervised release.  And then

18   as to counts five and six, there's no period of supervised

19   release applicable.  So the period of supervised release you

20   will have to serve will be 36 months under the supervision

21   of the probation department.

22           As conditions of your supervised release, once you

23   are released, I will require that you not commit -- you have

24   to comply with all of the standard conditions of supervised

25   release, and you need to review those with your lawyer.  I

1    also will specifically order that you not commit any further

2    federal, state or local crimes while you're on supervised

3    release.  Also, that you not use any illegal substances

4    while you're on supervised release.  Also, that you must be

5    tested at least once, once you are released, within 15 days

6    of your release by the probation department to see if you

7    have used drugs.  And then you'll be tested on a regular

8    basis based upon the probation department's determination of

9    how regularly that testing needs to be.

10             The law does require that you provide a sample of

11   your DNA so that that can be used to identify you if you

12   engage yourself in further criminal behavior.  Also, there

13   is an agreement that you pay restitution -- well, the

14   government's arguing that you should be required to pay

15   restitution in the amount of $2,000.  The total amount of

16   damage that was done to the United States Capitol was more

17   than $2,000,000, but the government has asked that I impose

18   a restitution amount of $2,000.  I will do that.  It does

19   cost money, obviously, to prosecute these cases and for the

20   Court system to handle the cases.  So I will also impose a

21   $2,000 fine.

22             And in reference to the special assessment, you

23   have an obligation to pay $195 as a special assessment for

24   the several offenses that you've been convicted of.  Count

25   one requires you pay a special assessment of $100.  Counts

1   two and four require that you pay $25 per charge.  And

2   counts five and six require that you pay $10 per charge for

3   a total of $195.

4         While you are detained, if you work, I will

5   require that a portion of your salary be deducted in order

6   to pay the financial obligations that you have to the Court.

7   Once you are released, I'll require that you pay at least

8   $150 per month to satisfy these financial obligations.  And

9   those funds will be paid to the clerk of this court and then

10  disseminated appropriately.  I also will require that you

11  provide any financial information to the probation

12  department that they need while you're on supervised release

13  to make sure that you are in a position to -- not in the

14  position to pay more than the minimum of $150 a month that

15  I've required.  So you have to provide that information to

16  them.

17        You also have to provide any -- when you provide

18  whatever information you provide to them, it has to be

19  truthful information.  Also, you cannot create any further

20  financial obligations other than what you already have

21  without the authorization of the probation department.

22  Also, I'll require that once you're released, that you be

23  evaluated to see if drug treatment is needed.  And if it's

24  decided that drug treatment -- or substance abuse treatment,

25  which could be the alcohol.  If it's needed, that you

1   participate in that treatment until it's decided it's no

2   longer necessary.  If it's felt that mental health treatment

3   or assistance is needed -- and you have been talking to this

4   counselor.  Based upon what she says, I would conclude that

5   some type of mental health intervention is necessary,

6   hopefully to change your perspective on what caused you to

7   do what you did on January 6th.  So you'll be evaluated to

8   see if that intervention is necessary; and if so, that you

9   participate in that.

10          I will maintain jurisdiction even though I'll

11   authorize that supervision of your supervised release be

12   transferred to Ohio.  I will nonetheless maintain

13   jurisdiction so that if you don't do what you're supposed to

14   do, you'll have to face me regarding having violated the

15   conditions of your supervised release.  And I will require

16   that within 60 days of your release, that there be a hearing

17   before me -- it can be done remotely by telephone or Zoom,

18   so that I can keep track of what your situation is once

19   you're back into the community.

20          Also, you have to verify your address where you're

21   going to be living.  Your wife said that she's willing to

22   have you come back and live with her.  So if that's where

23   you're going to be living, that's where you have to live.

24   If you live in some other location, you have to let the

25   probation department know exactly where you're going to be

1    residing.  And if you're going to change your residence,

2    then you'll have an obligation to immediately let the

3    probation department know that your residence will be

4    changing.

5           As far as your incarceration is concerned, there

6    is some indication I guess that you had an alcohol problem,

7    and maybe -- at some point you apparently were taking

8    prescription drugs.  So I will recommend that you be

9    permitted to participate in the RDAP drug treatment -- or

10   substance abuse treatment program while you are detained.  I

11   also will recommend that you be permitted to serve your

12   sentence at a location near Columbus, Ohio so that you can

13   maintain contact with your family during your period of

14   detention.

15          Probation, anything else I need to add?

16          **MR. WALTERS:**  Your Honor, can we have permission

17   to release the PSR to treatment providers?

18          **THE COURT:**  Very well.  I will permit the release

19   of the presentence investigation report to providers who

20   it's determined needs to have that information.

21          Anything from the government, other than his

22   appellate rights?

23          **MR. DREHER:**  I just wanted to clarify, did the

24   Court impose sentence as to count three?  I heard count one,

25   two and four --

1      **THE COURT:**  I intended to if I didn't.

2      **MR. DREHER:**  Count three has the same statutory

3  maximums as counts two and four, so the Court may have meant

4  two through four.

5      **THE COURT:**  I'm sorry, I did, I did.  If I did say

6  otherwise, I did mean to say counts two through four, 12

7  months.

8      Sir, you do have 14 days from today's date to

9  appeal your conviction and your sentence to the District of

10 Columbia circuit Court of Appeals.  If you cannot afford to

11 pay for a lawyer to represent you on appeal or if you cannot

12 afford to pay for the papers to be filed with the Court to

13 let the Court know that you want to appeal, those expenses

14 will be paid free of charge by the government.

15     Sir, do you understand your sentence?

16     **THE DEFENDANT:**  I do, Your Honor.

17     **THE COURT:**  Any questions?

18     **THE DEFENDANT:**  No, Your Honor.

19     **THE COURT:**  Good luck to you, sir.

20     **THE DEFENDANT:**  Thank you, Your Honor.

21     (Proceedings adjourned at 11:14 a.m.)

22

23

24

25

1          **C E R T I F I C A T E**

2

3               I, **Jeff M. Hook, Official Court Reporter,**

4     certify that the foregoing is a true and correct transcript

5     of the record of proceedings in the above-entitled matter.

6

7

8

9     December 6, 2022

10          **DATE**                          **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$10 [1]   80/2
$100 [1]   79/25
$150 [2]   80/8 80/14
$195 [2]   79/23 80/3
$2,000 [3]   79/15
79/18 79/21
$2,000,000 [2]   76/1
79/17
$25 [1]   80/1

**.**

.2 [1]   12/13

**1**

10 [3]   53/13 65/7
65/12
102 [2]   4/14 4/25
11 [1]   34/8
11:14 a.m [1]   83/21
12 [8]   59/17 63/13
65/7 65/9 68/10
78/7 78/17 83/6
14 [3]   65/8 65/13
83/8
15 [6]   50/25 51/18
61/6 65/14 76/15
79/5
1503 [1]   35/25
1510 [1]   33/2
1511 [1]   33/2
1512 [4]   33/8 33/12
46/14 52/10
16 [4]   51/17 61/6
65/7 65/12
18 [5]   1/5 33/1
33/1 33/7 33/7
1:21-cr-0161-1 [1]
1/4

**2**

20001 [1]   1/25
201 [1]   1/16
2020 [3]   17/22 38/2
64/10
2021 [2]   14/13 54/7
2022 [2]   1/5 44/4
20s [1]   53/3
21 [2]   65/14 76/15
21-161-1 [1]   2/2
2111 [1]   1/18
22201 [1]   1/19
24 [1]   53/5
2J1 [1]   12/12
2J1.1 [3]   4/4 38/21
38/24
2J1.2 [14]   12/8
12/22 13/17 23/10
24/3 29/2 32/12
33/10 34/2 34/10
38/25 39/1 39/2
39/7

**3**

30 [1]   45/8
30-page [1]   29/16
333 [1]   1/24
36 [5]   78/2 78/5
78/11 78/16 78/20

3C1.1 [3]   32/8 32/8
32/22
3rd [1]   1/16

**4**

44 [1]   5/3
45 [2]   47/6 51/1
4700-C [1]   1/24
48 [2]   20/5 52/23
48-month [1]   53/1
4:00 [1]   51/11

**5**

51 [1]   5/15
5220 [1]   1/13
53 [1]   30/5
55 [1]   30/5
59 [2]   20/11 20/13

**6**

60 [4]   52/21 59/5
61/11 81/16
62-4 [1]   18/12
68 [1]   6/25
6th [29]   2/18 15/17
16/16 18/3 42/4
43/10 45/3 45/20
48/22 49/10 50/23
50/25 51/18 51/18
52/9 53/18 54/7
55/3 55/18 55/18
57/20 57/21 64/10
65/20 71/15 71/19
72/4 72/9 81/7

**7**

70-month [1]   53/19
700 [1]   1/13

**8**

87 [1]   52/16
87102 [1]   1/16
8th [1]   1/18

**9**

900 [1]   1/16
98101 [1]   1/14
9:05 [1]   1/6

**A**

a.m [2]   1/6 83/21
abandoned [1]   48/2
abetted [5]   27/9
27/10 35/2 75/16
76/3
abetting [13]   22/9
24/21 25/16 25/20
26/20 26/21 27/15
27/15 27/17 29/23
31/25 34/23 37/8
abetting/encouraging
31/25
abhorrent [1]   69/1
ability [8]   16/11
17/21 19/5 19/7
19/11 20/16 38/4
71/18
able [11]   17/20
21/5 25/8 26/24
35/9 36/18 47/24

66/22 69/3 69/7
75/23
above [4]   53/2
76/18 77/25 84/5
above-entitled [1]
84/5
absolutely [1]
64/17
abuse [5]   63/21
63/24 77/11 80/24
82/10
accept [2]   57/9
75/7 77/14
acceptance [7]   7/3
7/20 8/5 11/4 64/18
65/8 65/11
accepted [5]   8/17
50/7 57/19 58/25
59/11
accepting [5]   8/22
58/8 71/25 75/6
76/13
access [1]   18/15
accomplish [3]   19/1
26/13 26/14
according [1]   76/10
account [4]   25/19
70/11 73/8 73/25
accountable [3]
55/1 55/8 55/11
accurate [5]   5/25
11/13 44/23 54/23
61/15
acknowledge [2]
57/9 57/11
acknowledged [2]
7/11 57/22
acknowledges [2]
57/4 58/11
acknowledging [2]
9/16 58/20
across [1]   53/22
act [6]   12/21 20/3
32/15 37/10 72/3
77/14
action [2]   1/3 2/2
actions [2]   57/22
65/25
actively [3]   47/22
62/23 63/5
activities [1]
39/10
activity [24]   13/2
17/19 18/2 20/1
20/2 20/15 24/14
25/12 25/16 26/19
27/6 28/9 32/1
36/25 37/2 37/5
37/18 37/21 38/1
42/7 42/8 43/11
43/14 55/14
actual [4]   25/23
35/17 35/22 46/3
actually [1]   3/21
25/16 33/6 35/14
35/21 47/10 50/4
51/6 57/3 60/13
69/23
add [2]   20/17 82/15
addendum [1]   57/25

addition [1]   63/13
additional [7]   21/3
31/21 43/24 52/13
53/6 58/3 60/5
address [6]   3/21
7/1 8/20 12/8 36/8
81/20
addressed [1]   38/12
addressing [1]   11/3
adequate [1]   77/4
adjourned [1]   83/21
administration [23]
12/2 12/16 12/17
27/23 27/25 28/2
28/3 29/5 32/5
33/17 33/20 34/1
34/9 35/14 35/15
38/22 39/5 40/5
40/8 40/9 40/18
41/11 41/24
administrative [1]
34/5
admirable [1]   57/2
admission [1]   31/14
admit [4]   70/21
73/7 73/10 73/11
admitted [1]   69/23
adopt [1]   11/24
adopted [1]   5/22
advantage [3]   26/5
26/11 55/21
advised [1]   48/20
advocating [1]
76/23
affected [1]   16/4
afford [2]   83/10
83/12
afterward [1]   18/15
again [23]   2/19
11/11 14/25 17/6
22/18 31/3 34/5
43/2 43/5 46/3 46/8
48/6 48/11 49/10
51/15 62/15 62/18
62/20 71/19 72/15
73/17 74/13 77/2
against [3]   9/5
17/4 68/14
agents' [1]   49/13
aggravated [1]   47/5
aggravating [2]
48/13 53/6
agree [13]   6/16
9/20 10/9 12/25
15/18 21/8 24/6
24/6 25/9 30/23
33/5 43/2 76/22
agreed [1]   38/13
agreeing [1]   24/17
agreement [3]   20/14
59/1 79/13
agrees [2]   8/11
10/19
Aguilar [1]   35/24
ahead [1]   10/12
aided [5]   27/8
27/10 35/2 75/16
76/3
aiding [13]   22/9
24/20 25/15 25/20

**A**

aiding... [9]   26/19
26/21 27/14 27/15
27/17 29/22 31/24
34/23 37/8
ain't [2]   67/18
72/8
alarms [2]   58/15
67/19
albeit [2]   7/15
59/15
Albuquerque [1]
1/16
alcohol [4]   58/18
77/11 80/25 82/6
all-encompassing [1]
16/7
allegations [1]
71/21
allocute [1]   65/15
almost [1]   47/11
alone [1]   33/17
along [3]   21/16
25/6 71/1
altering [3]   15/2
15/10 15/11
alternative [2]
19/18 21/20
although [2]   53/15
73/6
altruistic [1]
57/16
always [3]   41/16
51/13 66/8
Amendment [1]   67/5
amends [2]   55/24
58/4
AMERICA [7]   1/3 2/3
36/10 65/25 74/15
74/19 74/20
American [3]   67/4
69/6 72/10
amount [6]   20/2
35/4 37/22 79/15
79/15 79/18
amounted [1]   22/22
amounts [1]   28/11
analogous [5]   36/1
52/23 61/2 61/13
63/6
analysis [1]   13/9
analyze [1]   59/8
ANDREW [2]   1/18 2/9
announced [1]   31/24
anticipated [3]
17/5 45/6 73/23
anymore [1]   35/17
anyways [1]   50/14
apart [1]   40/13
apartment [1]   8/11
apologies [1]   14/20
apologize [2]   12/5
65/22
apologizing [1]
65/19
apparent [1]   36/15
apparently [1]   82/7
appeal [4]   38/9
83/9 83/11 83/13

Appeals [4]   38/10
43/6 76/9 83/10
appear [1]   19/16
APPEARANCES [1]
1/11
appearing [1]   40/12
appears [3]   10/18
23/16 34/9
appellate [1]   82/22
applicable [2]
24/20 78/19
application [10]
12/2 29/6 32/9
32/24 38/23 39/9
39/23 40/14 41/6
43/17
applied [4]   23/20
29/3 43/7 76/11
applies [2]   23/19
32/24
apply [24]   8/5
11/12 17/19 17/24
22/15 26/16 28/4
29/2 29/15 32/13
37/17 37/24 38/8
38/15 42/12 43/1
43/5 43/18 52/25
64/22 64/24 75/14
76/7 76/7
applying [5]   10/22
25/20 34/7 39/16
65/1
appreciate [1]
45/14
approached [1]   9/10
appropriate [21]
10/10 11/20 29/8
54/10 54/19 59/18
60/5 60/7 63/7
64/20 70/11 70/13
72/22 74/24 75/2
75/12 76/6 76/19
76/22 78/1 78/3
appropriately [1]
80/10
approximate [1]
15/20
approximately [1]
13/24
April [1]   44/4
area [3]   49/14
53/11 63/19
areas [1]   31/8
arguably [1]   19/8
argue [6]   25/25
26/20 27/8 44/18
49/1 59/21
argued [3]   5/23
75/13 76/6
argues [2]   61/2
75/1
arguing [1]   79/14
argument [23]   7/7
7/15 7/16 11/4
11/18 12/20 13/6
14/23 18/19 18/21
19/22 21/21 22/17
23/23 24/22 26/22
34/24 35/6 38/20
40/10 43/24 63/8

64/21
arguments [2]   11/25
27/24
Arlington [1]   1/19
armor [1]   44/14
around [8]   22/8
31/7 31/19 46/20
47/6 47/6 51/10
56/4
articulating [1]
70/15
ashamed [2]   65/21
65/25
assaults [1]   47/24
assembled [1]   19/4
assertion [1]   51/16
assessment [3]
79/22 79/23 79/25
assist [2]   24/23
35/9
assistance [3]   43/5
66/6 81/3
assisted [1]   46/2
assisting [1]   21/7
associate [1]   25/10
associating [1]
67/18
assume [2]   15/11
56/11
assuming [2]   64/25
73/15
astute [1]   66/16
atrocities [1]   69/3
attached [1]   3/18
attempt [1]   11/24
attempting [2]
19/23 46/21
attention [1]   54/1
attorney [2]   56/2
56/8
attribute [1]   70/4
attributes [1]   28/6
authorities [1]
26/24
authority [1]   7/12
authorization [1]
80/21
authorize [2]   7/12
81/11
available [2]   58/6
72/19
Avenue [1]   1/24
45/11
avoid [2]   11/15
64/13
away [3]   9/11 44/20
70/5

**B**

back [24]   22/13
23/5 25/8 34/24
35/11 44/4 46/7
47/9 48/5 48/10
48/10 51/10 55/21
59/23 62/15 62/17
62/22 71/9 73/20
73/21 73/21 74/10
81/19 81/22
background [9]
13/10 13/20 13/22

14/2 14/6 14/14
23/12 24/1 62/9
Bankruptcy [1]   1/23
barriers [1]   58/14
based [24]   6/10 7/3
7/13 7/17 11/2 13/8
36/13 37/8 48/16
56/5 57/10 60/4
61/7 69/4 69/9
69/13 75/6 76/2
76/13 76/15 76/16
77/5 79/8 81/4
bases [1]   22/14
basically [3]   61/13
62/11 62/25
basis [6]   9/17 9/17
18/13 32/18 57/15
79/8
battle [1]   74/3
beat [1]   67/20
became [2]   74/17
74/18
because I [1]   68/21
become [1]   66/7
becomes [2]   37/12
72/18
beehives [1]   57/17
begin [1]   65/19
behalf [2]   2/10
45/15
behavior [4]   69/1
71/3 72/25 79/12
behind [3]   16/15
48/22 56/23
beings [1]   70/4
belabor [1]   34/23
belief [4]   56/23
57/10 72/3 72/4
beliefs [2]   67/17
72/6
believes [1]   66/14
believing [1]   71/25
benefit [3]   10/7
59/12 65/2
Benscoter [4]   3/2
3/18 56/2 56/17
best [1]   64/13
better [8]   6/8 26/3
43/3 46/7 47/2 47/8
66/7 66/9
beyond [3]   26/4
39/24 66/21
big [1]   66/8
bike [1]   47/22
bit [2]   16/13 54/8
Black's [1]   33/24
Bledsoe [1]   52/23
boat [1]   53/10
bodies [1]   50/4
body [1]   44/14
boggling [1]   66/19
book [1]   60/12
both [5]   3/9 5/22
45/22 55/17 61/12
bottle [8]   5/16
5/21 5/23 5/25 6/12
6/14 6/19 58/17
bottles [6]   5/20
6/10 6/11 6/14 6/18
58/18

**B**

bought [4]   67/9
69/5 69/8 69/9
Boulevard [1]   1/18
brags [1]   62/25
breach [3]   47/22
54/6 75/25
breadth [2]   40/21
42/5
break [1]   67/23
brief [1]   34/8
briefly [2]   6/3
29/22
bring [3]   5/8 73/15
74/4
broad [1]   33/20
broader [5]   10/21
15/13 18/1 34/6
34/7
broken [3]   30/2
58/17 62/19
brother [1]   66/8
brought [3]   5/8
49/6 56/7
building [34]   9/9
9/10 16/22 19/15
20/7 21/14 23/4
24/25 25/24 30/12
31/7 45/9 45/10
46/11 46/25 47/13
47/21 48/11 48/20
51/10 58/15 58/16
58/19 59/22 59/23
61/25 62/3 62/5
63/5 74/3 76/1
bulletproof [3]
44/11 45/2 73/12
bully [1]   17/7
burden [1]   8/1
Bureau [2]   63/17
64/15
buy [3]   69/7 70/25
77/20
buying [2]   69/12
71/23
BYRON [1]   1/6

**C**

cabinet [1]   25/4
calculated [3]   38/8
54/22 76/21
calculation [2]
65/4 65/10
call [3]   33/13
51/24 55/20
came [3]   67/10
74/10 75/22
can [39]   4/8 4/14
6/7 6/7 7/5 15/12
15/16 20/2 22/23
25/25 27/8 28/10
35/15 35/18 37/21
37/22 41/23 42/6
43/5 43/12 43/22
48/10 55/23 56/25
59/21 64/21 68/17
72/3 72/13 72/15
75/13 76/6 77/1

candid [5]   9/25
11/5 59/16 63/12
65/22
candor [3]   11/3
11/8 57/24
Capitol [52]   2/17
6/15 9/9 16/21 17/3
19/5 19/9 20/7
20/25 21/1 21/2
26/9 30/12 31/7
36/12 36/19 44/12
44/15 45/4 45/10
45/12 45/19 46/2
46/17 46/19 46/20
47/21 47/23 48/3
48/5 48/14 48/18
49/13 50/1 50/5
51/8 53/4 54/7 56/5
56/8 58/12 58/15
59/25 61/25 65/19
65/20 67/13 68/1
74/14 75/18 75/25
76/16
car [1]   73/21
careful [1]   54/16
carry [1]   26/6
carrying [3]   18/23
19/8 43/11
cart [1]   46/21
case [44]   7/19 7/21
8/2 8/14 10/8 12/1
15/21 16/9 16/24
21/4 22/16 23/24
31/4 31/11 32/17
33/3 37/16 37/25
42/16 42/22 43/19
44/3 44/7 45/25
49/21 52/23 52/25
54/15 54/20 56/12
56/13 56/13 60/22
60/24 61/1 61/2
61/3 63/7 69/7 70/6
70/7 73/2 74/22
78/3
cases [20]   34/6
49/6 52/9 52/13
52/15 52/17 52/20
53/16 54/1 54/11
54/16 54/17 54/22
55/2 56/14 59/7
59/8 62/2 79/19
79/20
catchall [1]   39/17
categories [2]
52/12 53/8
category [2]   41/1
73/1
caught [2]   44/22
47/14
cause [1]   23/21
caused [3]   56/10
66/25 81/6
causes [2]   23/21
43/15
causing [4]   24/19
35/5 35/10 42/19
caution [1]   51/14
CCTV [1]   6/11

cease [1]   27/6
ceased [2]   63/25
64/1
celebratory [1]
31/17
cell [1]   22/3
certain [2]   24/24
74/23
certainly [9]   19/19
23/13 27/7 27/8
27/15 49/4 50/7
54/20 59/19
certification [17]
17/5 18/7 20/8
20/22 21/1 21/7
21/11 25/8 27/2
28/6 29/12 32/5
36/16 40/11 41/12
46/2 76/4
certify [4]   17/21
18/25 20/16 84/4
change [4]   6/22
69/17 81/6 82/1
changing [1]   82/4
chanted [1]   47/6
characterization [1]
9/20
characterized [1]
24/24
charge [3]   80/1
80/2 83/14
charged [1]   8/24
charges [1]   61/20
check [1]   3/15
Chief [1]   52/21
choice [1]   45/7
choices [1]   58/20
chose [4]   22/13
33/11 45/7 49/18
chosen [2]   34/16
47/3
circuit [1]   83/10
circumstance [3]
23/14 35/20 56/3
circumstances [7]
7/17 10/8 25/25
26/15 37/6 64/18
67/22
citadel [2]   67/24
76/1
cite [2]   34/7 34/7
cited [5]   18/12
33/24 33/25 34/2
40/9
clarify [1]   5/7
82/23
class [1]   31/10
clause [2]   15/1
15/8
clear [9]   4/23 5/13
7/25 8/7 16/18
21/11 31/22 50/5
58/22
cleared [1]   20/25
clearing [1]   47/11
clearly [19]   8/21
8/24 11/14 11/15
15/14 17/5 21/12
23/7 24/8 24/9 26/8
34/3 36/11 37/4

62/9 73/2 73/6 75/9
76/12
clerk [1]   80/9
close [3]   53/15
59/9 63/19
co [3]   15/22 48/9
58/24
co-defendant [2]
48/9 58/24
co-defendants [1]
15/22
coat [16]   9/3 9/24
10/4 16/10 22/20
48/8 49/24 51/7
51/8 58/18 68/7
68/8 68/12 68/13
74/1 74/4
Code [1]   33/1
coherent [1]   16/17
cohorts [1]   70/16
coin [1]   21/17
colleagues [2]
10/17 10/18
college [3]   66/22
66/22 68/18
COLUMBIA [2]   1/1
83/10
Columbus [4]   63/19
67/1 73/21 82/12
combination [1]
68/22
comfortable [1]
75/15
coming [2]   22/12
23/5
commentary [3]   7/25
14/6 17/23
commentators [1]
33/19
comments [1]   27/14
commission [3]
23/24 24/4 55/13
commit [3]   8/24
78/23 79/1
committed [1]   73/11
Committee [2]   55/4
57/21
common [1]   22/10
community [3]   57/14
57/18 81/19
comparable [1]
61/16
compared [4]   54/15
59/2 61/9 61/19
comparing [1]   29/18
complete [1]   57/4
completely [2]
25/21 57/22
comply [1]   78/24
comport [1]   5/1
comports [1]   28/1
comprehension [1]
66/21
computer [1]   25/2
conceded [1]   19/21
conceivably [2]
64/22 75/14
concerned [5]   28/8
67/6 75/11 78/11
82/5

**C**

conclude [17]   11/12
11/18 17/18 17/20
20/2 22/19 22/22
37/7 38/6 38/15
43/4 43/10 43/18
64/23 76/12 76/19
81/4
concluded [4]   5/22
38/14 74/23 76/20
concludes [2]   28/3
37/14
concurrent [1]
78/10
conditions [3]
78/22 78/24 81/15
conduct [59]   7/12
8/22 9/16 11/15
13/3 14/10 15/8
15/23 15/24 16/2
16/9 16/25 17/2
18/6 20/7 20/20
21/10 22/7 22/14
23/3 23/19 24/2
25/23 28/9 30/19
31/9 31/19 32/25
33/13 33/15 37/7
43/13 44/5 44/10
44/17 44/19 44/24
47/5 47/17 49/4
50/8 50/11 51/12
52/6 53/18 54/18
54/24 55/14 59/2
59/2 60/21 63/10
63/10 65/21 70/6
75/16 76/16 76/25
77/22
confidence [2]   48/5
52/2
confident [2]   64/17
64/19
confrontation [1]
56/21
confrontational [2]
62/13 62/16
confronted [5]
10/17 49/11 49/12
51/9 74/5
confronting [1]
63/3
Congress [18]   16/11
17/3 17/21 18/2
18/23 19/7 19/12
19/19 19/24 21/14
23/14 24/10 27/5
27/16 32/17 38/2
43/11 45/23
Congress' [2]   20/3
20/16
congressional [6]
16/23 16/24 16/25
21/10 40/11 41/12
connects [1]   50/15
conscious [1]   45/7
consequences [1]
72/14
consider [5]   22/23
22/23 35/7 56/1
72/19

consideration [3]
34/25 35/23 38/20
considered [2]
25/15 33/8
consistent [9]   8/21
9/6 10/24 26/13
38/6 38/7 38/14
48/6 75/12
conspiracy [5]
55/10 56/19 56/24
56/25 64/11
constantly [1]   8/13
constitute [2]
15/16 22/9
constitutes [2]
10/20 33/14
constituting [1]
33/25
Constitution [2]
1/24 18/24
constitutional [4]
19/8 20/4 37/10
43/12
constitutionally [1]
38/1
construe [2]   15/12
16/9
construed [7]   17/17
24/14 25/13 27/14
35/24 37/4 41/5
contact [1]   82/13
contained [1]   8/19
contemplated [3]
12/22 13/16 61/6
contents [1]   22/3
context [13]   16/8
16/16 19/1 19/10
22/24 34/1 39/21
40/16 41/5 42/24
43/14 54/15 60/22
37/18
continue [4]   24/14
37/5 52/3 57/5
continued [1]   45/11
continues [1]   51/25
contribute [1]
74/16
contributed [5]
18/22 19/6 27/4
27/4 75/24
contributing [1]
68/19
contrition [1]   8/4
control [3]   17/2
17/12 19/5
convicted [6]   32/11
42/16 45/22 46/14
52/19 79/24
conviction [5]   8/3
33/3 42/21 77/7
83/9
convictions [1]
52/10
convince [1]   68/12
convinced [4]   48/17
48/25 49/7 60/2
cops [3]   68/14 74/5
75/21
core [1]   19/16

corroborates [1]
48/11
cost [1]   79/19
counsel [23]   4/2
4/18 5/18 5/22 5/22
7/4 7/7 7/18 9/22
12/1 15/8 18/20
21/20 22/17 32/7
32/9 32/20 40/14
43/24 44/1 50/20
50/22 54/12
counseling [2]
50/22 66/6
counselor [1]   81/4
count [6]   78/5
78/15 79/24 82/24
82/24 83/2
country [15]   43/9
53/22 54/6 67/24
69/11 69/12 70/8
70/18 70/19 70/23
70/24 72/11 74/15
74/16 76/1
counts [10]   2/16
78/7 78/8 78/9
78/16 78/18 79/25
80/2 83/3 83/6
County [2]   4/16
4/17
couple [3]   4/21
23/10 77/7
coupled [1]   75/8
course [7]   9/14
9/25 25/25 34/6
49/14 49/24 52/1
court [51]   1/1 1/22
1/23 4/9 15/2 15/9
15/10 15/11 15/12
15/21 19/13 21/8
21/19 21/23 31/11
34/13 34/15 35/24
38/9 39/14 39/18
40/3 40/16 41/3
41/21 43/6 44/2
49/20 49/23 50/19
51/4 55/12 55/19
56/1 56/3 57/8 58/6
59/10 63/14 63/15
69/23 76/8 79/20
80/6 80/9 82/24
83/3 83/10 83/12
83/13 84/3
Court's [1]   29/22
courtroom [1]   68/9
Courts [1]   1/23
cover [2]   13/13
23/12
covered [7]   13/16
14/1 24/1 24/2
24/18 32/11 39/11
covers [2]   13/25
14/8
cr [1]   1/4
craziness [1]   67/16
create [3]   54/15
69/8 80/19
created [1]   67/22
credibility [1]
45/1
credit [4]   51/14

65/11 78/6 78/12
crime [3]   70/14
70/16 73/11
crimes [3]   8/24
28/10 79/2
criminal [10]   1/3
2/2 17/16 32/1 50/8
61/14 61/16 61/16
77/8 79/12
criminal-related [1]
17/16
cross [7]   29/1 29/9
29/25 32/7 33/11
42/17 45/5
cross-examination [2]
29/25 45/5
cross-reference [4]
29/1 29/9 32/7
33/11
cross-referenced [1]
42/17
crowd [5]   44/21
47/18 47/21 58/9
58/10
crowd's [1]   47/24
crypt [1]   62/4
culpability [6]
9/16 11/15 25/19
61/9 61/11 73/3
current [1]   63/21
currently [1]   63/23
custody [1]   51/15
cut [1]   12/24
cuts [1]   42/5
cutting [1]   46/15
cycle [1]   55/11

**D**

D.C [2]   67/7 74/9
daily [1]   57/14
damage [15]   12/15
12/17 12/19 12/21
12/25 18/16 21/16
23/22 24/11 24/19
31/13 31/16 36/21
36/24 79/16
damaged [1]   21/5
danger [1]   45/17
dangerous [1]   52/14
date [3]   52/20 83/8
84/10
day [26]   19/15
19/17 22/10 22/25
44/4 44/11 44/12
45/6 46/2 47/17
47/25 49/22 50/2
50/5 50/18 56/5
59/17 60/7 60/14
63/13 65/21 66/1
66/10 68/23 72/12
74/20
days [8]   48/24
55/17 55/18 59/5
61/11 79/5 81/16
83/8
DC [2]   1/5 1/25
deal [3]   15/1 36/5
43/20
dealing [1]   29/10
debate [1]   41/9

**D**

decided [5]  40/3
62/5 63/11 80/24
81/1
deciding [1]  70/11
decision [6]  46/7
58/11 58/12 58/13
58/14 58/17
decisions [1]  55/17
deducted [1]  80/5
deeply [1]  65/21
defeat [1]  70/21
defendant [19]  1/7
1/18 2/15 2/25 2/25
3/1 5/15 7/25 8/10
8/14 8/18 23/1
24/11 32/11 36/20
45/22 48/9 50/1
58/24
defendant's [5]
2/21 2/22 2/24 4/3
44/5
defendants [8]
15/22 52/5 52/17
52/24 53/9 53/17
53/21 57/7
defender [1]  50/2
defending [1]  50/5
defense [18]  3/7
3/10 3/14 4/2 7/16
7/17 8/9 18/20
21/20 22/17 32/7
32/9 32/19 44/18
46/10 49/17 56/2
56/8
defense's [1]  50/16
definition [6]  34/8
34/14 35/22 40/10
40/17 41/25
definitions [4]
13/9 28/2 33/23
35/13
degree [3]  35/2
66/23 71/23
delay [1]  16/5
demagogue [1]  69/4
democracy [3]  70/9
72/13 77/23
demonstrated [1]
22/11
demonstrates [1]
17/10
denying [1]  51/9
depart [1]  25/12
department [8]
38/16 55/13 78/21
79/6 80/12 80/21
81/25 82/3
department's [1]
79/8
described [3]  48/16
52/22 53/7
describes [8]  12/3
12/18 23/11 23/12
38/23 39/10 39/17
40/21
description [3]
39/15 44/24 54/23
designated [1]

63/18
designed [7]  13/13
19/1 19/11 20/15
21/12 21/13 23/12
desire [2]  36/11
59/14
desk [1]  22/4
despite [3]  9/18
11/16 72/7
destroy [3]  24/9
25/4 70/20
destroyed [2]  20/22
27/13
destroying [1]
74/16
destruction [17]
13/3 13/7 22/8
24/23 25/17 26/3
26/6 26/8 26/11
26/12 27/10 27/17
35/5 35/9 75/17
75/25 76/3
destructive [1]
37/2
detail [1]  44/5
detailed [1]  54/3
detained [2]  80/4
82/10
detention [1]  82/14
deter [1]  77/1
determination [5]
12/5 33/13 39/13
41/1 79/8
determine [1]  28/5
determined [2]
35/25 82/20
determining [1]
34/25
deterred [3]  52/7
55/14 71/7
Diane [2]  3/2 66/6
dictatorship [1]
70/24
dictionary [3]
33/22 33/24 35/17
died [1]  67/20
difference [3]  6/17
59/12 63/9
different [11]  8/10
9/13 13/9 23/17
35/19 39/10 55/9
58/5 73/1 73/9 74/7
differentiates [1]
49/5
difficult [6]  20/19
23/6 55/12 68/24
72/25 74/21
difficulty [1]  9/23
directing [1]  31/20
dis [2]  77/12 77/18
dis-information [1]
77/18
disarray [2]  35/5
35/10
disassociate [1]
36/25
disavow [1]  56/23
discards [1]  22/4
discuss [2]  12/10
36/4

discussed [2]  6/12
31/1
discussing [1]
54/16
discussion [3]
12/10 54/9 54/25
disgraceful [1]
54/5
disobeying [1]  63/4
dispute [1]  11/6
disputed [1]  20/24
disputes [2]  8/12
8/13
disputing [2]  8/1
51/7
disregarded [1]
49/12
disrespect [1]
49/19
disruptive [1]  70/7
disseminated [1]
80/10
dissimilar [2]
54/17 54/18
distinct [1]  34/17
distinction [2]
27/19 59/3
distinctions [2]
26/1 59/19
DISTRICT [5]  1/1
1/1 1/10 1/23 83/9
DNA [1]  79/11
docket [1]  18/12
documents [1]  23/17
DOJ [2]  1/13 1/15
DOJ-USAO [2]  1/13
1/15
Donald [1]  58/21
done [17]  3/17
18/23 26/9 35/8
36/24 44/19 47/3
47/8 50/7 55/22
56/1 57/11 58/10
75/20 76/23 79/16
81/17
door [1]  47/11
doors [7]  47/18
47/19 47/22 47/23
51/10 62/18 62/19
doubts [1]  45/1
dovetail [1]  10/14
down [12]  36/15
45/11 60/3 64/11
66/17 67/13 70/19
70/23 73/19 73/22
75/19 75/22
dozen [1]  30/6
drafters [2]  33/8
33/11
draw [1]  28/16
DREHER [2]  1/12 2/7
drinking [2]  64/12
68/20
drive [1]  66/25
driving [2]  48/22
73/21
drop [1]  9/12
dropped [1]  9/12
drove [3]  60/1 60/3
60/3

drug [6]  54/20
63/24 77/6 80/23
80/24 82/9
drugs [4]  8/11
77/11 79/7 82/8
due [2]  28/2 35/14
dumped [1]  25/5
during [12]  5/20
6/19 9/14 46/2
50/23 55/10 55/19
55/22 57/24 59/16
69/18 82/13
DUSTIN [4]  1/6 2/3
45/18 45/19

**E**

earlier [2]  23/11
29/23
early [1]  53/3
easier [1]  4/9
easily [1]  52/6
easy [2]  36/7 41/21
educated [2]  68/18
69/2
effect [2]  18/7
33/12
effectively [3]
21/6 31/17 48/10
effects [1]  20/22
efforts [3]  51/22
51/25 58/3
egregious [2]  44/9
49/23
eight [8]  12/9
13/12 21/18 22/15
40/4 52/25 56/14
60/20
eight-level [4]
12/9 13/12 21/18
22/15
eight-point [1]
40/4
either [4]  6/13
22/14 31/24 31/24
elaborate [1]  7/5
election [10]  17/22
18/25 20/16 36/14
36/17 38/3 55/10
67/8 72/1 76/5
element [1]  8/2
elements [1]  42/17
eloquently [1]
72/20
else [6]  3/4 15/4
22/11 46/19 49/7
82/15
else's [1]  45/2
encompass [2]  28/9
42/3
encompasses [1]
40/11
encompassing [1]
16/7
encourage [2]  24/23
35/9
encouraged [3]
59/24 74/8 75/16
encouragement [2]
21/24 31/19
encouraging [4]

**E**

encouraging... [4]
24/13 26/19 31/25
37/4
end [3]   53/13 54/3
65/9
enforcement [6]   9/4
26/24 49/9 49/12
52/15 63/3
engage [12]   13/3
28/10 37/22 38/2
42/7 52/18 55/2
69/1 69/3 70/6 74/2
79/12
engaged [7]   15/23
21/9 24/15 26/19
37/18 72/24 75/16
engages [1]   43/13
engaging [3]   22/8
25/11 77/22
enhancement [30]
10/15 11/2 11/12
11/19 11/19 12/9
13/13 17/18 22/15
26/16 29/7 32/9
32/14 32/19 32/23
36/3 37/8 37/17
37/23 39/6 40/4
40/7 42/13 42/25
43/4 43/17 49/4
53/1 76/2 76/5
enhancements [9]
4/4 38/7 38/14
64/21 65/1 65/10
75/11 75/14 76/11
enough [3]   66/16
77/14 77/16
entails [1]   37/14
enter [2]   9/23
26/10
entered [7]   7/7
7/18 11/17 19/9
37/1 61/24 62/19
entering [1]   23/3
enters [1]   36/23
entire [4]   13/11
13/13 13/16 24/1
entirety [1]   24/2
entitled [8]   7/2
64/17 75/5 75/9
76/13 78/6 78/12
84/5
entrance [2]   47/25
48/4
entry [7]   26/12
27/4 31/15 36/19
36/20 36/21 36/22
entryway [1]   26/9
envisioned [3]
36/10 37/20 43/9
equivocation [2]
57/20 57/23
error [1]   51/16
errors [1]   51/13
especially [1]
77/21
essence [3]   12/20
14/23 29/15
essential [1]   19/17

establishes [1]
31/5
evaluated [2]   80/23
81/7
evaluation [3]   3/1
3/17 61/8
even [28]   8/5 11/5
16/3 16/5 20/24
21/6 41/17 44/25
45/1 48/1 48/19
50/10 52/25 54/23
55/10 58/15 67/3
67/7 67/17 67/24
71/11 72/7 73/15
74/8 76/18 76/22
77/3 81/10
event [5]   4/15
11/14 15/18 17/9
26/7
events [4]   2/17
4/16 23/1 54/5
everybody [6]   19/9
36/14 67/3 72/25
73/5 75/18
everyone [2]   65/19
65/20
evidence [16]   5/21
6/18 8/25 9/6 12/25
25/3 26/8 31/4
33/18 36/19 36/22
37/1 40/20 45/25
48/17 73/6
exactly [2]   50/19
81/25
examination [2]
29/25 45/5
example [6]   8/11
20/23 31/6 32/24
33/1 34/5
examples [4]   15/15
16/7 32/22 41/25
excessive [1]   53/20
excuse [3]   50/11
66/1 68/22
exhaustive [1]
41/24
Exhibit [1]   30/4
Exhibit 1 [1]   30/4
existence [1]   70/18
expand [1]   39/23
expected [1]   59/4
expenditure [11]
34/12 34/17 39/14
39/18 41/2 41/20
42/2 42/9 42/19
42/23 43/16
expenses [1]   83/13
experience [2]   66/4
71/6
explain [2]   13/11
50/11
explained [1]   32/16
explains [1]   12/18
express [4]   12/19
27/11 27/18 27/20
expresses [1]   8/4
extent [5]   6/22
25/15 33/4 35/5
35/8
extraordinarily [1]

53/20

**F**

face [1]   81/14
facilitated [2]
13/2 55/6
facility [1]   63/18
fact [39]   5/24 6/10
7/9 7/14 7/17 10/24
11/16 18/6 18/14
18/17 18/23 19/3
19/6 19/11 20/2
20/15 22/11 23/7
24/7 25/11 26/25
28/8 34/1 37/7 38/5
38/8 38/15 41/16
42/9 43/4 44/9
44/13 45/24 47/9
47/9 53/20 62/24
63/1 63/2
factor [4]   48/13
61/8 73/8 73/24
factors [8]   31/12
53/6 59/7 62/1
68/19 68/19 68/23
74/7
facts [3]   8/6 9/13
44/3
factual [7]   8/1 8/9
8/13 8/16 9/17
18/13 67/7
factually [1]   21/11
fairly [1]   45/10
fall [2]   13/7 13/8
fall under [1]   13/7
false [3]   8/16
49/20 71/20
falsehood [1]   36/13
familiar [2]   44/3
50/19
family [2]   66/11
82/13
far [10]   27/5 28/8
53/25 54/1 55/1
63/20 67/6 75/11
78/10 82/5
fashion [1]   34/7
father [1]   53/4
favor [1]   46/15
fed [1]   36/14
federal [2]   53/19
79/2
feel [2]   75/14
felony [5]   12/3
34/11 39/12 40/22
61/5
felt [1]   81/2
few [4]   46/18 48/24
52/11 60/9
fewer [1]   54/1
fifth [1]   49/14
filed [4]   3/11
52/11 54/2 83/12
filing [1]   58/2
final [2]   3/25
41/13
financial [4]   80/6
80/8 80/11 80/20
find [7]   9/18 12/11
22/5 25/1 31/20

45/2 69/11
fine [5]   6/20 67/10
67/10 67/14 79/21
finish [1]   25/8
first [26]   3/14
3/22 4/11 4/14 12/8
12/9 12/23 14/14
14/16 22/12 23/4
27/24 31/16 36/5
40/21 41/9 45/22
48/22 54/14 56/9
59/25 61/24 63/1
65/4 67/4 74/9
fit [2]   35/20 72/25
fits [1]   35/1
five [8]   2/24 53/11
53/13 53/21 53/24
78/8 78/18 80/2
five-year [1]   53/21
fled [2]   49/9 49/13
flip [1]   35/17
flipping [1]   35/16
floor [3]   1/18 22/1
30/10
floors [1]   16/22
focus [2]   44/6
53/17
focused [2]   7/8
7/14
focuses [1]   64/8
folk [1]   72/14
folks [1]   47/5
followed [1]   44/21
following [1]   2/15
fools [1]   68/11
For the Defendant [1]
1/18
force [5]   17/2 17/8
21/15 28/4 48/22
forced [1]   58/20
foregoing [1]   84/4
form [1]   2/19
forms [2]   14/9
23/13
forth [1]   34/24
fortunately [1]
69/7
forward [5]   2/4
26/15 55/5 66/10
73/10
fostering [1]   55/9
found [7]   2/16 5/4
5/14 8/11 8/17 25/3
77/9
four [11]   32/24
44/4 53/9 53/11
78/7 78/16 80/1
82/25 83/3 83/4
83/6
four-day [1]   44/4
Fourth [1]   49/9
frame [1]   54/9
Franklin [2]   4/16
4/17
frankly [2]   50/3
51/17
free [1]   83/14
freedom [2]   70/4
70/5
friend [1]   47/18

**F**

front [1]   47/18
full [2]   48/5 66/3
fully [1]   4/5
function [1]   28/14
funds [2]   43/16
80/9
furniture [1]   30/8
further [7]   22/17
35/9 62/10 62/13
79/1 79/12 80/19
future [1]   71/17

**G**

gain [4]   16/19
26/12 36/18 36/22
game [1]   70/1
gave [2]   8/15 53/1
general [1]   28/15
generally [3]   23/10
54/17 57/15
gently [1]   19/19
Germany [2]   69/2
69/4
gets [3]   28/17
59/11 62/25
gift [1]   70/4
given [1]   72/23
gives [2]   48/8 67/5
glaring [1]   9/2
gleeful [2]   68/2
74/18
God [1]   66/11
goes [6]   16/12
27/12 36/23 58/2
62/17 72/21
good [13]   2/6 2/8
2/9 2/11 2/12 2/14
65/18 66/17 66/23
76/23 77/16 77/20
83/19
goods [1]   47/15
government [51]
1/12 2/5 3/23 6/2
6/13 6/21 7/8 7/22
8/1 10/9 10/21 15/8
15/17 15/19 17/6
19/16 22/18 24/21
24/24 28/7 29/20
37/3 37/16 39/14
39/18 40/1 41/10
42/10 42/19 42/22
43/3 44/1 44/25
45/23 46/14 48/4
51/21 51/23 52/2
52/11 53/7 59/6
61/2 62/7 62/17
66/3 75/1 76/21
79/17 82/21 83/14
government's [23]
2/20 2/23 8/15 13/1
13/6 16/2 16/15
34/13 35/6 38/6
38/16 44/7 47/25
48/16 49/19 52/1
54/14 60/24 61/8
61/10 62/1 75/13
79/14
governmental [9]

34/13 34/17 41/2
41/21 42/3 42/24
43/16 45/24 77/23
graduate [2]   66/17
77/17
grand [2]   36/1
53/19
greater [3]   19/5
59/18 73/4
greatest [2]   70/3
74/15
greatly [1]   56/7
group [8]   19/4
20/21 24/12 24/13
26/1 37/9 38/3
75/24
guess [21]   4/3 5/17
6/17 11/3 13/1
19/25 27/22 30/18
32/6 35/11 35/16
41/8 54/14 54/15
55/9 58/6 67/11
68/8 68/18 68/23
82/6
guidance [1]   76/9
guideline [15]   28/8
28/21 32/10 32/12
37/23 43/15 54/21
61/6 65/2 65/13
76/14 76/19 76/20
76/22 76/24
guidelines [27]   7/1
7/24 10/25 13/15
13/19 14/24 17/23
25/19 28/18 29/19
32/21 33/5 33/8
33/12 33/19 36/8
37/21 49/3 49/3
53/2 54/18 54/21
54/23 75/4 77/3
77/25 78/1
guilty [8]   2/16
9/18 59/11 60/10
60/17 60/21 69/23
73/12
gullible [1]   77/14

**H**

half [1]   4/12
hallway [1]   47/12
hallways [2]   47/7
47/7
handed [1]   52/9
handle [1]   79/20
happen [6]   55/5
68/17 69/2 71/1
71/17 73/14
happened [6]   5/14
15/17 71/19 72/9
72/11 73/14
happening [3]   36/10
44/20 74/17
happy [2]   68/2
74/17
hard [8]   8/19 16/16
22/21 31/18 33/15
69/16 70/3 73/1
head [1]   56/4
health [2]   81/2
81/5

hear [7]   4/9 6/8
10/23 18/20 43/24
67/11 75/1
heard [3]   51/5
57/24 82/24
hearing [2]   77/12
81/16
heart [1]   69/17
held [4]   55/1 55/8
55/11 56/19
helped [1]   56/18
helpful [1]   50/12
helping [1]   57/17
here's [2]   25/4
46/15
heroic [1]   50/12
hey [2]   72/6 74/5
hi [1]   46/20
hiding [2]   16/1
17/3
highlight [1]   29/23
himself [5]   3/1
24/11 27/16 36/25
45/16
hindsight [1]   9/12
histories [1]   61/16
history [5]   54/6
61/14 61/17 77/8
77/9
Hitler [1]   69/10
hold [2]   14/2 56/25
holding [1]   47/15
hole [2]   64/12
66/18
home [1]   53/24
Honor [43]   2/6 2/9
2/12 3/6 3/8 3/16
3/25 4/3 4/10 5/12
6/3 6/24 7/6 7/23
9/21 10/5 10/14
13/18 14/20 20/11
20/18 23/9 29/21
34/21 34/22 35/6
36/6 39/8 39/9 40/2
43/21 54/13 54/13
63/8 63/19 65/12
65/14 65/18 68/23
82/16 83/16 83/18
83/20
Honor's [2]   11/23
24/16
HONORABLE [1]   1/9
HOOK [3]   1/22 84/3
84/10
hope [5]   51/24 52/1
58/7 71/6 71/23
hopefully [2]   43/5
81/6
hopes [2]   51/21
51/23
host [1]   9/13
hour [3]   47/20 48/1
62/1
hours [1]   38/5
house [5]   9/8 15/23
15/24 15/25 16/1
Howell [1]   52/21
Huh [1]   15/6
Huh-uh [1]   15/6
human [1]   70/4

hundreds [1]   56/14
husband [1]   66/8
hyperbole [1]   55/2
hypothetical [1]
15/20

**I**

i.e [2]   26/7 27/2
idea [3]   48/2 48/11
60/14
identify [3]   2/4
28/10 79/11
identifying [1]
28/21
illegal [5]   24/14
27/2 46/24 61/18
79/3
illness [1]   56/10
illustrative [1]
15/15
immediately [3]
39/25 52/5 82/2
impacted [1]   56/7
impede [1]   38/4
importance [1]   64/5
important [24]
13/10 24/22 29/9
32/19 34/25 35/3
35/7 35/13 35/21
39/20 44/10 44/13
44/16 46/1 55/16
55/25 57/11 59/1
59/25 60/12 60/22
61/23 71/10 72/2
importantly [2]
49/16 60/11
impose [3]   79/17
79/20 82/24
improper [1]   40/22
improperly [1]
39/23
incarcerated [3]
55/20 64/2 64/7
incarceration [3]
51/24 74/24 82/5
incidents [1]   42/4
inciting [1]   25/13
inclined [2]   22/19
63/14
include [6]   34/2
34/4 34/16 39/11
41/11 63/15
included [1]   62/7
65/5
includes [3]   32/5
34/10 42/1
including [4]   2/25
13/14 13/25 14/9
inconsistent [2]
8/25 41/15
incorrect [1]   5/6
increase [1]   21/18
increased [1]   64/12
incredible [1]   51/2
indeed [2]   33/9
45/2
indicate [7]   4/19
6/17 20/14 37/1
41/7 48/21 52/4
indicated [4]   9/18

**I**

indicated... [3]
26/8 36/20 50/22
indicates [4]   5/2
23/7 33/6 37/17
indicating [1]   9/15
indication [4]   47/2
47/4 48/1 82/6
indications [1]
47/8
indictment [5]   12/4
39/12 40/25 78/5
78/16
individual [4]   17/8
19/21 21/9 23/20
individuals [13]
16/21 19/15 19/20
25/14 36/12 37/21
46/1 46/13 46/16
49/11 54/3 60/20
69/22
indulgence [1]
29/22
influence [2]   19/24
58/21
influence Congress [1]
19/24
influences [1]
50/24
information [7]
11/13 77/18 80/11
80/15 80/18 80/19
82/20
initially [2]   61/24
74/7
initiation [1]
40/24
injured [1]   50/4
injury [1]   23/21
inside [26]   15/24
16/21 19/15 19/18
23/2 29/25 30/24
31/15 44/12 44/15
45/8 45/9 46/11
46/18 47/14 47/19
48/3 48/13 48/18
48/20 50/1 51/10
52/18 61/25 62/5
62/6
insofar [1]   16/4
inspires [1]   67/12
inspiring [2]   24/14
68/3
instead [4]   24/19
34/4 44/6 46/7
instruction [3]
7/10 7/11 10/14
instructions [2]
49/13 63/4
insult [1]   50/3
insurrection [1]
66/2
integrity [2]   70/18
77/23
intelligent [2]
69/2 77/16
intended [5]   8/5
10/7 10/24 17/24
83/1

intending [1]   9/11
intent [11]   7/15
9/1 16/10 17/24
18/1 19/9 23/7 24/8
26/7 47/2 57/23
interested [1]
48/23
interesting [1]
57/15
interfere [2]   29/14
33/16
interference [12]
12/1 33/25 34/4
34/9 34/15 36/3
38/22 39/5 40/8
40/18 41/23 42/7
interfering [1]
29/5
interpret [3]   31/18
41/17 41/22
interpretation [2]
28/1 33/20
interpreted [1]
40/13
interpretive [1]
33/18
intervention [2]
81/5 81/8
intimately [1]   44/2
intimidate [7]
12/19 17/2 17/8
18/2 21/13 27/11
27/18
intimidation [3]
16/14 17/25 19/14
into [31]   7/8 7/18
9/23 11/17 26/9
27/12 30/3 31/7
35/3 35/23 36/19
36/23 38/19 48/10
52/12 55/7 56/9
58/6 58/14 58/17
59/21 61/8 62/10
68/1 69/5 70/11
72/25 73/8 73/24
74/11 81/19
intricate [1]   54/3
invaded [1]   17/13
invalid [1]   25/21
investigation [8]
2/19 3/24 34/11
39/12 40/22 40/23
41/18 82/19
investigations [2]
34/4 34/5
involve [2]   28/3
42/7
involved [6]   60/18
61/24 62/3 62/10
63/1 75/19
involvement [1]
13/2
involves [2]   61/17
61/20
involving [2]   45/17
52/13
isolation [1]   68/20
issue [18]   4/15 7/1
7/9 7/14 7/15 7/19
8/16 8/20 10/18

11/11 11/21 12/17
20/24 38/8 38/13
40/3 49/21 64/23
issued [1]   52/21
issues [2]   54/20
64/4

**J**

January [29]   2/18
15/17 16/16 18/3
42/4 43/10 45/3
45/20 48/22 49/10
50/23 50/25 51/17
51/18 52/9 53/18
54/7 55/3 55/18
55/18 57/20 57/21
64/10 65/20 71/15
71/19 72/4 72/9
81/7
Jason [1]   60/10
JEFF [3]   1/22 84/3
84/10
JENNIFER [2]   1/15
2/7
Jesus [1]   69/20
job [3]   24/10 76/23
77/10
join [1]   48/18
joined [1]   35/7
joining [1]   22/9
jointly [1]   32/1
JUDGE [14]   1/10
10/18 11/24 27/24
28/1 28/16 35/12
35/21 37/13 38/11
41/9 52/21 52/24
65/22
judges [1]   38/12
judgment [2]   33/13
63/16
judicial [32]   10/22
10/22 12/4 28/4
28/4 28/9 28/12
29/5 29/11 29/11
34/3 34/12 34/15
36/1 37/15 37/19
37/19 37/22 39/13
39/16 39/24 39/24
40/16 40/24 40/25
41/7 41/13 41/14
41/19 41/19 42/8
42/25
judicial-related [3]
10/22 28/9 37/19
judicially [1]
37/15
judicially-related [1]
37/15
Judiciary [1]   28/14
jumps [1]   56/9
jurisdiction [2]
81/10 81/13
jury [7]   7/9 9/17
36/1 49/20 50/21
51/12 68/11
justice [36]   12/2
12/16 12/17 15/16
15/19 16/3 27/23
27/25 28/2 28/3
32/5 32/23 32/25

33/7 33/9 33/11
33/15 33/15 33/17
33/21 34/1 34/9
35/14 35/15 37/13
38/22 39/5 40/6
40/8 40/9 40/18
41/11 41/24 42/18
42/22 55/13
justification [1]
66/1
justify [3]   37/7
43/17 54/19

**K**

keep [3]   53/17
68/13 81/18
key [2]   8/16 49/21
kids [1]   53/24
kind [4]   16/2 21/9
21/15 40/24
kinds [2]   8/12
54/10
knew [3]   37/5 49/20
50/13
knock [1]   25/4
knocked [2]   16/23
30/8
knocking [1]   17/11
knowing [2]   17/13
45/12
knows [1]   5/14

**L**

lack [4]   11/3 11/8
26/3 57/24
laid [3]   64/9 64/9
68/20
language [6]   13/24
23/22 28/21 41/6
41/6 71/20
laptop [2]   22/5
22/5
large [2]   19/4 27/1
last [8]   32/6 39/21
44/22 54/14 57/25
58/1 58/7 60/9
lasted [1]   50/25
lasting [1]   45/7
later [3]   21/6
47/17 62/15
law [9]   9/4 26/24
33/24 35/17 49/9
49/11 52/15 63/3
79/10
lawyer [6]   72/20
76/10 76/23 77/3
78/25 83/11
lead [1]   42/20
leader [1]   49/2
leadership [1]   55/1
leading [2]   55/18
55/18
learned [2]   50/17
66/5
least [11]   8/15
19/7 19/16 22/9
27/5 30/5 50/6
50/20 53/9 79/5
80/7
leave [5]   47/10

**L**

leave... [4]   56/23
58/19 62/23 63/4
leaves [3]   48/8
62/14 62/23
leaving [2]   22/13
23/4
led [2]   48/13 68/23
left [7]   46/6 47/20
48/1 58/13 62/14
62/16 62/20
legal [2]   28/5
35/19
legislative [1]
18/24
legislature [1]
33/23
legitimacy [2]   75/1
75/3
legitimate [1]
37/10
lengthier [2]   61/20
63/15
lenient [1]   72/20
less [3]   53/13
53/25 78/2
lesson [1]   50/17
letter [2]   3/1 3/16
letters [8]   2/24
3/9 3/10 3/11 3/13
45/14 54/1 57/13
level [18]   7/3 7/20
11/2 12/9 13/12
21/18 22/15 32/8
32/13 32/18 32/23
39/6 40/6 65/7
65/13 73/2 75/6
75/10
liability [1]   31/23
lie [12]   50/13 56/5
57/10 66/25 67/9
68/9 68/10 69/13
71/25 77/14 77/14
77/20
lied [1]   73/11
light [1]   51/13
lighter [1]   69/25
likely [1]   47/14
limit [1]   38/20
limitation [1]
10/24
limited [4]   19/6
34/3 34/14 41/13
limiting [1]   7/10
line [6]   26/17
28/15 60/19 60/25
62/4 63/4
lines [2]   4/22 25/6
linguistically [1]
33/16
linkage [2]   20/19
21/10
liquor [7]   5/16
6/14 16/10 22/20
68/6 68/21 74/1
list [5]   15/15 16/6
16/7 41/17 60/8
listed [2]   13/17
16/6

lists [3]   14/1
14/10 40/25
little [2]   16/12
54/8
live [3]   81/22
81/23 81/24
lives [1]   67/23
living [2]   81/21
81/23
local [1]   79/2
location [2]   81/24
82/12
locked [1]   69/21
long [4]   4/23 25/23
25/24 45/10
longer [2]   47/14
81/2
look [13]   13/10
25/22 28/23 28/25
31/12 35/13 35/18
54/10 56/3 56/6
58/24 66/10 74/5
looked [3]   5/1
35/13 35/22
looking [5]   13/19
22/2 27/24 35/19
60/8
looks [1]   28/1
looted [3]   19/21
30/20 46/4
loses [1]   8/3
losing [1]   67/23
loss [1]   17/12
lost [1]   77/10
lot [12]   7/15 35/15
35/18 56/6 66/5
66/23 69/6 70/10
71/22 73/9 75/3
75/15
love [3]   65/25
74/19 74/20
low [2]   53/13 65/9
lower [2]   60/23
63/7
luck [1]   83/19
ludicrous [1]   67/4
Lyon [18]   48/9
48/17 48/18 48/19
58/24 59/11 59/13
59/19 59/21 59/23
59/24 60/1 60/3
63/10 73/2 73/10
73/10 74/7
Lyon's [1]   59/2
Lyons [1]   48/23

**M**

magnitude [1]   60/6
maintain [4]   72/13
81/10 81/12 82/13
major [1]   50/15
majority [2]   38/12
69/6
makes [3]   4/9 68/24
74/20
making [2]   49/20
58/3
man [1]   66/8
managed [1]   55/7
mandate [2]   19/8

43/12
mandated [1]   38/1
manner [1]   28/22
mantle [1]   50/2
manual [2]   13/19
14/13
many [8]   8/2 44/14
44/14 45/15 48/15
54/22 56/14 74/6
March [1]   64/10
marijuana [2]   61/19
62/5
mask [1]   4/8
material [2]   11/7
11/10
matter [2]   38/18
84/5
matter's [1]   2/14
mattered [1]   10/3
matters [2]   3/21
6/13
maximums [1]   83/3
may [17]   5/24 5/25
16/5 16/17 16/25
18/19 26/18 29/2
29/8 38/9 54/12
60/13 65/16 72/6
76/7 76/8 83/3
maybe [13]   8/19
35/16 43/5 69/17
71/6 71/6 71/8
71/12 72/5 73/13
73/14 76/6 82/7
mayhem [1]   67/16
McFadden [8]   10/19
28/16 35/12 35/21
37/13 38/11 41/10
52/24
McFadden's [3]
11/24 27/24 28/1
mean [22]   5/4 9/2
9/8 12/24 15/19
18/4 19/18 21/25
22/18 26/20 29/15
36/7 42/14 63/24
64/16 67/2 67/19
68/10 68/16 73/10
74/20 83/6
meaning [1]   27/25
means [1]   36/18
meant [1]   83/3
measure [2]   19/23
47/4
measured [1]   46/12
media [1]   62/25
members [3]   17/3
19/19 21/14
memo [1]   7/24
memoranda [1]   54/2
memorandum [9]   2/21
2/24 3/10 11/25
29/16 30/5 33/22
44/18 52/12
mens [4]   8/2 8/7
8/23 49/22
mental [1]   56/10
81/2 81/5
mentality [6]   18/22
67/22 69/5 69/8
69/9 75/24

mention [2]   3/9
23/23
mentioned [4]   23/11
23/25 24/4 57/21
mentioning [1]
11/22
mere [2]   31/5 31/12
merely [1]   15/15
message [9]   71/11
71/11 71/13 72/5
72/10 72/15 72/17
72/22 76/25
messages [2]   48/17
48/21
Messrs [1]   52/16
methamphetamine [1]
53/23
middle [2]   14/17
14/21
might [3]   10/14
52/6 54/19
millions [2]   69/12
71/24
mind [7]   33/19 56/9
66/19 69/19 71/9
71/10 75/23
minimize [2]   31/8
51/12
minimum [2]   59/5
80/14
minus [1]   78/11
minute [1]   52/8
minutes [6]   45/9
46/11 46/18 47/6
51/1 62/3
mirroring [1]   32/21
misconstrued [1]
4/18
misdemeanor [1]
61/5
misdemeanors [2]
60/17 61/11
misinformation [2]
77/12 77/18
misplaced [1]   61/14
misstatements [1]
8/25
mistake [1]   48/3
mob [10]   18/22 24/8
26/18 26/21 26/21
27/12 35/8 38/3
67/21 75/22
Moises [1]   60/22
moment [3]   12/11
17/1 69/21
Monday [1]   3/12
money [1]   79/19
month [4]   53/1
53/19 80/8 80/14
months [24]   51/17
51/18 52/16 52/22
52/23 53/5 53/14
59/17 60/15 60/20
61/7 63/13 65/7
65/14 76/15 78/2
78/5 78/7 78/9
78/11 78/16 78/17
78/20 83/7
Monument [1]   45/3
more [14]   17/11

**M**

more... [13]   22/21
31/5 31/6 32/2 47/4
52/6 52/11 61/21
68/21 75/15 75/25
79/16 80/14
morning [8]   2/6 2/8
2/9 2/11 2/12 2/14
45/3 65/18
mortal [1]   74/2
most [11]   14/13
42/4 44/9 46/1
49/11 49/14 49/23
52/22 54/5 55/10
61/2
Mostofsky [1]   60/16
motivation [1]
16/20
motor [1]   61/17
mouth [1]   13/6
movement [1]   69/10
Mr. [95]
Mr. Bledsoe [1]
52/23
Mr. Lyon [18]   48/9
48/17 48/18 48/19
58/24 59/11 59/13
59/19 59/21 59/23
59/24 60/1 60/3
63/10 73/2 73/10
73/10 74/7
Mr. Lyon's [1]   59/2
Mr. Lyons [1]   48/23
Mr. Thompson [57]
2/10 3/17 7/18 8/8
19/21 20/6 21/23
22/3 23/13 24/20
29/24 31/9 35/1
44/11 45/2 46/3
46/10 46/16 48/15
48/20 48/21 48/24
49/9 49/14 50/6
50/16 50/20 51/11
51/19 51/22 51/25
52/1 52/18 53/7
55/4 55/17 56/21
57/3 57/11 57/14
58/8 59/4 59/5
59/14 59/22 59/24
60/2 60/6 61/10
61/12 61/25 62/2
62/6 63/6 63/11
65/15 66/13
Mr. Thompson's [12]
23/19 25/22 44/10
44/17 45/15 45/21
46/15 50/21 51/15
52/23 53/10 61/16
Mr. Williams [4]
52/22 61/12 62/3
62/22
Mr. Williams' [1]
61/19
Ms. [3]   3/18 56/2
56/17
Ms. Benscoter [3]
3/18 56/2 56/17
much [16]   6/13 6/17
17/6 17/10 31/5

31/6 35/1 51/14
55/2 56/25 60/23
61/20 61/21 63/6
66/25 76/18
multiple [1]   15/22
must [5]   4/18 12/19
41/13 68/10 79/4
myself [2]   66/5
67/18

**N**

narrow [4]   7/19
10/20 37/13 53/17
nature [4]   25/10
47/5 70/14 77/8
Nazi [1]   69/2
near [2]   45/3 82/12
nearly [1]   54/2
necessarily [4]
28/13 44/9 52/3
71/12
necessary [4]   37/10
81/2 81/5 81/8
need [13]   3/21 4/13
7/1 9/7 25/22 28/14
43/20 54/16 55/8
71/12 78/25 80/12
82/15
needed [4]   60/14
80/23 80/25 81/3
needing [1]   20/25
needs [9]   6/22
17/17 55/5 57/5
71/13 72/10 76/25
79/9 82/20
neighbors [1]   57/17
new [1]   9/22
next [5]   10/17
27/22 36/3 38/18
38/20
night [1]   21/7
nine [6]   45/9 46/10
59/18 60/6 61/8
62/3
nine-factor [1]
61/8
NM [1]   1/16
none [2]   26/25
75/17
nonetheless [4]
64/23 67/9 74/3
81/12
nonsensical [1]
67/13
north [3]   47/18
51/10 62/17
note [14]   12/2 18/5
21/19 24/22 30/3
32/10 32/24 38/21
39/9 40/14 41/6
46/9 59/1 59/25
noted [6]   21/19
21/20 31/11 32/20
41/25 49/23
notes [7]   13/10
13/20 13/22 14/3
14/6 24/1 34/10
noteworthy [1]
62/20
notice [1]   29/17

noticed [3]   5/18
5/19 57/6
noting [1]   53/15
notion [1]   61/13
notwithstanding [2]
7/9 55/16
November [1]   1/5
number [7]   2/16
3/21 8/6 14/10 19/6
26/23 27/1
numbers [1]   75/22
numerous [1]   63/2
NW [2]   1/16 1/24

**O**

o'clock [1]   51/11
oath [3]   50/2 50/13
51/1
objected [1]   65/6
objection [2]   38/15
43/18
objections [4]   3/23
4/2 4/11 43/20
objective [1]   19/2
obligation [4]
18/24 20/4 79/23
82/2
obligations [3]
80/6 80/8 80/20
observe [1]   30/18
obstruct [7]   12/16
16/11 19/11 20/15
26/14 40/5 43/14
obstructed [4]
15/19 20/7 23/14
43/13
obstructing [7]
17/21 23/8 27/16
29/4 37/19 52/15
52/19
obstruction [47]
10/20 11/1 11/2
11/21 13/14 13/25
14/9 15/16 16/3
20/3 21/10 22/22
23/11 23/13 25/15
27/9 28/8 28/11
28/11 28/22 28/24
28/24 28/25 28/25
29/2 29/18 32/8
32/8 32/12 32/15
32/17 32/21 32/23
32/25 33/7 33/9
33/10 33/14 33/23
37/13 37/14 37/17
37/23 42/8 42/18
42/21 45/23
obstructive [1]
18/7
obstructs [1]   33/15
obvious [2]   49/24
58/16
obviously [28]   5/18
7/1 10/4 10/21
17/17 18/20 19/3
32/16 40/12 42/2
43/24 44/2 45/14
46/22 49/1 51/4
51/21 55/21 58/24
58/25 59/5 61/3

61/12 62/14 70/10
72/19 73/16 79/19
occasion [2]   23/4
23/5
occasions [1]   63/2
occur [3]   37/11
70/25 77/2
occurred [13]   4/16
4/19 4/24 17/20
26/25 27/3 27/4
35/4 36/21 43/9
71/19 72/4 75/18
occurring [5]   27/3
38/4 40/23 67/24
77/1
occurs [1]   26/6
odd [1]   34/16
off [9]   4/9 6/7
12/24 22/3 64/9
64/10 67/19 68/20
74/6
offense [15]   4/23
7/3 32/11 32/14
33/3 42/16 42/17
48/19 54/18 59/2
59/2 65/7 65/13
75/5 75/9
offenses [6]   4/24
8/3 14/10 52/14
61/17 79/24
offer [3]   61/4 61/5
61/5
offers [2]   59/3
60/4
office [35]   17/12
18/6 18/15 18/17
18/18 20/20 20/21
21/24 22/2 22/12
23/3 25/1 26/4
27/12 30/1 30/2
30/3 30/21 30/25
31/2 31/15 35/3
36/24 45/24 46/4
46/6 46/22 46/24
47/11 47/15 49/25
60/11 62/12 74/11
74/25
officer [5]   4/17
5/2 20/25 52/15
76/21
officers [10]   9/9
19/6 46/20 47/10
50/3 51/9 52/20
67/19 67/20 74/2
offices [7]   16/23
16/24 16/25 17/13
19/22 21/5 21/6
Official [2]   1/23
84/3
Ohio [11]   4/15 4/16
4/16 4/19 4/24
63/19 67/1 73/21
77/17 81/12 82/12
omission [1]   23/24
once [11]   36/23
42/21 46/6 74/13
78/14 78/22 79/5
79/5 80/7 80/22
81/18
one [63]   2/25 4/15

**O**

one... [61]   4/22
5/17 5/18 5/21 5/23
6/14 6/19 7/14 7/19
8/12 9/2 10/18 11/4
12/3 12/8 12/9
12/11 12/20 13/9
14/10 14/12 14/15
26/20 27/8 31/24
32/22 33/3 35/11
38/23 39/9 41/17
41/21 44/9 46/1
46/9 50/9 52/24
54/5 55/4 55/15
55/25 56/8 56/11
57/6 58/7 58/20
59/12 59/21 60/3
62/1 66/11 70/12
70/13 75/15 75/19
76/7 77/6 78/5
78/15 79/25 82/24
one's [1]   25/5
online [1]   35/18
only [22]   3/13 5/23
6/12 6/19 8/3 10/18
10/22 14/25 15/9
21/8 21/12 36/18
37/14 44/25 46/10
46/18 49/21 50/25
58/9 69/21 71/10
75/19
open [1]   48/4
opened [1]   22/1
opinion [2]   11/5
29/16
opportunities [1]
66/24
opportunity [2]
49/19 64/6
opposed [2]   9/24
29/11
opted [2]   49/15
49/16
orally [1]   7/5
order [14]   17/18
26/6 26/10 26/12
35/19 36/21 40/5
54/18 55/23 58/3
64/12 64/13 79/1
80/5
ordinarily [1]
41/17
organized [1]   55/6
organizer [1]   49/2
original [3]   18/11
20/5 30/4
others [10]   13/2
25/11 26/6 26/13
37/5 49/5 62/23
71/13 75/16 77/1
otherwise [7]   41/14
47/7 47/8 56/11
69/19 72/12 83/6
out [25]   4/15 4/16
5/24 18/24 19/8
22/6 25/5 26/6 28/7
35/3 35/23 43/11
46/21 46/25 47/13
52/9 55/16 59/22

61/23 62/8 62/12
69/24 71/8 74/10
77/12
outline [1]   7/24
outlined [1]   4/11
outnumbered [1]
75/21
outside [5]   9/8
9/10 37/22 42/24
74/4
outstanding [2]   4/1
4/11
over [16]   8/14
16/22 16/23 17/11
22/1 25/4 30/8
30/10 38/15 43/18
47/20 50/22 56/19
62/24 68/11 71/2
overcome [3]   11/8
11/9 23/6
overlap [1]   29/3
32/20 33/5
overrunning [1]
62/4
overwhelm [1]   26/24
overwhelming [1]
73/6
own [5]   9/21 16/19
58/17 58/20 66/11

**P**

p.m [1]   51/11
page [3]   29/16 34/8
65/4
pages [2]   30/5 60/9
paid [3]   54/1 80/9
83/14
paint [1]   57/13
paints [1]   44/19
papers [6]   16/22
21/25 30/10 32/16
50/16 83/12
paragraph [12]   4/14
5/3 5/15 6/25 14/14
14/16 14/21 18/13
20/5 20/11 20/13
58/1
parcel [1]   18/1
Pardon [1]   63/22
parents [2]   49/6
53/24
Parliamentarian [4]
18/14 21/3 46/1
46/5
Parliamentarian's [15]
18/6 20/20 21/24
23/2 30/1 30/20
30/25 36/23 46/22
47/11 47/15 49/25
60/11 62/12 74/11
part [14]   12/25
13/6 18/1 20/14
20/21 24/8 25/18
26/1 26/18 26/20
27/12 30/17 36/12
38/21
participate [5]
54/5 63/16 81/1
81/9 82/9
participated [3]

30/24 31/14 46/5
participating [1]
26/2
participation [1]
66/2
particular [7]
21/22 24/18 25/21
36/9 43/6 43/15
47/24
particularly [1]
20/19
parties [1]   2/4
party [1]   57/1
past [1]   58/13
path [1]   64/14
pay [13]   72/12
72/16 79/13 79/14
79/23 79/25 80/1
80/2 80/6 80/7
80/14 83/11 83/12
peacefully [1]
19/23
Pennsylvania [1]
45/11
people [34]   19/4
26/23 27/1 30/6
30/12 31/20 55/6
55/8 55/11 56/5
56/6 56/25 66/23
67/22 68/3 68/11
68/17 68/25 69/6
69/12 70/6 71/1
71/15 71/16 71/18
71/22 71/24 72/2
72/5 72/13 72/23
77/5 77/13 77/20
per [3]   80/1 80/2
80/8
perceived [1]   18/3
period [9]   19/7
27/5 45/10 46/12
54/4 74/23 78/18
78/19 82/13
perjuring [2]   29/4
29/13
perjury [1]   32/18
permission [1]
82/16
permit [1]   82/18
permitted [2]   82/9
82/11
pernicious [1]
50/24
perpetrated [1]
71/21
perpetuating [1]
55/9
perplexing [1]
66/16
persisted [1]   59/14
persistent [1]   57/8
person [7]   11/13
23/21 28/10 42/6
56/11 66/9 75/19
personal [1]   17/13
perspective [1]
81/6
persuade [1]   19/19
persuaded [1]   35/6
pertained [1]   35/25

peruses [1]   17/7
pervasive [1]   57/1
phases [1]   39/16
phone [1]   22/3
photos [2]   31/8
62/6
phrase [13]   35/25
39/17 39/21 39/22
39/25 40/4 40/5
40/7 40/9 40/11
40/12 41/4 41/13
picked [3]   9/10
51/8 60/2
picks [1]   22/3
picture [2]   47/19
57/13
place [19]   2/17
18/22 18/25 22/24
22/25 23/2 25/6
25/7 26/7 26/11
36/13 37/2 37/6
48/23 59/25 69/4
74/12 74/14 78/15
places [1]   4/21
plain [1]   27/25
Plaintiff [1]   1/4
plausible [1]   21/13
plea [2]   58/25 59/3
plead [1]   61/5
please [1]   2/4
pled [6]   59/11
60/10 60/17 60/21
69/23 73/11
plus [3]   52/25
52/25 64/19
point [34]   5/24
10/5 10/7 10/9
11/18 11/19 21/25
26/18 29/7 29/23
32/6 35/3 36/20
36/21 39/6 39/20
40/4 40/6 42/25
43/4 46/7 54/14
55/16 57/20 58/7
61/7 61/23 66/24
67/17 67/25 68/6
68/7 76/9 82/7
pointed [1]   35/23
points [5]   23/10
28/7 35/11 36/2
77/8
police [22]   9/9
20/25 46/20 47/23
49/13 50/1 50/3
50/12 51/8 52/19
60/19 60/19 60/25
62/4 62/9 62/11
62/14 62/16 62/22
65/19 67/19 74/2
political [1]   57/1
poor [1]   55/17
population [1]   69/3
portion [1]   80/5
portrayal [1]   44/24
portrayed [1]   50/21
position [24]   2/21
2/22 3/3 4/12 5/3
5/10 5/11 10/19
10/21 12/10 24/7
38/6 38/7 38/13

**P**

position... [10]
43/3 58/7 60/9
61/22 62/7 64/25
65/5 66/18 80/13
80/14
positions [1]  38/16
positive [1]  57/15
possess [1]  46/25
possessing [2]  8/12
47/1
possession [3]
48/12 52/14 61/18
possibility [1]
60/15
possible [2]  64/13
68/17
possibly [2]  24/20
55/23
potential [1]  45/12
pound [1]  53/23
precedent [1]  35/23
precisely [1]  58/25
predicate [2]  67/8
71/25
premature [3]  12/3
39/11 40/22
preparation [2]
2/18 3/5
prepared [3]  13/15
14/24 54/21
prescription [2]
77/11 82/8
presence [4]  21/1
27/3 31/6 31/12
present [3]  26/10
51/6 57/24
presented [7]  6/18
7/4 9/6 9/14 9/15
10/8 11/16
presentence [4]
2/19 3/24 20/12
82/19
presenting [1]
11/16
presidential [2]
38/3 76/5
pressed [2]  22/21
29/24
pretend [1]  50/2
pretrial [2]  64/2
64/4
price [2]  72/12
72/16
primary [1]  16/19
prior [11]  7/7 33/2
39/22 40/4 40/23
41/15 43/9 48/7
64/9 77/6 77/9
prison [6]  72/7
72/10 78/5 78/8
78/9 78/11
Prisons [2]  63/17
64/15
privilege [1]  66/22
probably [4]  45/18
60/16 71/24 77/19
probation [16]  2/13
4/17 5/2 10/9 34/19

38/16 74/25 76/21
78/21 79/6 79/8
80/11 80/21 81/25
82/3 82/15
probation's [1]
38/7
problem [2]  20/1
63/21 82/6
procedure [1]  60/12
proceed [3]  3/22
43/22 54/12
proceeding [14]
28/14 29/6 29/12
34/12 34/15 36/13
39/16 40/24 41/19
41/20 42/8 42/25
43/12 46/3
proceedings [19]
10/23 12/4 23/8
26/14 28/12 29/11
29/14 34/3 36/1
37/15 37/20 37/22
39/24 40/16 40/16
41/7 41/14 83/21
84/5
process [4]  25/8
38/4 57/5 66/9
program [2]  63/17
82/10
prohibited [1]
32/25
pronouncing [1]
60/16
proof [1]  8/1
properly [1]  60/17
property [30]  12/15
12/17 12/18 12/21
12/21 13/1 13/4
13/7 13/8 17/7
17/10 17/11 17/15
21/16 22/8 23/21
24/9 24/19 24/24
27/10 27/18 31/13
31/16 31/21 45/23
46/17 46/21 47/1
48/12 76/3
property's [1]
27/13
prosecute [1]  79/19
prosecuted [1]
56/15
protect [2]  9/4
49/25
protest [3]  67/3
67/3 67/14
protesters [1]
60/18
proverbial [1]
64/11
provide [9]  9/17
11/13 60/22 79/10
80/11 80/15 80/17
80/17 80/18
provided [4]  15/19
32/22 33/22 39/22
providers [2]  82/17
82/19
provision [4]  33/12
34/14 42/11 43/7
provisions [4]

32/21 32/25 33/6
65/5
proximity [2]  23/1
25/14
PSR [1]  82/17
public [6]  31/7
47/6 47/7 53/25
58/1 69/7
pull [1]  20/10
punish [1]  54/24
punished [3]  70/9
71/3 72/5
punishment [5]
54/24 60/5 70/12
70/12 73/3
purpose [20]  12/19
16/15 16/17 17/21
18/23 19/17 21/13
22/10 24/9 25/18
27/11 27/18 27/20
32/1 32/2 36/16
37/9 37/19 64/8
76/4
push [2]  62/10 63/3
pushed [1]  60/24
pushing [2]  47/12
60/18
put [17]  7/25 13/5
45/4 45/16 50/2
52/12 54/8 58/14
59/8 61/8 64/13
65/12 66/18 73/16
73/16 73/18 73/22
puts [1]  49/10
putting [1]  56/22
57/3 62/1

**Q**

qualifies [1]  49/2
qualify [2]  21/17
43/12
qualities [1]  57/18
quantify [1]  59/12
quasi [4]  28/4
29/11 39/24 41/14
quasi-judicial [4]
28/4 29/11 39/24
41/14
query [5]  13/1 13/4
16/8 25/10 41/4
quickly [1]  47/1

**R**

rabbit [2]  64/12
66/18
rack [17]  9/4 9/24
10/4 10/4 16/10
22/21 48/8 49/25
51/7 51/8 58/18
68/7 68/8 68/12
68/13 74/2 74/4
racks [1]  47/22
radicalized [1]
69/1
raised [1]  16/13
rally [5]  5/8 44/21
51/6 55/7 58/11
ram [1]  47/22
ran [1]  9/12
range [3]  53/2 61/6

65/13
ransacked [3]  17/14
20/22 36/24
rather [5]  42/20
45/10 62/12 62/15
74/5
RDAP [5]  63/17
63/20 63/23 64/5
82/9
rea [4]  8/2 8/7
8/23 49/22
read [2]  7/4 66/13
reader [1]  71/10
readily [1]  36/15
reading [1]  10/20
reads [1]  23/20
ready [1]  73/7
real [1]  63/21
realize [2]  66/9
72/2
realized [3]  48/3
51/13 51/16
realizes [1]  50/18
really [21]  6/16
7/8 7/14 9/7 15/24
18/17 21/12 21/16
23/6 31/24 41/9
48/12 48/23 50/17
55/13 55/23 56/22
57/8 64/8 64/11
69/24
reason [5]  44/16
48/7 68/13 77/13
77/20
reasonable [1]
56/11
reasons [2]  31/22
70/14
recall [1]  36/19
recalls [1]  21/23
receive [10]  59/4
59/14 60/6 61/4
64/6 64/14 72/20
76/13 78/6 78/12
received [10]  53/10
59/13 59/19 60/4
60/15 60/19 60/23
61/4 73/3 77/6
receiving [1]  65/2
recent [2]  14/13
55/10
recently [1]  53/4
recognition [1]
31/13
recognized [2]
50/24 52/5
recognizing [3]
63/9 63/11 63/12
recommend [2]  82/8
82/11
recommendation [1]
2/20
recommended [1]
63/16
recommending [1]
53/12
reconcile [2]  24/7
73/14
record [4]  2/5 30/4
61/4 84/5

**R**

records [5]   15/2
15/9 15/10 15/11
15/12
redacted [1]   58/1
redeeming [1]   57/18
reduction [10]   7/2
7/20 8/4 10/7 10/10
64/17 64/20 75/5
75/9 76/12
redundant [2]   29/6
29/15
reengage [1]   22/13
reenter [1]   58/18
reference [12]   4/22
10/23 11/13 11/18
29/1 29/9 32/7
33/11 54/9 57/13
78/14 79/22
referenced [5]   4/21
5/19 13/20 29/17
42/17
referencing [2]
14/7 14/13
referring [1]   12/6
Reffitt [1]   52/16
reflected [1]   33/9
reflection [1]   66/5
reflects [1]   46/23
reformed [1]   71/12
refrigerator [1]
22/2
regard [5]   10/19
34/22 36/2 58/5
58/23
regarding [6]   5/3
38/2 63/23 65/1
75/15 81/14
REGGIE [1]   1/9
regular [1]   79/7
regularly [1]   79/9
regulation [1]
17/16
rehabilitation [1]
51/23
rejected [1]   59/6
rejoin [1]   22/13
relate [2]   15/9
16/14
related [11]   2/16
6/19 6/25 10/22
17/16 23/1 28/9
37/15 37/19 41/19
54/17
relates [9]   5/15
15/5 15/9 17/19
20/1 20/3 24/3 37/9
37/15
relative [2]   25/19
47/5
relatively [3]
33/20 59/3 59/9
release [17]   64/4
64/7 78/15 78/17
78/19 78/19 78/22
78/25 79/3 79/4
79/6 80/12 81/11
81/15 81/16 82/17
82/18

released [5]   78/14
78/23 79/5 80/7
80/22
relied [1]   41/12
relocate [1]   57/17
reluctance [1]   57/8
reluctant [1]   49/8
relying [1]   41/4
remember [1]   29/16
reminder [1]   50/5
remorse [3]   8/4
50/7 50/9
remotely [1]   81/17
remove [1]   39/21
removed [2]   46/22
65/6
repeated [1]   51/15
report [8]   2/20
3/24 3/25 4/18 5/5
6/17 20/12 82/19
reporter [4]   1/22
1/23 4/9 84/3
represent [1]   83/11
representation [1]
9/3
request [1]   64/8
require [9]   78/23
79/10 80/1 80/2
80/5 80/7 80/10
80/22 81/15
required [2]   79/14
80/15
requires [1]   79/25
residence [2]   82/1
82/3
residing [1]   82/1
resisted [1]   62/23
resisting [1]   63/5
resources [11]
34/13 34/17 39/15
39/19 41/3 41/21
41/21 42/3 42/10
42/19 42/24
respect [10]   2/21
2/23 3/3 8/2 19/20
21/9 32/4 38/11
40/3 44/7
respects [2]   21/17
51/3
response [5]   2/23
7/22 22/18 29/20
55/6
responsibility [15]
7/3 7/20 8/17 8/22
11/5 57/9 57/19
58/9 59/11 65/8
65/11 66/3 75/6
75/7 76/14
restate [1]   27/23
restitution [3]
79/13 79/15 79/18
restricted [2]
28/22 40/15
result [5]   11/9
13/3 18/3 42/9
67/20
resulted [4]   23/3
52/16 67/22 75/24
results [1]   77/21
resume [1]   21/1

retaliate [3]   12/20
17/4 17/4
retaliation [3]
16/14 17/25 19/14
returned [1]   22/12
reunited [1]   66/10
review [3]   2/19
3/20 78/25
reviewed [2]   3/4
43/23
Riddle [1]   60/10
ridiculous [1]
56/24
right [25]   4/20
11/23 12/8 13/5
14/17 14/20 15/3
15/24 30/6 30/15
30/21 32/9 32/12
32/14 39/7 40/7
40/19 49/17 62/13
62/15 67/3 67/5
67/7 73/5 73/18
righteous [1]   68/4
rights [2]   28/5
82/22
rile [1]   71/18
riled [1]   71/15
riot [5]   30/15
30/24 31/14 46/5
55/7
rioted [1]   19/21
rioter [1]   48/18
rioters [11]   18/17
22/1 22/8 22/10
31/25 32/2 44/8
44/14 47/13 48/15
49/15
riotous [1]   15/24
Robert [1]   2/12
Robertson [1]   52/17
role [1]   57/16
roles [1]   55/1
Romero [1]   60/22
room [3]   1/24 17/1
25/24
ROZZONI [2]   1/15
2/7
rule [1]   4/14
ruled [1]   41/10
ruling [3]   38/12
38/14 38/19
rummaged [1]   17/14
run [2]   74/6 78/9
running [1]   70/1

**S**

sacrificed [1]   50/4
salary [1]   80/5
same [31]   15/8
15/23 17/12 21/17
28/6 33/24 35/25
40/4 40/10 40/12
40/13 50/20 51/21
57/19 57/23 69/5
69/8 69/8 69/9
69/10 69/18 71/9
71/14 71/16 71/16
71/20 71/20 71/23
72/24 73/1 83/2
sample [1]   79/10

sat [1]   44/3
satisfy [2]   42/11
80/8
saw [9]   3/9 3/13
24/12 26/8 30/1
69/1 74/11 74/13
74/17
saying [8]   25/3
47/19 67/21 68/3
68/22 72/7 72/8
74/5
scared [1]   65/23
scary [1]   69/11
scattered [3]   16/22
21/25 30/10
scheme [1]   53/19
schoolyard [1]   17/6
scope [1]   34/6
scrum [1]   60/18
Seattle [1]   1/14
second [14]   3/2
3/18 5/25 14/15
21/4 23/5 31/15
44/22 45/21 47/9
47/10 47/20 50/15
57/25
seconds [1]   45/8
section [32]   12/18
13/8 13/11 13/12
13/13 13/17 13/19
13/25 14/8 14/14
14/25 15/1 23/10
23/11 23/12 24/1
28/24 28/25 29/1
29/2 29/3 29/4 29/7
29/10 29/13 33/10
33/11 34/10 38/20
39/10 42/18 52/10
sections [3]   29/19
33/2 33/2
seeing [3]   22/12
31/13 74/2
seeking [3]   8/23
9/16 11/15
seeks [1]   77/22
seem [4]   5/1 18/21
20/14 40/15
seemed [1]   9/11
seems [13]   5/20
11/14 14/25 15/9
17/17 19/3 25/25
36/15 41/7 56/24
67/2 67/16 69/5
sees [1]   31/16
self [1]   66/5
self-reflection [1]
66/5
sell [1]   16/18
semicolon [1]   39/13
Senate [12]   9/3 9/8
18/6 18/14 20/20
21/3 21/23 29/25
30/20 30/24 45/25
46/4
send [3]   71/11
72/16 72/22
sends [2]   72/5
72/15
sense [1]   70/24
sensitive [1]   45/24

**S**

sent [4]   71/12
71/13 72/10 77/1
sentence [33]   33/24
42/20 53/2 53/11
53/19 53/20 54/10
54/19 59/5 59/13
59/13 59/18 60/23
63/7 63/13 63/15
63/18 70/1 70/11
72/21 75/2 76/15
76/24 77/2 77/25
78/2 78/4 78/10
78/17 82/12 82/24
83/9 83/15
sentenced [8]   53/5
53/18 53/21 53/22
53/24 78/4 78/7
78/8
sentences [12]
40/12 52/9 52/16
52/20 53/10 53/21
53/22 58/5 58/23
60/8 72/19 72/24
sentencing [23]   1/9
2/15 2/18 2/20 2/21
2/22 2/23 2/24 3/3
3/5 3/22 4/12 30/4
43/22 44/18 52/11
53/20 54/2 54/18
55/12 58/8 60/9
62/8
separate [8]   3/11
31/9 32/4 32/15
41/1 41/22 44/13
44/16
September [1]   52/12
series [1]   30/19
serious [4]   61/21
70/15 71/3 76/25
seriously [1]   50/4
seriousness [1]
76/16
serve [3]   63/18
78/20 82/11
served [1]   78/13
service [1]   8/8
services [2]   64/3
64/6
serving [1]   54/4
set [8]   18/2 18/11
21/4 27/1 64/7
69/19 71/9 75/23
setting [1]   44/10
seven [1]   32/10
several [4]   10/17
51/2 51/4 79/24
shared [1]   32/2
shield [1]   60/19
short [2]   48/7
48/13
shorter [1]   46/12
shortly [1]   48/6
shouting [2]   21/24
31/17
show [8]   17/2 17/8
20/19 21/15 31/9
53/9 58/2 75/8
showed [1]   45/25

shown [2]   32/3
42/23
sides [1]   21/17
significant [9]
32/20 33/4 33/18
33/18 35/4 36/24
54/4 59/15 73/24
Silver [1]   73/20
similar [3]   11/4
53/10 59/3
simply [1]   51/2
sincere [1]   51/22
single [2]   6/12 7/9
sitting [1]   68/11
situated [1]   58/25
situation [8]   36/9
36/11 43/8 45/17
68/25 69/10 77/10
81/18
six [7]   53/13 56/13
60/15 78/8 78/9
78/18 80/2
small [2]   49/10
53/24
smoke [1]   62/5
sobering [1]   66/4
social [1]   62/25
society [1]   70/7
somebody [4]   31/6
70/21 72/7 77/16
somebody's [1]
17/11
somehow [2]   29/5
41/15
someone [15]   10/7
26/18 29/13 43/13
44/20 45/2 45/16
48/2 49/7 49/7
66/16 66/21 69/13
70/25 77/9
someone's [1]   70/5
sometimes [1]   70/5
son [1]   53/3
sorry [6]   10/12
14/6 65/10 65/14
66/4 83/5
sort [19]   16/14
16/17 17/7 21/16
26/19 32/20 34/24
35/1 38/19 39/17
42/4 44/21 44/22
53/8 53/10 53/17
56/10 56/23 57/16
sound [3]   21/21
25/2 50/19
sounding [1]   58/16
sounds [2]   24/17
37/3
speaking [1]   55/3
special [4]   49/13
79/22 79/23 79/25
specific [6]   18/13
23/19 23/22 24/3
24/11 28/21
specifically [11]
13/11 13/17 16/6
22/25 23/16 23/23
23/25 29/17 33/23
36/8 79/1
specified [2]   39/25

61/21
spectrum [5]   35/1
59/8 61/9 61/10
62/2
speech [1]   67/6
speeches [1]   67/11
spend [4]   35/15
35/18 44/4 52/8
spent [2]   46/10
46/18
spoke [1]   57/21
Spring [1]   73/20
spurred [1]   36/11
square [1]   9/21
staff [2]   18/15
46/5
staffer's [2]   19/22
22/4
staffers [2]   17/1
17/13
stand [8]   8/8 8/15
8/20 49/16 50/10
51/20 68/10 75/8
standard [1]   78/24
start [2]   32/6 44/8
started [2]   51/1
77/11
starting [4]   2/5
61/7 61/14 66/11
state [3]   28/5
77/17 79/2
statement [4]   48/19
49/24 51/6 51/7
statements [12]
11/10 24/13 24/25
25/1 25/13 37/3
49/21 51/2 51/5
51/5 51/5 57/7
STATES [12]   1/1 1/3
1/10 2/3 2/7 2/17
33/1 46/17 54/7
65/21 74/15 79/16
statute [1]   33/14
statutes [2]   33/7
34/2
statutory [1]   83/2
stays [1]   48/7
steal [5]   47/3
47/16 58/17 68/6
68/7
stealing [13]   14/19
14/20 15/2 15/10
15/12 15/25 16/9
16/10 16/18 17/10
23/25 24/4 46/17
Stewart [3]   1/13
1/18 2/10
still [15]   4/1 8/17
37/2 45/4 45/7
50/11 69/11 69/12
69/18 71/21 71/22
71/24 71/25 73/7
74/3
stipulated [6]   8/6
8/7 18/5 18/5 20/6
23/14
stipulation [16]
5/19 5/24 6/9 6/18
8/19 9/19 9/24 10/3
11/17 18/8 18/14

23/6 23/16 23/17
64/18 75/7
stipulations [15]
7/7 7/13 7/16 7/18
11/7 11/9 18/12
20/6 21/3 21/4
23/15 26/2 31/3
45/25 59/15
stole [10]   5/16
6/14 10/4 12/21
16/24 26/4 46/8
60/10 60/12 60/19
stolen [7]   5/20 6/1
9/24 17/15 46/21
48/12 67/9
stoop [2]   68/5 68/6
stop [5]   19/7 26/7
36/12 37/10 67/25
stopping [6]   18/23
19/10 24/10 27/2
36/16 76/4
story [1]   50/20
Street [2]   1/13
1/16
strictly [1]   17/17
strikes [1]   60/15
strong [2]   26/22
48/1
stronger [1]   18/19
strongly [1]   42/5
stuck [1]   8/18
stuff [1]   68/20
stupid [2]   67/5
67/6
submission [2]   3/14
46/10
submissions [2]   7/4
43/23
submit [1]   54/22
submitted [4]   2/25
3/9 3/14 45/15
subsection [12]
12/22 13/12 13/18
23/19 23/20 23/22
24/3 24/18 25/21
34/23 39/11 39/23
subset [2]   19/20
49/10
substance [4]   61/18
63/21 80/24 82/10
substances [2]
61/18 79/3
substantial [15]
12/1 34/16 36/3
38/21 39/4 39/14
39/18 40/8 40/17
41/2 41/20 41/23
42/3 42/9 42/24
substantive [1]
52/13
success [1]   64/7
successful [1]
70/16
sufficient [6]   11/9
13/4 22/15 42/10
42/12 43/17
sufficiently [1]
32/3
suggest [5]   8/23
10/13 58/8 61/15

**S**

suggest... [1]
62/18
suggested [3]   24/21
62/17 65/12
suggesting [2]
24/16 63/13
suggestion [2]
59/17 63/8
suggests [3]   29/1
29/10 63/5
Suite [2]   1/13 1/16
summarize [1]   11/24
summary [1]   7/6
supervised [11]
78/15 78/17 78/18
78/19 78/22 78/24
79/2 79/4 80/12
81/11 81/15
supervision [2]
78/20 81/11
supplement [4]   2/22
3/2 3/11 15/20
supplemental [1]
34/8
support [3]   40/10
54/2 67/8
supposed [2]   70/8
81/13
supposedly [1]
51/12
Supreme [1]   35/24
sure [4]   12/7 38/8
67/2 80/13
sway [1]   56/19
swayed [1]   69/3
swept [1]   44/20
system [3]   57/10
77/23 79/20

**T**

table [1]   54/21
talked [2]   50/23
75/3
talking [11]   12/7
14/5 14/18 15/11
32/13 38/1 40/7
42/15 43/7 56/20
81/3
tear [1]   70/19
technically [1]
49/2
telephone [1]   81/17
temporally [1]
46/12
temporary [1]   58/13
tend [1]   22/19
tended [1]   37/1
tendency [1]   53/16
Tennessee [2]   4/17
4/22
term [2]   26/3 40/21
termination [4]
12/3 34/11 39/12
40/22
terms [3]   15/18
35/19 35/22
tested [2]   79/5
79/7

testified [3]   29/24
45/5 69/18
testifying [2]   10/1
16/5
testimony [14]   6/12
8/16 9/14 11/8
11/16 16/4 20/23
31/4 50/23 52/4
55/22 61/20 64/19
65/23
testing [1]   79/9
texting [1]   47/18
theft [21]   13/7
13/9 13/14 13/15
13/16 14/1 14/10
14/19 15/1 15/5
15/9 16/15 17/19
17/20 20/1 21/15
23/23 23/25 24/3
24/17 45/23
theme [1]   50/15
themes [1]   46/9
theoretically [1]
9/7
theories [5]   31/23
55/10 56/19 56/24
56/25
theory [8]   13/1
24/21 25/20 27/8
37/8 41/12 42/6
64/11
therapist [1]   66/14
thereafter [1]   48/6
therefore [3]   43/3
46/25 52/6
thinking [2]   56/16
73/18
Third [1]   48/15
THOMPSON [61]   1/6
2/3 2/10 3/17 7/18
8/8 19/21 20/6
21/23 22/3 23/13
24/20 29/24 31/9
35/1 44/11 45/2
45/18 45/19 46/3
46/10 46/16 48/15
48/20 48/21 48/24
49/9 49/14 50/6
50/16 50/20 51/11
51/19 51/22 51/25
52/1 52/18 53/7
55/4 55/17 56/21
57/3 57/11 57/14
58/8 59/4 59/5
59/14 59/22 59/24
60/2 60/6 61/10
61/12 61/25 62/2
62/6 63/6 63/11
65/15 66/13
Thompson's [12]
23/19 25/22 44/10
44/17 45/15 45/21
46/15 50/21 51/15
52/23 53/10 61/16
though [14]   5/20
8/5 11/5 16/3 16/5
20/24 40/15 50/10
52/25 58/15 60/1
67/7 67/17 81/10
thought [7]   6/10

39/1 50/17 63/20
63/23 63/24 73/17
threat [1]   70/8
threaten [2]   27/11
27/18
threatened [1]   66/2
threatening [1]
24/19
threatens [1]   23/21
three [15]   39/6
39/6 40/6 40/6
41/17 41/18 41/22
41/25 42/25 43/4
53/1 53/9 75/20
82/24 83/2
three-level [2]
39/6 40/6
three-point [4]
39/6 40/6 42/25
43/4
throughout [1]
23/16
timeframe [1]   64/9
times [2]   56/21
59/18
title [4]   33/1 33/7
33/10 33/17
today [1]   2/15
today's [1]   83/8
told [1]   9/12
tolerated [1]   71/4
tone [1]   44/10
took [15]   2/17 8/8
8/15 9/3 18/22
18/25 31/8 35/23
49/18 49/24 50/13
68/12 68/13 69/4
74/10
top [1]   21/2
torn [1]   70/23
total [3]   78/10
79/15 80/3
totally [2]   64/19
67/4
tough [1]   64/23
towards [1]   45/11
track [1]   81/18
traffic [1]   77/7
transcript [2]   1/9
84/4
transferred [1]
81/12
trash [2]   25/6 25/7
trashing [1]   26/4
treatment [9]   64/14
80/23 80/24 80/24
81/1 81/2 82/9
82/10 82/17
trespassing [1]
61/17
trial [41]   2/15
5/18 5/21 5/22 6/11
6/19 7/8 7/14 8/3
8/9 8/17 19/21
20/18 20/23 29/24
31/4 31/5 32/18
44/4 45/22 46/4
46/13 49/15 49/16
50/6 50/21 50/21
51/19 52/4 53/12

55/19 55/19 57/25
59/15 59/16 61/3
61/13 63/11 69/18
73/5 73/5
trials [2]   8/13
52/10
tribunal [5]   9/25
11/3 11/6 59/16
63/12
tribunals [1]   28/4
tried [1]   55/20
tries [1]   15/20
trophy [1]   68/8
true [7]   6/4 6/9
46/11 47/2 47/23
73/13 84/4
truly [1]   66/3
Trump [2]   7/11
58/21
truth [2]   50/14
55/22
truthful [2]   65/23
80/19
try [11]   16/10
35/20 38/4 44/6
48/10 54/8 55/23
56/4 56/22 58/3
66/9
trying [11]   28/16
29/14 30/18 37/10
47/15 47/22 50/11
62/23 63/3 70/19
70/19
turned [1]   55/7
turning [3]   27/22
62/13 62/15
turns [2]   62/14
62/16
twice [2]   59/22
59/23
two [42]   5/19 6/10
6/11 6/14 6/18 7/20
10/7 10/9 11/2
11/18 11/19 21/16
23/17 29/7 29/18
31/23 32/8 32/13
32/18 32/21 32/23
33/2 33/5 40/13
41/15 52/12 52/13
52/15 52/21 52/24
53/8 59/7 59/20
61/11 75/19 78/7
78/16 80/1 82/25
83/3 83/4 83/6
two-level [6]   7/20
11/2 32/8 32/13
32/18 32/23
two-point [5]   10/7
10/9 11/18 11/19
29/7
type [8]   15/23
17/12 55/14 69/5
69/9 69/10 72/24
81/5
types [5]   13/14
13/25 14/9 15/16
28/10
typically [1]   59/7

**U**

U.S.C [2]   33/1 33/8
uh [1]   15/6
ultimately [5]   7/10
17/15 30/20 48/25
55/7
unaware [1]   8/14
under [19]   4/4 10/7
13/7 14/14 18/24
24/20 26/15 27/7
29/4 31/23 33/1
37/6 46/14 49/2
50/2 50/25 51/1
58/21 78/20
undercuts [1]   44/17
underlying [1]
32/14
undermine [1]   77/22
undermined [2]   7/16
70/17
undermining [1]
70/8
underscores [1]
34/5
understandable [1]
53/16
understood [1]
46/23
undertaken [1]   32/1
undertaking [1]
31/25
unfair [1]   72/1
unfortunately [2]
71/14 71/22
unhappy [1]   69/14
unique [6]   15/18
36/11 42/4 43/8
45/21 54/6
UNITED [12]   1/1 1/3
1/10 2/3 2/7 2/17
33/1 46/17 54/6
65/20 74/14 79/16
university [4]
66/17 66/23 77/16
77/17
unlawful [1]   22/10
unlike [3]   46/16
48/15 49/14
unnecessary [8]
39/14 39/18 41/2
41/20 42/2 42/19
42/23 43/15
unsurprising [1]
46/18
unsympathetic [3]
68/25 77/9 77/13
unusual [3]   15/18
44/7 53/12
up [22]   9/10 16/16
20/10 22/3 38/9
44/23 50/10 51/8
51/19 51/24 54/3
54/14 55/18 55/19
55/20 58/14 60/2
64/7 69/19 69/21
71/15 71/18
upon [16]   7/3 36/13
37/8 41/5 64/7 69/4
69/9 69/13 75/6

76/2 76/13 76/15
76/16 77/5 79/8
81/4
upwards [1]   53/1
USAO [2]   1/13 1/15
use [3]   21/6 59/7
79/3
used [9]   7/10 7/11
9/5 11/25 26/9
60/14 68/14 79/7
79/11
utilized [1]   36/20
utterly [1]   69/11

**V**

VA [1]   1/19
vaccinated [2]   4/6
6/5
vacuum [1]   22/23
varied [1]   53/1
various [5]   13/14
13/25 14/9 23/13
39/16
vehicle [1]   61/17
verdict [4]   2/19
12/4 39/12 40/25
verify [1]   81/20
version [1]   44/17
vest [7]   44/11 45/2
60/19 73/12 73/15
73/18 73/22
victims [1]   17/8
video [6]   21/22
21/23 31/1 31/17
46/23 47/12
view [13]   8/15 16/2
16/16 34/14 37/14
44/7 46/14 47/25
48/16 49/19 54/15
75/12 77/5
viewed [2]   16/3
59/6
viewing [1]   59/1
views [1]   53/7
violated [1]   81/14
violation [1]   33/14
violations [1]   77/7
violence [8]   25/11
45/6 45/13 45/17
52/19 73/17 73/20
73/23
visible [1]   6/11
vote [2]   17/5 32/6

**W**

WA [1]   1/14
waited [1]   47/13
wake [2]   51/24
55/20
walk [3]   45/11
46/20 58/12
walked [3]   31/7
47/6 47/6
walking [1]   62/8
walks [1]   62/11
Walters [1]   2/13
WALTON [2]   1/9
65/22
warrant [1]   7/19
Washington [3]   1/5

1/25 45/3
watch [2]   21/22
48/9
wave [2]   61/24 63/2
way [13]   6/13 28/23
41/21 42/5 45/4
46/15 50/9 54/20
67/1 67/4 70/22
72/24 75/5
ways [3]   41/22
51/13 51/16
weapon [2]   52/14
68/14
wearing [3]   5/5
44/12 44/14
weight [1]   56/25
Weiner's [1]   22/5
weren't [5]   11/10
21/5 52/19 76/11
76/13
what's [4]   5/3 20/9
32/18 71/17
whatsoever [1]   67/8
whereas [1]   5/14
who's [3]   66/16
69/13 76/23
whole [1]   73/12
wife [1]   81/21
WILLIAM [2]   1/12
2/6
Williams [5]   52/22
61/1 61/12 62/3
62/22
Williams' [1]   61/19
willing [6]   66/11
70/21 70/25 71/1
77/20 81/21
Wilson [1]   1/18
windows [1]   30/2
wine [1]   60/10
wing [1]   57/1
within [22]   12/22
13/8 13/18 16/1
17/11 18/17 20/7
21/2 21/14 21/23
22/2 26/2 31/2 33/7
45/24 57/14 57/17
61/10 77/2 77/25
79/5 81/16
without [4]   22/21
65/7 65/10 80/21
withstand [1]   47/24
witness [3]   15/25
16/5 75/8
witness' [4]   15/23
15/24 15/25 16/4
wonder [1]   56/7
woohoo [1]   31/17
word [1]   14/20
words [2]   13/5 46/4
work [8]   16/11
19/12 30/12 56/1
56/17 56/22 57/3
80/4
working [1]   57/5
world [1]   74/15
wrap [1]   56/4
writers [2]   13/16
14/24
wrong [4]   50/18

57/10 68/1 74/6
wrongfulness [1]
52/5
wrote [1]   17/6

**Y**

year [3]   50/23
53/21 60/7
years [4]   53/11
53/13 53/13 53/25
yelling [2]   22/5
31/20
young [1]   53/3

**Z**

Zoom [1]   81/17